IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAKEEPER, INCORPORATED,

               Plaintiff,

    v.

DOMETIC CORPORATION,

               Defendant.

C.A. No. 25-0484-JCB

**REDACTED PUBLIC VERSION**

**JURY TRIAL DEMANDED**

## SEAKEEPER, INCORPORATED'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER WITH NOTICE

OF COUNSEL:

MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 474-6300

Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*
*SEAKEEPER, INC.*

Dated: May 15, 2025

**<u>Table of Contents</u>**

**<u>Page</u>**

I.     Introduction ..................................................................................................................3

II.    Summary of Argument ................................................................................................7

III.   Statement of Facts ......................................................................................................8

IV.    Legal Standards .........................................................................................................12

V.     Argument ...................................................................................................................12

      A.    Seakeeper Is Likely to Succeed on the Merits .......................................12

            1.    Seakeeper Is Likely to Succeed in Proving Infringement.........................12

            2.    Dometic is Unlikely to Establish Invalidity................................15

      B.    Seakeeper Will Suffer Irreparable Harm Without Injunctive Relief ....................17

            1.    A TRO Should Be Granted Based on a Presumption of Irreparable Harm ...........17

            2.    Seakeeper Will Suffer Imminent Irreparable Harm If Dometic Is Not Enjoined ...........18

            3.    The Balance of Equities Favors Seakeeper................................24

            4.    The Public Interest Supports Injunctive Relief.........................25

VI.    Conclusion .................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001)................................................................................................15

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)..................................................................................................25

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015)...........................................................................................21, 25

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996)..................................................................................................24

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 ...........................................................................................................................25

*E.I. du Pont de Nemours & Co. v. MacDermid, Inc.*,
2007 WL 2332161 (D.N.J. Aug. 13, 2007), *vacated on other grounds*, 525 F.3d 1353
(Fed. Cir. 2008)........................................................................................................................17

*E.I. DuPont de Nemours & Co. v. Unifrax I LLC*,
C.A. No. 14- 1250-RGA, 2017 WL 4004419 (D. Del. Sept. 12, 2017), *aff'd sub nom E.I.
du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060 (Fed. Cir. 2019) ..........................19

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)..................................................................................................................17

*Edwards Lifesciences AG v. CoreValve, Inc.*,
C.A. No. 08-91 GMS, 2014 WL 1493187 (D. Del. Apr. 15, 2014) ...........................................20

*Eisai Co., Ltd v. Teva Pharmaceuticals USA, Inc.*,
2008 WL 1722098 (D.N.J. Mar. 28, 2008).....................................................................17, 21, 24

*Elantech Devices Corp. v. Synaptics, Inc.*,
No. C 06-01839, 2008 WL 1734748 (N.D. Cal. Apr. 14, 2008) ...................................................21

*Evonik Degussa GmbH v. Materia, Inc.*,
C.A. No. 09-636, 2017 WL 3434156 (D. Del. Aug. 10, 2017) ....................................................20

*Impax Labs, Inc. v. Aventis Pharm., Inc.*,
235 F. Supp. 2d 390 (D. Del. 2002)........................................................................................25

*M/A-COM Tech. Sols. Holdings, Inc. v. Laird Techs., Inc.*,

C.A. No. 14-181-LPS, 2014 WL 2727198 (D. Del. June 13, 2014).........................................23, 24

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)............................................................................................21

*Metalcraft of Mayville, Inc. v. Toro Co.*,
848 F.3d 1358 (Fed. Cir. 2017)...................................................................................18, 20

*Natera, Inc. v. NeoGenomics Laboratories, Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ......................................................................................12

*Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories Inc.*,
2006 WL 3019689 (D.N.J. Oct. 23, 2006).......................................................................17

*Pfizer, Inc. v. Teva Pharm., USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005).........................................................................................21

*Polymer Technologies, Inc. v. Bridwell*,
103 F.3d 970 (Fed. Cir. 1996)...........................................................................................22

*Power Probe Grp., Inc. v. Innova Elecs. Corp.*,
No. 2024-1166, 2025 WL 798861 (Fed. Cir. Mar. 13, 2025)..........................................25

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
702 F.3d 1351 (Fed. Cir. 2012).........................................................................................20

*Quantronix, Inc. v. Data Trak Techs., Inc.*,
536 F. Supp. 2d 1039 (D. Minn. 2008)............................................................................21

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011).........................................................................................17

*Sanofi-Synthelabo v. Apotex, Inc.*,
470 F.3d 1368 (Fed. Cir. 2006).....................................................................................21, 23

*Systemation, Inc. v. Engel Indus., Inc.*,
194 F.3d 1331, 1999 WL 129640 (Fed. Cir. 1999) .........................................................20

*The Research Found. of State Univ. of New York v. Mylan Pharm. Inc.*,
723 F. Supp. 2d 638 (D. Del. 2010)..................................................................................25

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
699 F.3d 1340 (Fed. Cir. 2012).........................................................................................17

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008)...............................................................................................................12

STATUTES & RULES

35 U.S.C. § 282.........................................................................................................7, 15

Fed. R. Civ. P. 65....................................................................................................6

## I.    INTRODUCTION

Plaintiff Seakeeper, Inc. ("Seakeeper") submits this brief in support of its Motion for a Temporary Restraining Order With Notice ("Motion") pursuant to Fed. R. Civ. P. 65 to restrain and enjoin Defendant Dometic Corporation ("Dometic" or "Defendant") from offering, selling, using, marketing, advertising, shipping or making within or importing into the United States its infringing DG3 gyrostabilizer product and to maintain the status *quo* until a hearing is held on Seakeeper's request for a preliminary injunction.

Seakeeper is the owner of U.S. Patent Nos. 7,546,782 ("the '782 patent") and 8,117,930 ("the '930 patent"). Both patents claim innovative gyrostabilizers including revolutionary cooling methods used to stabilize boats. Recently, Dometic announced its first gyrostabilizer product, the DG3. Dometic's product incorporates Seakeeper's patented technology.

On March 17, 2025, Seakeeper's counsel demanded that Dometic cease and desist further acts of infringement. Duston Decl., Exh. 5, at ¶2 and Att. TD-1. Dometic promised a response within a month of Seakeeper's correspondence. *Id.* at ¶4 and Att. TD-3. On April 18, 2025, Dometic declared its "review [was] still on-going[,]" but did not dispute its use of Seakeeper's design. *Id.* at ¶3 and Att. TD-2. Dometic instead excused its use as not "substantial." *Id.*

Seakeeper immediately filed suit on April 21, 2025. D.I. 1. Seakeeper filed its motion for a preliminary injunction shortly thereafter. D.I. 8, 9, 10, 11,12, 13, 14. Seakeeper's counsel asked Dometic to provide assurances Dometic would refrain from infringement pending a preliminary injunction hearing. Dometic has rejected that request. Duston Decl., Exh. 5, at ¶5 and Att. TD-4. In view of Dometic's evident intent to exploit delays, Seakeeper proposed a prompt hearing. *Id.* Dometic refused, insisting instead on a protracted, at least four month long delay that would allow it to lock up long-term supply agreements during the critical next months, irreparably damaging Seakeeper. *Id.*

If not immediately enjoined, Dometic's evident ongoing efforts to sell and market irreparably threaten unrecoverable harm to Seakeeper's market share, will irreparably deprive Seakeeper of related revenues and other benefits, will permanently erode Seakeeper's prices, and has and will force delay or abandonment of planned new product introductions and investments.

## II.    SUMMARY OF ARGUMENT

1.    Seakeeper has shown a reasonable likelihood of success on the merits with respect to its infringement claims. Dometic's DG3 product infringes Seakeeper's patents. Dometic's product incorporates each and every element of Claims 11 and 17 of the '782 Patent and Claim 1 of the '903 Patent, and/or practices each step of the method claimed in Claim 14 of that patent. No substantial question of validity precludes entry of the relief sought. The asserted patents are presumed valid, 35 U.S.C. § 282. The patent examiner conducted no less than two prior art searches. None of the prior art identified disclosed each of the elements of Seakeeper's claimed invention, nor were those inventions obvious in view thereof. Additionally, evidence of long-felt need, industry skepticism, surprising results, commercial success and Dometic's copying of the invention serve to rebut any assertion that the inventions would have been obvious.

2.    Seakeeper's strong showing of infringement gives rise to a presumption of irreparable harm. Additionally, Seakeeper has and will suffer irreparable harm. In the absence of an interim injunction, Seakeeper will suffer irreparable harm in the form of lost market share, additional opportunities for other related revenues and benefits stemming from future product installations, price erosion, and lost opportunities for new product introductions and investments in the remaining years of patent protection. Money damages are inadequate to compensate Seakeeper for these harms.

3.    The balance of hardships favors equitable relief because the irreparable harm Seakeeper will suffer absent temporary relief far outweighs the harm to Dometic that would result

from maintaining the status quo.

4.      The public interest favors protecting rights secured by valid patents like these and promoting innovation. The public interest also favors Seakeeper's innovation in the marine stabilization space.

## III.    STATEMENT OF FACTS

Seakeeper is a corporation organized and existing under the laws of Delaware. Seakeeper created compact gyrostabilizers with efficient vacuum-enclosed flywheels and a proprietary cooling system that made stabilization viable for marine vessels of all sizes. These control moment gyros ("CMGs") solved important technical issues. Seakeeper obtained patents on its innovations. Seakeeper has relied on those patents to protect its substantial investment in these innovations.

A CMG uses a flywheel, held in place by bearings, that spins at high speeds and creates strong forces that reduce side-to-side rolling. *See* Semprevivo Decl, Exh. 1, at ¶17.[1] Prior attempts to employ CMGs were unsatisfactory. *Id.* at ¶18. The few marine gyros in use were big, heavy and limited to large vessels. Their flywheels spun in air, which constrained their speeds. Air friction increases exponentially as a function of the flywheel's revolutions per minute. This friction accounts for the large power requirements for gyros spinning in ambient air. *Id.* Achieving sufficient angular momentum to steady a ship required large and heavy flywheels. *Id.* at ¶20.

Reducing flywheel weight and size requires a speed increase to achieve sufficient angular momentum. *Id.* at ¶22. Smaller boats were caught in a bind. If the weight of the flywheel was increased, the device would be too heavy. *Id.* at ¶23. If the diameter of the flywheel increased, it would be too large. If the flywheel was spun faster, it would require too much power. Collectively, these problems appeared insurmountable for small boats. *Id.*

---

[1]  The Troche, Semprevivo, Cimino, and Smitha Declarations are D.I. 10, 11, 12, and 13.

The invention employs a partial vacuum enclosure to achieve high flywheel speeds with reduced size and power requirements. *Id.* at ¶¶24-25. The high heat produced by the moving parts within such a nearly airless system presented a unique problem. *Id.* at ¶¶26-27. Heat generating bearings are positioned between the rotating flywheel and a stationary support. *Id.* at ¶28. Because the stationary support is thermally connected to the outer enclosure, heat located at its interface with the bearings can be drawn off. Heat building up on the opposite side of the bearing cannot so easily be eliminated. These rising temperature differentials threaten the gyro's precise tolerances, and can lead to premature (if not catastrophic) failure. *Id.*

Conventional cooling lubricants, such as oil, would vaporize in the vacuum at the temperatures encountered. *Id.* at ¶30. The inventors conceived of an apparatus having a first heat transfer element attached to and spinning with the flywheel. *Id.* at ¶31. This first heat transfer element moves relative to a second heat transfer element that is stationary and thermally connected to the enclosure. The first and second heat transfer elements comprise interleaved, cylindrical vanes oriented parallel to the flywheel's axis of rotation. The first and second vanes are positioned in close proximity so that substantial heat is transferred from the first heat transfer element to the second heat transfer element, and thereafter to the exterior of the enclosure. *Id.* at ¶¶31-35.

Boat builders prioritize weight, size, and power demands. Seakeeper's partial vacuum gyrostabilizers are smaller, lighter, and consume less power while providing greater performance. *Id.* at ¶¶45-56, 63. Cooling made Seakeeper's vacuum gyrostabilizer possible. *Id.* at ¶¶36-38, 62. Seakeeper's invention made stabilization viable for vessels of all sizes at rest or low speed, solving a long-standing need. *Id.* at ¶¶36-39, 44-52, 57-58. Customers have abandoned other solutions in favor of Seakeeper's technology. *Id.* at ¶¶59-60.

When Seakeeper initially launched its first gyrostabilizer in 2008, boat owners were

skeptical. *Id.* at ¶40. Seakeeper engaged in a massive marketing effort to educate consumers as to its capabilities and benefits, investing over ███ into these activities. Smitha Decl., Exh. 2 at ¶¶5-6, 14-17. Seakeeper purchased small boats, installed gyros, hired captains and performed sea trials for designers, builders, dealers and consumers, demonstrating the high level of roll reduction (65% to 95%) achieved by Seakeeper's technology without compromising the craft's weight, space, or power *Id.*; Semprevivo Decl., Exh. 1 at ¶56. Seakeeper's patented cooling technology has always been prominently touted in its advertising. Smitha Decl., Exh. 2 at ¶¶6, 9 and RS-1 through RS-4. As a result of these efforts, Seakeeper's technology is now recognized as the "Kleenex" or "Xerox" of boat stabilization—acknowledging its widespread acceptance. *Id.* at ¶27.

Seakeeper's patented gyrostabilizer has enjoyed great commercial success. Annual unit sales of these products—each priced at tens to hundreds of thousands of dollars depending on size—climbed from ███ in 2008 to over ███ in 2024. *Id.* at ¶¶7-8. To date, Seakeeper has shipped nearly ███ gyrostabilizer products. *Id.* at ¶10. Seakeeper® gyros can be found on vessels from 23-foot center-console fishing boats to 200-foot mega-yachts. Semprevivo Decl., Exh. 1 at ¶41. Annual revenue has similarly grown from ███ in 2008 to ███ in 2024. Smitha Decl., Exh. 2 at ¶10.  The patented innovative cooling system, and the performance made possible by that system, has been recognized through various awards. *Id.* at ¶¶11-13.



A little over one year later, Dometic announced its DG3 gyrostabilizer product. *Id.* at ¶80. After Seakeeper's disclosures, Dometic incorporated Seakeeper's patented cooling technology in its DG3. *Id.* at ¶¶77-79, 85-87. On February 11, 2025, Dometic revealed its DG3 to the public at the 2025 Miami International Boat Show. *Id.* at ¶80. On February 12, 2025, Dometic issued a press release announcing that its DG3 product "marks Dometic's entry into the rapidly growing vessel stabilizer market." *Id.* at ¶80 and Att. AS-7. Eric Fetchko, the President of Dometic's Marine Division, emphasized that Dometic is "not just launching a new product, we're taking Dometic into an important new category for the global boating business." *Id.*

Dometic admits that its DG3 followed months of research by engineers tasked to pull data on competitive products. *See* https://tradeonlytoday.com/post-type-feature/eric-fetchko-q-a/ ("[W]e put a couple of engineers on it[.] These young guys can just pull data off the web like you wouldn't believe.") Seakeeper's published patents were readily available via the Internet, and boating publications frequently identified Seakeeper's gyrostabilizer as the subject of U.S. Patents. A little over a year before Dometic's launch, Seakeeper shared confidential information concerning its patented products with Dometic representatives. *See* Semprevivo Decl., Exh. 1, at ¶¶64-67, 70-73. Dometic's cooling system duplicates the interleaved, cylindrical, axial vanes

■

within a vacuum enclosure claimed in Seakeeper's patents. *See* Troche Decl., Exh. 4 at ¶¶42-82.

Seakeeper will be irreparably harmed by Dometic's entry into the gyrostabilizer market for recreational and small commercial boats, a market in which Seakeeper has about a 95% market share. *See* Cimino Decl., Exh. 3 at ¶11; Semprevivo Decl., Exh. 1 at ¶¶84, 91.

## IV.    LEGAL STANDARDS

A patentee seeking a temporary restraining order must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) and an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Likelihood of success on the merits is shown if (1) plaintiff will likely prove infringement; and (2) its infringement claim will likely withstand challenges to the validity and enforceability of the patents. *Natera, Inc. v. NeoGenomics Laboratories, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024) (affirming grant of preliminary injunction). No claim construction is needed to grant Seakeeper relief. *Id.*

## V.    ARGUMENT

### A.    Seakeeper Is Likely to Succeed on the Merits

#### 1.    Seakeeper Is Likely to Succeed in Proving Infringement

Seakeeper is likely to succeed in proving infringement of at least Claims 11 and 17 of the '782 patent and Claims 1 and 14 of the '930 patent.  For purposes of infringement, dependent Claim 17 of the '782 patent is representative. Claim 17 depends from Claim 11. Collectively, Claims 11 and 17 recite:

> **Claim 17.** The apparatus of claim 11 wherein the spinning member is a flywheel and the flywheel and enclosure are part of gyroscopic roll stabilizer for a boat.

> \*                    \*                    \*

> **Claim 11.** Cooling apparatus for transferring heat from and

cooling one or more heat generating components that support or drive a flywheel or other spinning member; the apparatus comprising:

an enclosure enclosing the spinning member, the enclosure containing a gas at below-ambient pressure or below-ambient density, wherein an axis of rotation about which the spinning member spins defines an axial direction;

a first plurality of vanes attached to the spinning member such that the first plurality of vanes spin with the spinning member relative to the enclosure, wherein the first vanes are cylindrical elements extending in a first direction substantially parallel to the axial direction;

a second plurality of vanes fixed relative to the enclosure and the spinning member such that the first vanes move with respect to the second vanes, wherein the second vanes are cylindrical elements extending in a second direction substantially parallel to the axial direction and opposite the first direction, the second vanes defining cylindrical shaped channels into which the first vanes extend so that the first and second vanes are interleaved; and

wherein the first and second vanes are positioned in close proximity to one another so that substantial heat is transferred from the first vanes to the second vanes and the second vanes are configured such that that heat can be readily transferred from the second vanes to the exterior of the enclosure.

Dometic's DG3 device is a gyrostabilizer for a boat that includes a cooling apparatus for transferring heat from one or more heat generating components that support its flywheel. Troche Decl., Exh. 4 at ¶¶45-46. As illustrated below, Dometic's DG3 device includes an enclosure that encloses a flywheel at below-ambient pressure and density. *Id.* at ¶47. The flywheel's axis of rotation defines an axial direction. *Id.* Dometic's DG3 device also includes a first plurality of vanes attached to the flywheel that spin with the flywheel relative to the enclosure. *Id.* at ¶48. The vanes are cylindrical and extend in a first direction substantially parallel to the axial direction. *Id.*

As illustrated below, Dometic's DG3 device includes a second plurality of vanes fixed relative to the enclosure and the flywheel. Id. at ¶49. The first vanes move with respect to the

second vanes. *Id.* The second vanes are cylindrical elements extending in a second direction substantially parallel to the axial direction and opposite the first direction. *Id.* The second vanes define cylindrical shaped channels into which the first vanes extend. *Id.* The first and second vanes are interleaved and are positioned in close proximity to one another. *Id.*

The following diagram illustrates that Dometic's DG3 device embodies the elements of at least claim 17 of the '782 patent:



As configured, the close proximity of these first and second plurality of vanes enables substantial heat to be transferred from the first to the second. *Id.* at ¶51. The plurality of vanes is configured such that heat can be readily transferred from these second vanes to the exterior of the enclosure. *Id.* As shown above, bearing races are positioned adjacent the flywheel. Because the flywheel is not conductively connected to the enclosure, the sole thermal path from this bearing race that is not through the bearing and its opposite race is from the first plurality of vanes through

the second stationary plurality of vanes and thereby to the exterior of the enclosure. *Id.* at ¶51.

Substantial heat is necessarily transferred from the first to the second set of vanes from which it is readily transferred to the enclosure. Dometic has acknowledged this path operates to withdraw substantial heat. *Id.* at ¶52. The President of Dometic Marine, Eric Fetchko, has emphasized that Dometic's incorporation of Seakeeper's patented design prevents a substantial heat differential between the inner and outer bearing races. *Id.* at ¶52 ("With heat gradients in the bearings between the inner and outer race, if they sped up how fast the current ones on the market ramped up or slowed it down, it could explode their bearings because the differential can only be a few degrees between the inner race and the outer race. As the tolerances are so tight, you'd explode the ceramic balls. **We got around that with our cooling method.**") (emphasis added).

Claims 1 and 14 of the '930 patent include similar limitations. Troche Decl., Exh. 4 at ¶¶58, 71. Any differences relate to the addition of a "gimble structure," permitting flywheel "precession," and the presence of a gas having "a thermal conductivity at least 5 times greater than air," including "helium." *Id.* at ¶¶58, 71, 80-81 and Att. AS-2 at 10:47-58, 12:3, 15-21. Evidence suggests the enclosure in Dometic's DG3 contains helium at less than ambient pressure. *Id.* at ¶¶79-82. Helium's thermal conductivity is at least 5 times greater than air. *Id.* at ¶81. The DG3 is mounted on a gimbal. *Id.* at ¶73. In the DG3, the flywheel precesses. *Id.*

Seakeeper is likely to prove infringement of both the '782 and '930 patents.

### 2.    Dometic is Unlikely to Establish Invalidity

Patents are presumed valid. *See* 35 U.S.C. § 282. Dometic bears the high burden of showing a ***substantial*** question of invalidity. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001).

### a.    The Prior Art Does Not Teach Seakeeper's Invention

Seakeeper is unaware of any prior art that discloses a gyrostabilizer for stabilizing a boat

that includes each of the elements recited in its claims. Troche Decl., Exh. 4 at ¶83. During prosecution, the patent examiner conducted at least two prior art searches directed to cooling and heat dissipation technologies associated with flywheels. *See id.* at ¶¶84-85 (Att. NT-3 at 78 and Att. NT-4 at 79). The examiner concluded that the prior art of record "fail[ed] to show or render obvious the cooling apparatus as claimed[.]" *Id.* at ¶84 and Att. NT-3 at 106.

The applicant overcame the examiner's sole rejection based upon U.S. Patent Application Publication No. 2005/0040776 ("Sibley") titled "Flywheel Energy Storage Systems." *See id.* at ¶86 and Att. NT-3 at 70-74. Notably, Sibley is an energy storage device, not a gyrostabilizer for boats as claimed. In contrast to CMGs, Sibley's flywheel is directed to "large flywheel energy storage systems made for stationary utility or industrial applications in which the flywheels ***run at relatively low speeds***." *See id.* at ¶87 and Att. NT-5 at [0136] (emphasis added).

Bearing design in CMGs presents unique considerations not present in flywheels used for energy storage or heat generating bearings used in other applications. Bearings in such applications do not need to account for the large mechanical torque load exerted by a gyroscopic moment in a CMG. *Id.* at ¶88. Bearings in such a system generate less heat. *Id.* at ¶¶88-91. The use of the claimed axially oriented, interleaved cylindrical vanes in the manner claimed in the '782 and '930 patents was not taught in any prior art CMG system, nor would it have been obvious to a person of skill in the art. *Id.* at ¶¶83-99.[2]

### b.    Secondary Considerations Further Support Non-Obviousness

As discussed in the *Statement of Facts*, above, secondary considerations strongly support the non-obviousness of the claimed cooling technology. The invention solved a long-felt need,

---

[2] Sibley's design presents a host of elements that would be incompatible with a system designed to cool flywheel supporting bearings in a CMG. A non-exhaustive list of those distinctions are more fully discussed in the Declaration of Mr. Nick Troche. *See* Exh. 4 at ¶¶87-99.

overcame industry skepticism, produced unexpected results, enjoyed substantial commercial success and was copied by Dometic. *See* pp. 3-7, *supra*; *see also Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012) (objective evidence of nonobviousness sufficient to rebut prima facie case of obviousness).

### B.    Seakeeper Will Suffer Irreparable Harm Without Injunctive Relief

#### 1.    A TRO Should Be Granted Based on a Presumption of Irreparable Harm

Irreparable harm is presumed when the patentee makes a strong showing of likelihood of success on the merits. Despite the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the Federal Circuit has held that the courts should not "entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148-50 (Fed. Cir. 2011) ("[eBay] does not swing the pendulum in the opposite direction.")

Post-*eBay* decisions in this Circuit have recognized likelihood of success gives rise to a presumption of irreparable harm. *See, e.g., Digene Corp. v. Ventana Med. Sys.*, Inc., 484 F. Supp. 2d 274, 279 (D. Del. 2007) ("A movant who clearly establishes a reasonable likelihood of success on the merits receives the benefit of the presumption of irreparable harm.") *Eisai Co., Ltd v. Teva Pharmaceuticals USA, Inc*., 2008 WL 1722098, at *10 (D.N.J. Mar. 28, 2008) (refusing to read *eBay* as overruling the presumption of harm for a preliminary injunction); *E.I. du Pont de Nemours & Co. v. MacDermid, Inc.*, 2007 WL 2332161 (D.N.J. Aug. 13, 2007), *vacated on other grounds*, 525 F.3d 1353 (Fed. Cir. 2008) (patent holder presumed irreparably harmed where "strong showing of likely infringement of a valid and enforceable patent."); *Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories Inc.*, 2006 WL 3019689 (D.N.J. Oct. 23, 2006) (presuming irreparable harm). Because Seakeeper has made a strong showing of likelihood of

success on the merits, irreparable harm is presumed.

### 2. Seakeeper Will Suffer Imminent Irreparable Harm If Dometic Is Not Enjoined

Notwithstanding any presumption, Dometic's launch of its infringing product will have significant and irreparable consequences for Seakeeper. Dometic reports that it will begin shipping its DG3 product in June 2025. *See* https://www.dometic.com/en-us/outdoor/lp/marinelp-gyroscopic-stabilization/contact-form. Dometic initially announced that "[d]ealer installations will begin in mid-to-late 2025." *See* https://www.dometic.com/en-us/support/faq/gyro-09. More recently, Dometic has refused Seakeeper's request for a prompt hearing on its motion for preliminary injunctive relief, seeking instead to postpone a decision long enough to allow it to irreparably harm Seakeeper by locking in long-term supply agreements with Seakeeper's existing customers. Dometic has refused to assure Seakeeper that it will not engage in infringing activity pending a hearing on Seakeeper's motion for a preliminary injunction. As explained below, and as supported by the Declarations of Andrew Semprevivo, President & CEO of Seakeeper, Will Cimino, its Chief Commercial Officer, Rebecca Smitha, its Chief Financial Officer, Nick Troche, its Chief Technology Officer, and Sean Sheridan, a financial expert, the imminent harm caused to Seakeeper and its exclusive rights is both irreparable and difficult to quantify adequately, making injunctive relief necessary. *See Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017).

### a. Dometic's Launch Will Cause Seakeeper to Lose Market Share and Lock Seakeeper Out of Markets for Years

Dometic's ongoing infringement is presently causing irreparable loss of Seakeeper's market share. This risk is immediate and Dometic should not be allowed to delay injunctive relief. A temporary restraining order is needed to maintain the status quo until a hearing on Seakeeper's motion for a preliminary injunction.

Dometic has already announced a partnership with a major boat builder, Regulator Marine, Inc. ("Regulator"). Regulator will exclusively install Dometic's infringing DG3 product in its Regulator 35 boat. Cimino Decl., Exh. 3 at ¶6. Dometic further admits to actively soliciting sales from other OEMs. *See* https://www.dometicgroup.com/en-us/investors/press-releases/dometic-expands-its-marine-business-with-new-innovative-gyrostabilizer-dometic-dg3 ("Response from our global boat building partners has been very positive[.]") Regulator's announced use of the DG3 encourages other boat builders to design their new models around Dometic's infringing product. *Id.* Dometic's entry into the market will inevitably cause Seakeeper to lose substantial market share. Cimino Decl., Exh. 3 at ¶12; Sheridan Decl, Exh. 6 at ¶¶39, 40-46, 49.

Seakeeper is aware of ████████████████████████████████████ ██████████████ *Id.* at ¶7. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ In the boating industry, boats are designed for a specific gyroscopic stabilizer. Cimino Decl., Exh. 3 at ¶6. Once a stabilizer is designed into a boat model, it typically remains for the entire five- to ten-year lifecycle of that model. *Id.* This design-based exclusion would not only cause Seakeeper immediate market share loss, but also result in lasting damage to its customer relationships, competitive position, and ability to re-enter key OEM channels—harms that cannot be adequately remedied by monetary damages alone. *Id.* at ¶¶18, 34; Smitha Decl., Exh. 2 at ¶24. Unless enjoined, Dometic can cement its placement in these boats, eroding Seakeeper's market share drastically for years, with damaging consequences. Cimino Decl., Exh. 3 at ¶¶10-12.; Sheridan Decl, Exh. 6 at ¶¶33-34, 40-46, 49; *see E.I. DuPont de Nemours & Co. v. Unifrax I LLC*, C.A. No. 14- 1250-RGA, 2017 WL 4004419, at *5 (D. Del. Sept. 12, 2017), *aff'd sub nom E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060 (Fed. Cir.

2019) (well established that lost market share constitutes irreparable harm, where patentee "would be forced to compete against a rival gaining market share with [the patentee's own] technology"); *Systemation, Inc. v. Engel Indus., Inc.*, 194 F.3d 1331, 1999 WL 129640, at *6 (Fed. Cir. 1999) ("los[s of] sales to a direct competitor" evinces irreparable harm); *see also Edwards Lifesciences AG v. CoreValve, Inc.*, C.A. No. 08-91 GMS, 2014 WL 1493187, at *5 (D. Del. Apr. 15, 2014) ("There can be no doubt that loss of market share, sales, and business opportunities constitutes irreparable harm.").

Seakeeper holds a 95% share of the market for gyroscopic stabilizers in recreational and small commercial boats. *See* Cimino Decl., Exh. 3 at ¶11.[3] Dometic seeks to compete against Seakeeper using Seakeeper's own patented technology. The harm a patentee suffers from "being forced to compete against products that incorporate and infringe its own patented inventions" is "often irreparable." *Evonik Degussa GmbH v. Materia, Inc.*, C.A. No. 09-636, 2017 WL 3434156, at *2 (D. Del. Aug. 10, 2017); *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012); *Metalcraft,* 848 F.3d at 1369; *see also* Sheridan Decl, Exh. 6 at ¶¶30-32, 38-39.

Additionally, the immediate loss of these installations further irreparably deprives Seakeeper of other benefits. Seakeeper depends upon exposing boat buyers to its revolutionary technology to generate demand. Smitha Decl., Exh. 2 at ¶5. Sales beget additional sales though advantageous trade-in programs offered to existing customers of Seakeeper products. Cimino Decl., Exh. 3 at ¶8. Seakeeper expects to realize revenues from purchases of replacement parts and extended warranties. *Id.* Seakeeper depends upon customer data and testimonials with respect to

---

[3] Currently, Seakeeper's sole competitor offers little meaningful competition because it does not use Seakeeper's patented cooling technology. Cimino Decl., Exh. 3 at ¶11.

actual installations in advertising and promoting the benefits of its products in a wide range of specific boat models. *Id.* at ¶31. Installations of Seakeeper's patented gyro are also expected to promote sales of Seakeeper's new, complementary trim product called Ride™ that works to minimize roll and pitch together with the gyrostabilizer. *Id.* at ¶¶32-33. The loss of these installations constitutes irreparable harm. Sheridan Decl, Exh. 6 at ¶¶15-17, 35, 37, 44-49; s*ee Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015) (Lost sales had "ecosystem effect" on downstream sales of accessories and future purchases and a "network effect" by depriving patentee of benefits from customers' promotion of products to their friends, family, and colleagues); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382-83 (Fed. Cir. 2006) (loss of clinical trial data irreparable).

These harms are magnified because Seakeeper's patents will expire in less than two years (*i.e.* February 11, 2027). D.I. 1 at ¶43. *See H.H. Robertson, Co. v.* United *Steel Deck, Inc.,* 820 F.2d 384, 391 (Fed. Cir. 1987) (abrogated on other grounds by *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995)) (looming expiration of the patent weighed heavily against the infringer, affirming grant of preliminary injunction); *see also Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1380 (Fed. Cir. 2005) (infringer's sales "would cause substantial harm to [the patentee] and loss of statutory right to exclude ... for the [relatively short] remaining life of the ... patent[.]"); *Elantech Devices Corp. v. Synaptics, Inc.*, No. C 06-01839, 2008 WL 1734748, at *9 (N.D. Cal. Apr. 14, 2008) (harm irreparable due, in part, to "the few remaining years of the patent life"); *Quantronix, Inc. v. Data Trak Techs., Inc.*, 536 F. Supp. 2d 1039, 1049 (D. Minn. 2008) (injury irreparable where patent in suit would expire in approximately two years); *Eisai Co., Ltd v. Teva Pharm. USA, Inc.*, No. 05 5727, 2008 WL 1722098, at *11 (D.N.J. Mar. 28, 2008) (same).

Seakeeper counted on the remaining exclusivity offered by its patents to position its

products in new boats over that time. Semprevivo Decl., Exh. 1 at ¶¶72, 84, 91. Dometic's market

entry irreparably harms Seakeeper by unfairly depriving it of all remaining patent life. Sheridan

Decl, Exh. 6 at ¶¶66-70. This factor strongly supports a preliminary injunction.

**b.    Dometic's Launch Will Cause Irreversible Price Erosion**

Unless immediately enjoined, Dometic's offers to sell and sales will also irreversibly erode

Seakeeper's prices. Cimino Decl., Exh. 3 at ¶¶15-21;



Approximately ██ of Seakeeper's sales are made to OEMs. *Id.* at ¶5; Smitha Decl., Exh.

2 at ¶4. ████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████. Regulator is an influential member of the IBBI.

Dometic has established relations with IBBI. *Id.* at ¶17. Dometic's market entry, particularly in

view of Regulator's adoption, will likely force Seakeeper into bargaining with this collective. *Id.*

Unless Dometic is enjoined, lower prices and reduced margins are inevitable. *Id.* Once lowered,

price reductions are permanent. *Id.* at ¶¶19-21; Smitha Decl., Exh. 2 at ¶26; Sheridan Decl, Exh. 6

at ¶¶36, 50-57; *see Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996)

("Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.")

This type of price erosion constitutes irreparable harm. Sheridan Decl, Exh. 6 at ¶50-57; *see Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382 (Fed. Cir. 2006) (irreparable harm where "Sanofi has been forced to offer discounted rates and price concessions to third-party payors" after generic launch); *M/A-COM Tech. Sols. Holdings, Inc. v. Laird Techs., Inc.*, C.A. No. 14-181-LPS, 2014 WL 2727198, at *7 (D. Del. June 13, 2014).

> **c.    Dometic's DG3 Launch Imperils Seakeeper's Planned R&D and Critical Innovations**

Dometic's product launch has already forced Seakeeper to divert investments critical to securing its future growth and, unless enjoined, the damage to Seakeeper will be irreparable. Cimino Decl., Exh. 3 at ¶¶24-25; ███████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ The introduction of new models has been a key factor driving Seakeeper's growth and uptake. Smitha Decl., Exh. 2 at ¶25, Atts. RS-8 and RS-9.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████

For example, protected by the exclusivity afforded by its patents, ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

.

The loss of these opportunities to position new products while still patent-protected is irreparable. Sheridan Decl, Exh. 6 at ¶58-70; s*ee M/A-COM Tech. Sols. Holdings, Inc. v. Laird Techs.*, Inc., No. CV 14-181-LPS, 2014 WL 2727198, at *5 (D. Del. June 13, 2014); *i4i Ltd.* P'ship *v. Microsoft Corp.,* 589 F.3d 1246, 1276 (Fed. Cir. 2009)*, opinion withdrawn and superseded on reh'g,* 598 F.3d 831 (Fed. Cir. 2010)*, aff'd,* 564 U.S. 91 (2011) (finding irreparable harm when defendant caused patentee to lose market share and alter its business strategy); *Eisai Co. v. Teva Pharms. USA, Inc.,* C.A. No. 05–5727, 2008 WL 1722098, at *11 (D.N.J. Mar. 28, 2008) (finding irreparable harm in regard to inability to rely on business plans caused by infringement); *see also Bio-Tech. Gen. Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1566 (Fed. Cir. 1996) (finding irreparable harm where loss of revenues would require reduction in research and development).[4]

### 3.     The Balance of Equities Favors Seakeeper

Unlike Dometic, Seakeeper's very existence depends upon its patented gyrostabilizer products.[5] Sheridan Decl, Exh. 6 at ¶¶15-16, 71-73. Dometic, in contrast, has only recently entered this market. Dometic is a subsidiary of a Swedish corporation with over $2.5 Billion (USD) in

---

[4] The inability to launch new products at its historic rate in the gyrostabilizer market will also damage Seakeeper's reputation as the "Xerox" of gyrostabilizers. Smitha Decl. at ¶¶25 and 27.

[5]

annual global sales in 2024, compared to Seakeeper's $215M total revenue in 2024. *See* Smitha Decl., Exh. 2, at ¶10; Sheridan Decl, Exh. 6 at ¶¶24-27, 71-73. Dometic has a broad and diverse product portfolio that is not dependent upon sales of its newly introduced DG3. *See Power Probe Grp., Inc. v. Innova Elecs. Corp.*, No. 2024-1166, 2025 WL 798861, *3 (Fed. Cir. Mar. 13, 2025) ("[g]iven the centrality of the patented invention to [Power Probe's] business, the harm of denying an injunction far outweighs the hardship [Innova] would face[.]").

Dometic's public statements indicate it has yet to ship its DG3 product. Seakeeper is merely asking to maintain the status quo until a hearing on its motion for preliminary injunction. *See Impax Labs, Inc. v. Aventis Pharm., Inc.*, 235 F. Supp. 2d 390, 396 (D. Del. 2002).

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ *see Apple Inc.*, 809 F.3d at 645 (hardships favored patentee where infringing features could be eliminated).

### 4.    The Public Interest Supports Injunctive Relief

"[T]here is a strong public interest in protecting valid patents[.]" *The Research Found. of State Univ. of New York v. Mylan Pharm. Inc.*, 723 F. Supp. 2d 638, 663 (D. Del. 2010). Granting injunctive relief serves the public interest in protecting the resulting patents. *See, e.g.*, *Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013; and Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930-932 (Fed. Cir. 2012) (public interest adversely affected by taking market benefits away from the innovator patentee).

## VI.    CONCLUSION

For the reasons stated herein, Seakeeper respectfully requests that the Court grant this Motion for a Temporary Restraining Order to enjoin Dometic from launching its DG3 product until the Court enters a decision on Seakeeper's Motion for a Preliminary Injunction.

/s/ Kelly E. Farnan
_____

OF COUNSEL:

MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 474-6300

Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*
*SEAKEEPER, INC.*

Dated: May 15, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2025, a true and correct copy of the foregoing document

was caused to be served by e-mail on the following counsel:

### <u>BY E-MAIL</u>

Andrew C. Mayo
Brian A. Biggs
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801


### <u>BY E-MAIL</u>

Oleg Khariton
Dinsmore & Shohl LLP
255 E. Fifth Street
Suite 1900
Cincinnati, OH 45202

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com
