# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SEAKEEPER, INCORPORATED,

     Plaintiff,

  v.

DOMETIC CORPORATION,

     Defendant,

CA No. 1:25-cv-00484-JCB

## DECLARATION OF MARK DYCK

I, Mark Dyck, declare and state as follows:

1. I am over the age of eighteen (18).  This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business.

2. I am currently employed by Dometic Marine Canada, Inc. ("Dometic Marine Canada") as Chief Engineer - Mechatronics.  I have been with Dometic Marine Canada for 10 years.  In my role, I currently function as the mechatronics technical lead of control moment gyro development at Dometic Marine Canada.  In this role I am responsible to ensure the technical aspects of the design allow the product to meet the functional requirements.

3. I graduated from the University of British Columbia with a bachelor's degree of science in Mechanical engineering. I further completed and graduated with a Masters of Applied Science at the University of British Columbia with a focus in Mechatronics.

4. A person of ordinary skill in this art would have at least a Bachelor's of Science degree in mechanical engineering with at least several years' experience in the design of flywheel devices, such as control moment gyros and energy storage flywheels.

5. I am a person of ordinary skill in this art.

1

## THE DOMETIC DG3 GYROSCOPIC STABILIZER

6.     I understand that, in this lawsuit, Plaintiff Seakeeper, Inc. ("Seakeeper") is alleging that the Dometic DG3 gyroscopic stabilizer (the "DG3") infringes certain claims of U.S. Patents No. 7,546,782 (the "'782 Patent") and 8,117,930 (the "'930 Patent"). I have reviewed both patents, as well as the Declaration of Nick Troche (the "Troche Declaration") submitted by Seakeeper in support of its request for emergency injunctive relief.

7.     The DG3 device accused of infringement is a gyroscopic stabilizer for boats. I was a member of the Dometic Marine Canada team that designed and developed the DG3. Therefore, I am intimately familiar with its design and operation.

8.     Referring to the drawing below, a partial cross-section of the DG3 is illustrated and annotated with labels. Though this is a partial cross-section, the opposite end of the DG3 is structurally similar except it lacks a motor assembly. The DG3 includes a flywheel (blue), which rotates about a stationary support (white). A bearing assembly supports rotation between the stationary support and the flywheel. The bearing assembly includes an inner race and an outer race (both grey). The inner race of the bearing assembly is ███████████████████. The outer race of the bearing assembly is coupled to the flywheel and rotates with the flywheel. Rotating cooling fins (purple) are coupled to the flywheel. Stationary cooling fins are coupled to the enclosure (green). The enclosure contains atmospheric air under below-ambient pressure.



9.    The bearing assembly is cooled via a fluid-to-fluid heat exchanger.  This cooling system involves conveying raw water (that is, water directly from the body of water in which the boat is situated) into the system via piping and placing that piping in contact with a glycol coolant loop to remove heat from the glycol coolant.  The coolant loop comprises coolant channels formed between the enclosure and the stationary fins and within the stationary support.  A coolant pump is provided to pump a cooling liquid, particularly a glycol mixture, from a coolant reservoir, through the coolant loop, passing by the raw water piping, and back through the coolant loop system.  The drawing below provides an alternative sectioned perspective of the coolant loop system:



10.    The coolant loop of the DG3 is an active cooling system that cools both the inner race and the outer race of the bearing assembly.

11.    ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████

12.    The outer race is cooled via conduction to the rotating fins (either directly or through the flywheel).  Heat is then transferred from the rotating fins to the stationary fins (such as via convection or gaseous conduction).  The DG3 is specifically designed to remove heat from the stationary vanes and the stationary support via the coolant channels, in lieu of directing the flow of heat to the exterior of the enclosure for atmospheric cooling.  Coolant is circulated through the coolant channels via a pump to a heat exchanger for cooling the coolant.  ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████  differently, the active cooling system of the DG3 provides controlled

cooling independent of the temperature of the raw water source and independent of the ambient temperature surrounding the enclosure.

## THE '782 PATENT

13.     Claim 11 of the '782 patent reads:

11. Cooling apparatus for transferring heat from and cooling one or more heat generating components that support or drive a flywheel or other spinning member; the apparatus comprising:

an enclosure enclosing the spinning member, the enclosure containing a gas at below-ambient pressure or below-ambient density, wherein an axis of rotation about which the spinning member spins defines an axial direction;

a first plurality of vanes attached to the spinning member such that the first plurality of vanes spin with the spinning member relative to the enclosure, wherein the first vanes are cylindrical elements extending in a first direction substantially parallel to the axial direction;

a second plurality of vanes fixed relative to the enclosure and the spinning member such that the first vanes move with respect to the second vanes, wherein the second vanes are cylindrical elements extending in a second direction substantially parallel to the axial direction and opposite the first direction, the second vanes defining cylindrical shaped channels into which the first vanes extend so that the first and second vanes are interleaved; and

wherein the first and second vanes are positioned in close proximity to one another so that substantial heat is transferred from the first vanes to the second vanes and **the second vanes are configured such that that heat can be readily transferred from the second vanes to the exterior of the enclosure**.

14.     The DG3 device does not include at least "the second vanes [fixed relative to the enclosure] . . . configured such that heat can by readily transferred from the second vanes to the exterior of the enclosure," as claimed.

15.     The specification of the '782 Patent states that "[o]uter races typically remain cooler because heat can flow (by conduction through abutting metal members) from the outer races to the exterior of the enclosure, where heat is dissipated by convection (air passing across the warm

exterior surface).” (’782 Patent, col. 2, ln. 28-33.)  The specification states that inner races do not traditionally have the same cooling path to the exterior available, and so other cooling techniques, such as immersing bearings cooling oil, have been used (unsatisfactorily, according to the patent). (*See id.*, col. 2, ln. 33-55.)  Accordingly, the ’782 Patent aims to provide the bearing assembly, including the inner race, with a ready cooling path to the exterior.

16.    The patent purports to accomplish this objective by providing a first plurality of rotating vanes attached to the flywheel and adjacent to the inner race of the bearing assembly and a second plurality of stationary vanes attached to the enclosure.  (*Id.*, col. 2, ln. 56 – col. 3, ln. 65.) Heat is transferred by conduction from the inner race to the first vanes.  (*Id.*, col. 3, ln. 54-57.)  The first vanes move with respect to the second vanes and extend into gaps between the second vanes so that the first and second vanes are interleaved, and “substantial heat”[1] is transferred from the first vanes to the second vanes by gaseous conduction or convection.  (*Id.*, col. 3, ln. 14-20; *id.*, col. 4, ln. 19-22.)  The heat then readily flows from the second vanes to the exterior of the enclosure.  (*See id.*, col. 7, ln. 12-16.)  The exterior surface of the enclosure has additional vanes, which assist in transferring heat from the exterior of the enclosure to the surrounding atmosphere. (*Id.*)

17.    To summarize, in the invention of the ’782 Patent, the inner race of the bearing assembly is cooled via a cooling path in which heat flows from the inner race to the first (rotating) vanes; from the first (rotating) vanes to the second (stationary) vanes; from the second (stationary)

---

[1] I note that, although the specification of the ’782 Patent and asserted claim 11 both use the term “substantial heat” in reference to the heat being transferred from the first vanes to the second vanes, the patent contains no definition of this term.  That is to say, the patent does not provide any specific or general threshold for the amount of heat that would qualify as “substantial” or otherwise explain how a person of ordinary skill in the art would determine whether the amount of heat transferred from the first vanes to the second vanes is “substantial” enough to meet this requirement.  I further note that the term “substantial heat” has no set meaning in the art.

vanes to the exterior of the enclosure; and from the exterior of the enclosure to the surrounding atmosphere.

18.     The '782 Patent specifically asserts that this design is beneficial because heat can be "removed passively without circulating any fluids inside the enclosure . . . [which] considerably simplifies the device . . . as a coolant pump . . . and heat exchanger are not required." (*Id.*, col. 4, ln. 45-50.)

19.     Consistent with these disclosures in the specification, claim 11 of the '782 Patent specifically provides that "the second vanes [fixed relative to the enclosure] are configured such that heat can by readily transferred from the second vanes to the exterior of the enclosure."[2]

20.     The design of the DG3 is fundamentally different from Seakeeper's patented design. As discussed above, the DG3 is specifically designed to avoid heat transfer to the exterior of the enclosure. Instead of relying on "passive" atmospheric cooling, the DG3 employs an active cooling system that works independent of the ambient temperature of the environment. Specifically, the DG3 utilizes a pump and heat exchanger to circulate a cooling liquid internally through the coolant channels and thereby remove heat from the stationary fins and away from the exterior of the enclosure. As discussed above, ██████████████████████████ ████████████████████████████████████████████████████████

21.     In other words, the DG3 employs the type of active cooling system—namely, one that includes (a) circulating fluid inside the enclosure, (b) a coolant pump, and (c) a heat exchanger—that the inventors of the '782 Patent explicitly distinguished their "passive" cooling system from.

---

[2] I note that the specification does not define the term "readily transferred," and that this term has no standard accepted meaning in the industry. However, in light of the specification, a person of ordinary skill in the art would understand this term to mean that, at very least, the transfer of heat from the second vanes to the exterior of the enclosure must the primary mode of heat transfer.

22.    Accordingly, the DG3 device does not include at least "the second vanes . . . configured such that heat can by readily transferred from the second vanes to the exterior of the enclosure," as required by claim 11.

## THE '930 PATENT

23.    Claim 1 of the '930 patent reads as follows:

1. A gyroscopic roll stabilizer for a boat, the stabilizer comprising:

a flywheel, the flywheel being configured to be spun about a spin axis;

a first plurality of vanes coupled to the flywheel such that the first plurality of vanes spin with the flywheel relative to an enclosure;

a second plurality of vanes fixed relative to the enclosure and the flywheel such that the first plurality of vanes spin with respect to the second plurality of vanes, the second plurality of vanes defining gaps into which the first plurality of vanes extend so that the first and second plurality of vanes are interleaved;

at least one rotating heat generating component coupled to the flywheel and positioned such that heat is transferred from the heat generating component to the first plurality of vanes;

the enclosure surrounding the first plurality of vanes, the second plurality of vanes, the heat generating component, and a portion or all of the flywheel, the enclosure containing a below-ambient density gas and maintaining a below-ambient pressure, **wherein the below ambient density gas has a thermal conductivity at least 5 times greater than air**; and

wherein the flywheel, the first plurality of vanes, the second plurality of vanes, the heat generating component, the enclosure, and the gimbal structure are configured so that, when installed in the boat, the stabilizer damps roll motion of the boat.

24.    Claim 14 of the '930 Patent reads as follows:

14. A method of stabilizing a boat, the method comprising:

spinning a flywheel about a spin axis;

permitting flywheel precession;

spinning a first plurality of vanes with the flywheel relative to an enclosure, wherein at least one rotating heat generating component is

8

positioned such that heat is transferred from the heat generating component to the first plurality of vanes;

maintaining a second plurality of vanes fixed relative to the enclosure and the flywheel such that the first plurality of vanes spin with respect to the second plurality of vanes, the second plurality of vanes defining gaps into which the first plurality of vanes extend so that the first and second plurality of vanes are interleaved; and

wherein the enclosure surrounds the first plurality of vanes, the second plurality of vanes, the heat generating component, and a portion or all of the flywheel, the enclosure containing a below-ambient density gas and maintaining a below-ambient pressure, **wherein the below ambient density gas has a thermal conductivity at least 5 times greater than air**.

25. Both independent claims 1 and 14 thus recite "the below ambient density gas has a thermal conductivity at least 5 times greater than air." However, the DG3 device does not include a "below-ambient density gas" that has a "thermal conductivity of at least 5 times greater than air."

26. The Troche Declaration asserts at paragraphs 65-67 that the DG3 includes a "below-ambient density gas" that has a "thermal conductivity of at least 5 times greater than air" based on the assumption that the DG3 enclosure contains helium, which it says is a "below-ambient density gas" and has a "thermal conductivity of at least 5 times greater than air." The assumption that the DG3 uses helium appears to be based solely on the disclosure in U.S. Patent Application Publication No. 2024/0400167, on which I am listed as one of the inventors, and which indicates that helium *may* be used in the device disclosed there. However, contrary to the assumption in the Troche Declaration, the DG3 does not use helium. Rather, the DG3 uses air.

27. Thus, the DG3 device does not include a "below-ambient density gas," as required by claims 1 and 14. A person of ordinary skill in the art would interpret the reference to a "below-ambient density gas" in claims 1 and 14 to mean that, under standard atmospheric conditions, the gas has a density lower than the density of air. As stated in the specification of the '930 Patent, examples of such gases would include helium and hydrogen. ('930 Patent, col. 6, ln. 40-41.) By

definition, the gas in the enclosure of the DG3 would not qualify as a "below-ambient density gas," because the gas in the enclosure *is air*.

28.    For similar reasons, the gas in the enclosure of the DG3 cannot have "a thermal conductivity at least 5 times greater than air," as further required by claims 1 and 14.[3]  At the outset, I note that claims 1 and 14 are ambiguous as to the nature of the required comparison. Specifically, while the claims appear to require comparing the thermal conductivity of the gas in the enclosure of the gyroscopic stabilizer to the thermal conductivity of air, the claims do not specify the conditions under which the comparison is performed.  That is to say, is the thermal conductivity of the gases compared under standard atmospheric conditions (i.e., under standard temperature and pressure)?  Or is it compared under the temperature and pressure conditions in the enclosure of the gyroscopic stabilizer?  Neither the claims nor the specification explains.

29.    Regardless, the DG3 would not satisfy this claim element under either interpretation.  As discussed above, the gas in the enclosure of the DG3 is air.  Therefore, by definition, the gas in the enclosure of the DG3 could not have "a thermal conductivity at least 5 times greater than air," whether the thermal conductivity is compared under standard atmospheric conditions or the temperature and pressure conditions in the enclosure.

---

[3] The thermal conductivity of a material is a measure of its ability to conduct heat.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 18, 2025

Mark Dyck