# EXHIBIT C

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

WAVETAMER GYROS, LLC,
Petitioner

v.

SEAKEEPER, INC.,
Patent Owner

————————

Case IPR2017-01931
Patent 8,117,930

————————

**PATENT OWNER'S PRELIMINARY RESPONSE
UNDER 37 C.F.R. § 42.107**

IPR2017-01931
U.S. Patent No. 8,117,930

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

    A.    "Adams" is Not Prior Art to the '930 Patent.........................................1

    B.    The Petition Fails to Address Secondary Considerations Known to Petitioner at the Time of Filing the Petition.....................................2

    C.    The Petition Violates 37 C.F.R. 42.24(a)(1)(i) ....................................5

    D.    Institution Should be Denied................................................................5

II.   THE '930 PATENT AND THE PROSECUTION HISTORY ......................6

    A.    The '930 Patent ...................................................................................6

    B.    The Prosecution History.......................................................................8

III.  PERSON OR ORDINARY SKILL IN THE ART...........................................9

IV.   THE IDENTIFIED REFERENCES ..............................................................9

V.    CLAIM CONSTRUCTION ......................................................................10

    A.    "Adjacent" Should Be Construed as "Next To" ................................11

    B.    "Vane" Includes the Term "Fin".......................................................14

    C.    The Board Need Not Consider Constructions of "Exposed Surface" and "Closely Spaced"...........................................................14

VI.   INSTITUTION SHOULD BE DENIED BECAUSE PETITIONER CANNOT DEMONSTRATE THAT U.S. PATENT NO. 6,973,847 ("ADAMS"), THE PRIMARY REFERENCE FOR ALL GROUNDS, IS PRIOR ART TO THE '930 PATENT ....................................................14

VII.  OBJECTIVE EVIDENCE OF NON-OBVIOUSNESS SHOWS THAT THE '930 PATENT IS NOT INVALID FOR OBVIOUSNESS ......20

VIII. THE PETITION SIGNIFICANTLY AND IMPROPERLY EXCEEDS THE BOARD'S WORD LIMIT, AND THE BOARD SHOULD EXCLUDE THE EXTRANEOUS MATERIAL ........................32

IX.   CONSTITUTIONALITY OF *INTER PARTES* REVIEW ...........................34

X.    CONCLUSION........................................................................................34

i

IPR2017-01931
U.S. Patent No. 8,117,930

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allergan, Inc. v. Apotex Inc.*,
754 F.3d 952 (Fed. Cir. 2014) ...................................................................16

*Apple Inc. v. DSS Tech. Management, Inc.*,
IPR2015-00369, Paper 14................................................................................19

*Application of Land*,
368 F.2d 866 (C.C.P.A. 1966) ...................................................................17

*Ariosa Diagnostics, Inc. v. Illumina, Inc.*,
IPR2014-01093, Paper 69 (Jan. 7, 2016)...........................................................19

*Boehringer Ingelheim Int'l Gmbh v. Biogen Inc.*,
IPR2015-00418, Paper 14, July 13, 2015 ........................................................32

*Boss Indus., Inc. v. Yamaha Motor Corp. U.S.A.*,
333 F. App'x 531 (Fed. Cir. 2009) ...................................................................12

*Cisco Sys., Inc. v. C-Cation Tech., LLC*
IPR2014-00454, Paper 12 (Aug. 29, 2014) ..............................................33, 34

*Depuy, Inc. v. Zimmer Holdings, Inc.*,
276 F. Supp. 2d 910 (N.D. Ill. 2003)................................................................12

*Dynamic Drinkware, LLC. v. National Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) ...................................................................15

*Ferrum Ferro Capital, LLC v. Allergan Sales, LLC*,
IPR2015-00858, Paper 10 (Sept. 21, 2015).......................................................10

*Globus Med., Inc. v. Depuy Synthes Products, LLC*,
IPR2015-00099, Paper 15 (May 1, 2015)..........................................................19

*Hewlett-Packard Co. v. MCM Portfolio, LLC*,
IPR2013-00217, Paper 10 (Sept. 10, 2013)......................................................18

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ...................................................................19

ii

IPR2017-01931
U.S. Patent No. 8,117,930

*In re Katz,*
    687 F.2d 450 (CCPA 1982) ................................................................16

*In re Smith Int'l, Inc.,*
    871 F.3d 1375 (Fed. Cir. 2017) ...................................................11, 13

*In re Suitco Surface, Inc.,*
    603 F.3d 1255 (Fed. Cir. 2010) ........................................................10

*L-3 Commc'n Holdings, Inc. et al. v. Power Survey, LLC,* IPR2014-
    00832, Paper 9 (Nov. 14, 2014)........................................................19

*Lupin Ltd. v. Vertex Pharms. Inc.,*
    IPR2015-00405, Paper 13 (Jul. 9, 2015) .........................................20

*MBO Labs., Inc. v. Becton, Dickinson & Co.,*
    474 F.3d 1323 (Fed. Cir. 2007) ........................................................12

*MCM Portfolio LLC v. Hewlett-Packard Co.,*
    812 F.3d 1284 (Fed. Cir. 2015), *cert. denied,* 137 S. Ct. 292 (2016) ...............34

*Newell Cos., Inc. v. Kenney Mfg. Co.,*
    864 F.2d 757 (Fed. Cir. 1988) ...........................................................2

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
    2017 WL 2507340 (U.S. June 12, 2017).........................................34

*Omron Oilfield & Marine, Inc. v. Varco, L.P.,*
    IPR2013-00265, Paper 11 (Oct. 31, 2013) ...................................5, 20

*Panduit Corp. v. Dennison, MFB, Co.,*
    810 F.2d (Fed. Cir. 1987) .................................................................15

*Polaris Wireless, Inc. v. TruePosition, Inc.,*
    IPR2013-00323, Paper 9 (Nov. 15, 2013) ........................................18

*Riverwood Int'l Corp. v. R.A. Jones & Co.,*
    324 F.3d 1346 (Fed. Cir. 2003) ...................................................15, 17

*Shenzhen Huiding Tech. Co. v. Synpatics Inc.,*
    IPR2015-01739, Paper 8 (Feb. 16, 2016).........................................33

iii

*Teva Pharms. USA, Inc. v. Indivior UK Limited*,
    IPR2016-00280, Paper 23 (June 10, 2016).......................................................19

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
    529 F.3d 1364 (Fed. Cir. 2008) ...............................................................10, 11

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
    699 F.3d 1340 (Fed. Cir. 2012) ...........................................................20, 22, 30

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999) ...........................................................11, 12, 14

**Statutes**

35 U.S.C.
    §102..................................................................................................*passim*
    §102(a)....................................................................................1, 16, 17
    §102(b)....................................................................................2, 17, 18
    §102(c)..........................................................................................2, 18
    §102(d)..........................................................................................2, 18
    §102(e)....................................................................................1, 16, 17
    §102(f)..........................................................................................2, 18
    §102(g).........................................................................................2, 18
    §103...............................................................................................*passim*
    § 311(b)......................................................................................15, 18
    § 314..............................................................................................2, 34

**Other Authorities**

37 C.F.R.
    § 42.6(a)(3) ...............................................................................32, 33
    § 42.8........................................................................................................33
    § 42.24......................................................................................................33
    § 42.24(a)(1)(i) .........................................................................5, 32
    § 42.104(b)(2) .......................................................................5, 6, 10
    § 42.107 .....................................................................................................1
    § 42.300(b) ..............................................................................................10

77 Federal Register
    48756 (Aug. 14, 2012)........................................................................10
    48766 (Aug. 14, 2012)........................................................................10

IPR2017-01931
U.S. Patent No. 8,117,930

Manual of Patent Examining Procedures (9th Ed. 2015)

§ 2129......................................................................................................15

§ 2132......................................................................................................16

§ 2136.04.................................................................................................17

§ 2141......................................................................................................16

v

IPR2017-01931
U.S. Patent No. 8,117,930

## EXHIBIT LIST

| Exhibit | Description |
| --- | --- |
| 2001 | Letter from Patent Owner to Petitioner dated May 25, 2017 |
| 2002 | Reexam Control No. 90/013,504, Declaration of Andrew Semprevivo dated October 19, 2017 |
| 2003 | Reexam Control No. 90/013,504, Third Declaration of John Adams dated October 19, 2017 |
| 2004 | Excerpt from U.S. Patent No. 7,546,782 Prosecution History |
| 2005 | Reexam Control No. 90/013,504, Exhibit 1111, International Boat Industry, December 2016 Issue |
| 2006 | Reexam Control No. 90/013,504, Exhibit 1101, Seakeeper product materials |
| 2007 | Seakeeper 5 Operation Manual (Rev 5 May 2015) |
| 2008 | Seakeeper M8000 Manual (Rev July 3 2013) |
| 2009 | G. Caputi, *A Look inside the Seakeeper: How they Work, What They're Made Of*, InTheBite: The Professional' Sportfishing Magazine (June 2017 Issue) |
| 2010 | Office Action dated December 30, 2010, during prosecution of U.S. Patent No. 8,117,930 |
| 2011 | Drawing depicting Seakeeper gyrostabilizer products |
| 2012 | Reply to Office Action, filed May 9, 2011, during prosecution of U.S. Patent No. 8,117,930 |
| 2013 | Office Action dated June 14, 2011, during prosecution of U.S. Patent No. 8,117,930 |
| 2014 | Reply to Office Action dated Sept. 28, 2011, during prosecution of U.S. Patent No. 8,117,930 |
| 2015 | Declaration of John Adams dated Nov. 17, 2017 |
| 2016 | Declaration of Andrew J. Sutton dated Nov. 17, 2017 |

IPR2017-01931
U.S. Patent No. 8,117,930

Pursuant to § 42.107,[1] Patent Owner Seakeeper, Inc. ("Seakeeper" or "Patent Owner") submits this Preliminary Response to the above-captioned Petition for *inter partes* review of U.S. Patent No. 8,117,930 ("'930 patent") ("Pet.," Paper 1).

## I.    INTRODUCTION

Patent Owner requests denial of institution in its entirety, as there is no likelihood Petitioner can prevail on any claim, on any asserted grounds.  The Petition's lack of merit can be demonstrated in numerous ways, of which three stand out for the purposes of this Preliminary Response.

### A.    <u>"Adams" is Not Prior Art to the '930 Patent</u>

As an initial and overriding matter, the Petition is fatally deficient, as all six grounds raised by Petitioner rely upon U.S. Patent No. 6,973,847 ("Adams") as a primary reference to support the Petition—and as  a matter of law, ***Petitioner cannot show and has not shown that Adams is prior art to the '930 patent***.

To the contrary, though Patent Owner bears no such burden, Patent Owner can establish that Adams is *not* prior art.  For example, the Petition fails to address that Adams and the '930 patent are by the same inventive entity.  As such, 35 U.S.C. §102(a)[2] does not apply, 35 U.S.C. §102(e) does not apply, and any issues of

---

[1] Section cites are to 35 U.S.C. or 37 C.F.R., and emphasis is added unless noted.

[2] The '930 has an effective filing date prior to March 16, 2013 and is to be treated under pre-AIA 35 U.S.C. 102 as it is not subject to the first inventor to file provisions of the AIA.

1

admitted prior art do not apply.  Furthermore, Adams was issued only a month before the filing of the '930 patent, and the Petition lacks any evidence that the invention was abandoned, patented first in another country, invented by another or involved in an interference; thus 35 U.S.C. §§102(b), (c), (d), (f) and (g) do not apply either.

For this reason alone, the information presented in the Petition cannot show that there is a reasonable likelihood that Petitioner would prevail with respect to any challenged claim.  According to 35 U.S.C. § 314, the Board must therefore deny institution on all grounds.

### B.  The Petition fails to Address Secondary Considerations Known to Petitioner at the Time of Filing the Petition

Even apart from the fact that Petitioner's §103 grounds—the sole grounds identified in the Petition—necessarily fail because Adams is not prior art, the Petition is also without merit because secondary considerations—which Petitioner failed even to *mention*—clearly demonstrate that the '930 patent is not obvious.  *See Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir. 1988) (secondary considerations must be taken into account when considering obviousness).

Patent Owner Seakeeper, Inc., which was founded in 2002, has invested heavily in research and development to create its inventive patented gyroscopic boat roll stabilizer—the only products it sells.  Since offering its first product for sale in 2008, the company has achieved enormous commercial success.  Patent Owner's success necessarily stems from the success of its gyroscopic roll stabilizers, which

2

IPR2017-01931
U.S. Patent No. 8,117,930

substantially embody and are coextensive with the '930 patent. Indeed, just on the strength of these products, Patent Owner, with a single manufacturing facility in Mohnton, Pennsylvania, has outpaced its large entrenched competitor, Mitsubishi Heavy Industries, which had already been manufacturing gyroscopic roll stabilizers for more than ten years before Patent Owner entered the market. In fact, between 2008 and 2017, Patent Owner went from 0% to around 55% of market share. *See* Ex. 2002 ¶ 11. Patent Owner's novel and inventive gyroscopic roll stabilizers were an industry game-changer, and now come as standard equipment on many boats sold worldwide. *See* Ex. 2003 ¶¶ 18-20.

Patent Owner's great commercial success has attracted the attention of Petitioner, which seeks to use the *inter partes* review procedure to force a license under the patent. Indeed, Petitioner admits that it was *this very commercial success* that motivated Petitioner file this IPR. Patent Owner submits as Exhibit 2001 a copy of a letter (dated May 25, 2017) sent to several of Patent Owner's investors. (Although unsigned, the letter was accompanied by draft copies of the IPR petitions and exhibits Petitioner has since filed, along with a statement that, if settlement was reached, the Petitioner would have the material in the petitions "buried.") This letter shows that, *prior to filing the Petition*, Petitioner had spent years analyzing Patent Owner's business, including Patent Owner's products and patent position. Indeed, the letter asserts that Patent Owner's business is worth between $400 million and

3

IPR2017-01931
U.S. Patent No. 8,117,930

$1.2 billion, with a sale price in the market of above $1 billion. The letter further asserts that invalidating the '930 patent (and its parent) will damage the sale price of the company by about 80%.

This letter is an admission that, prior to filing the Petition, Petitioner was aware of the commercial success of the patented technology, as embodied in Patent Owner's products. The letter also makes clear that Petitioner believed that a license to the '930 patent would have been valuable and provided his company with patent protection. This strongly indicates that the Petitioner sees the '930 patent as valid. For example, while Petitioner asserts that the '930 patent is obvious, Petitioner also asserts that the prior art and arguments in the petition are unlikely to be found by others in the field if a settlement is reached and the "material" gets "buried now…." The letter shows that the Petitioner sees Patent Owner's patents as having commercial value, and seeks a settlement with the Patent owner that will allow the Petitioner to build a company without "commodity margins" (again suggesting that others would understand the '930 patent to be valid).

To summarize, Petitioner—as demonstrated by its May 25, 2017 letter—admitted that it knew of Patent Owner's products, knew those products were commercially successful, and knew that the challenged patent claims substantially embody those products. Even if Petitioner *had* presented a viable invalidity challenge to the patent—and it has not, as it failed to establish its sole primary

4

reference for all grounds as prior art—Patent Owner has presented a strong and unrebutted case for validity based on secondary considerations and commercial success. Moreover, Petitioner's failure to argue secondary considerations of non-obviousness "serves to bolster the case for commercial success." *Omron Oilfield & Marine v. Varco L.P.,* IPR2013-00265, Pap. 11 at 15 (denying institution where petitioner failed to rebut evidence of commercial success in the petition). Accordingly, the Board should deny institution.

### C.    The Petition Violates 37 C.F.R. 42.24(a)(1)(i)

Finally, the Petition is over 17,000 words, substantially exceeding the 14,000-word limit set by 37 C.F.R. 42.24(a)(1)(i). Although for the reasons set forth above, institution is to be denied on all grounds, it is also the case that the Board should exclude from the Petition any material that exceeds the 14,000-word limit (which is the majority of Petitioner's claim chart, in Section X), and decline to consider or institute on any arguments or grounds in that improper material.

### D.    Institution Should be Denied

Ultimately, Petitioner has failed to meet its burden with respect to every challenged claim on every ground. The Petition asserts six grounds under 37 C.F.R. §42.104(b)(2) for challenging the '930 patent. See Section III. (C) of the Petition. "*Specific Statutory Grounds*". All six grounds are raised under 35 U.S.C. §103 and all six grounds recite Adams as a patent relied on for the respective ground. Each of

these grounds cite to specific sections of Adams to support Petitioner's obviousness arguments. As all six grounds asserted rely on Adams and as Adams is not part of the scope and content of the prior art, all six grounds raised under 37 C.F.R. §42.104(b)(2) fail, as a matter of law, to rely on prior art that can establish grounds under 35 U.S.C. §103. For this reason alone, the Board should deny institution.

Because there is no reasonable likelihood that Petitioner would prevail with respect to *any* claim, the Board should deny institution.

## II.    THE '930 PATENT AND THE PROSECUTION HISTORY

### A.    <u>The '930 Patent</u>

The '930 patent, entitled "Cooling Bearings, Motors, and other Rotating Heat Generating Components," claims priority to and is a continuation of U.S. Patent Application No. 11/330,896, filed on January 12, 2006, and issued as U.S. Patent No. 7,546,782 ("the '782 patent"). Both patents are directed to a novel apparatus for cooling heat generating components in a gyroscopic roll stabilizer for small boats. The '930 and '782 patents are improvements on the inventors' gyroscopic roll stabilizer for small boats. A gyroscopic roll stabilizer reduces the tendency of a small boat to roll about the longitudinal axis of the boat. Ex. 1001 at 5:41-54. The gyroscopic roll stabilizer is mounted onto a boat, and includes an enclosure with a large flywheel attached to a rotatable shaft and motor and supported by bearings. *Id.* 3:1-18. The enclosure maintains a below ambient pressure, *i.e.* a partial vacuum,

IPR2017-01931
U.S. Patent No. 8,117,930

and contains a below ambient density gas with a thermal conductivity at least five times greater than air. *Id.* Cl. 1. Within the enclosure, the flywheel is rotated at a very high speed. *Id.* 1:23-25.

During operation, as the flywheel spins and precesses, the bearings supporting the flywheel are subjected to high axial and radial loads, which produce a substantial amount of friction-generated heat; heat that must be dissipated in order to avoid dangerous heat build up. *Id.* 1:24-29. To cool the bearings, two pairs of interleaved vanes (heat transfer elements) are thermally coupled by a gas that is maintained in the enclosure and that has a thermal conductivity at least five times greater than air. *Id.* Cl. 1. One pair of vanes is coupled to the flywheel and positioned so that it transfers heat from the bearing to these vanes. *Id.* The second set of vanes interleave with the first set and are connected to the enclosure. *Id.* This arrangement cools the bearings as they carry the loads due to flywheel mass and the precession and anti-roll torques. *Id.*

The roll stabilizer is helpful for recreational uses, assisting first responders with rescues at sea, and in other situations where maintaining a boat's stability in choppy waves is important for mission requirements. The '930 patent's novel invention significantly improved Patent Owner's boat roll stabilizer by greatly increasing its reliability and energy efficiency.

7

IPR2017-01931
U.S. Patent No. 8,117,930

## B.    The Prosecution History

During prosecution of the application that led to the '930 patent, Applicant overcame two substantive 35 U.S.C. §103 rejections over prior art references, including Sibley, which is relied on by the Petitioner.[3]  *See* Ex. 2010 at 5-7 (Office Action dated 12-30-2010).   In the first response, Applicant argued that the combination of references did not disclose the enclosure containing a "below-ambient density gas and maintaining a below-ambient pressure."  *See* Ex. 2012 at 1 (Response to Office Action dated 5-09-2011).  Applicant also argued that the fins in Sibley only contemplate heat transfer by radiation.  *Id.* at 1-2.  Following Applicant's response, the Examiner acknowledged that Sibley failed to teach or suggest any specific thermal properties of the below-ambient density gas, accepted Applicant's arguments that the fins only transfer heat by radiation, and indicated that there was additional allowable subject matter in dependent claim 53.  *See* Ex. 2013 at 4-5 (Office Action dated 6-14-2011).  Applicant overcame the objection after amending the claims to incorporate this new allowable subject matter, reciting that "*the below ambient density gas has a thermal conductivity at least 5 times greater than air*." Ex. 2014 at 21 (Response to Office Action dated 9-21-2011).

---

[3] The other references explicitly relied on by the Examiner were U.S. Patent No. 5,628,267 ("Hoshio") and U.S. Patent No. 3,706,231("Noar").

## III.    PERSON OR ORDINARY SKILL IN THE ART

Petitioner argues that a person of ordinary skill in the art with respect to the

'930 Patent "would have a Bachelor of Science degree in mechanical engineering

with several years' experience in the design of flywheel devices, such as CMGs and

energy storage flywheels."  Pet. 11; Ex. 1003 (Buckner Decl.) ¶ 14.  Petitioner and

its expert provide no evidence to supports its arguments that a person of ordinary

skill would need years of experience in the design of "flywheel devices."  As stated

in the patent, the technical field is "methods and apparatus for cooling bearings,

motors, and other heat generating components that support and drive rotating

machinery, *e.g.*, flywheels that are enclosed in a partial vacuum."  Ex. 1001 at 1:16-

19.  Beyond the conclusory statement of its expert, Ex. 1003 ¶ 14, Petitioner has not

provided any reason why a person of ordinary skill would require three years

experience in designing only flywheels or CMGs (Control Moment Gyroscopes).

Pet. 11.  Instead, as supported by the patent specification, a person of ordinary skill

in the art would have a Bachelor of Science Degree in mechanical engineering or

equivalent experience and 1-2 years of experience designing rotating machinery.


## IV.    THE IDENTIFIED REFERENCES

In its 37 C.F.R. §42.104(b)(2) disclosures, Petitioner identifies four

references, which it combines in different ways: U.S. Patent No. 6,973,847

9

IPR2017-01931
U.S. Patent No. 8,117,930

("Adams"); U.S. Patent Publication No. 2005/0040776 ("Sibley"); Certified

Translation of DEl9909491 ("Jäger"); and U.S. Patent No. 3,844,341 ("Bimshas").

Adams is not prior art to the '930 patent and therefore was not considered.

Ex. 1006. Sibley discloses the use of interleaved fins to transfer heat using a heat

pipe and radiant heat transfer in a high vacuum. *See* Ex. 1009 at [0033], [0133],

[0140]. Jäger teaches using interleaved fins to cool a shaft using gas convection at

atmospheric pressure. Ex. 1011 at 1:41-47. Bimshas discloses using interleaved

cooling fins to transfer heat from a heat source to a heat sink using a gas or liquid at

ambient or higher pressure. Ex. 1012 at 3:17-25.

## V.    CLAIM CONSTRUCTION

For purposes of *inter partes* review, "[a] claim in an unexpired patent shall be

given its broadest reasonable construction in light of the specification of the patent

in which it appears." *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756,

48766 (Aug. 14, 2012); § 42.300(b). "Claim terms are given their ordinary and

customary meaning, as would be understood by one of ordinary skill in the art in the

context of the entire disclosure." *Ferrum Ferro Capital, LLC v. Allergan Sales,

LLC*, IPR2015-00858, Paper 10, 5 (Sept. 21, 2015). The construction must be read

in light of the specification as it would be interpreted by one of ordinary skill in the

art. *See, e.g.*, *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1260 (Fed. Cir. 2010). In

construing claim terms, "the claims of the patent need not encompass all disclosed

10

embodiments." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364,

1373 (Fed. Cir. 2008) (citing *PSN Ill., LLC v. Ivoclar Vivadent, Inc.,* 525 F.3d 1159,

1167 (Fed. Cir. 2008)).

The Broadest Reasonable Interpretation of a claim term is the "interpretation

that corresponds with what and how the inventor describes his invention in the

specification" and thus must be "consistent with the specification." *In re Smith Int'l,*

*Inc.*, 871 F.3d 1375, 1383 (Fed. Cir. 2017) (citing *In re Morris*, 127 F.3d 1048, 1054

(Fed. Cir. 1997)).  The Board cannot adopt any interpretation of a claim term on the

mere bases that the specification does not preclude that interpretation, or the

interpretation is not in conflict with or "not inconsistent with the specification." *Id*.

### A.    <u>"Adjacent" Should Be Construed as "Next To"</u>

Citing only a dictionary and the conclusory statements of its expert, Dr.

Buckner, Petitioner argues that the broadest reasonable interpretation of "adjacent"

in dependent claims 2 and 11 is "close to; lying near".  Pet. 10; Ex. 1003 ¶ 14.  But

neither Petitioner nor Petitioner's expert point to any specific portion of the

specification to support this construction.  More importantly, this construction does

not correspond with "how the inventor describes the invention in the specification."

*In re Smith Int'l, Inc.*, 871 F.3d 1375, 1383 (Fed. Cir. 2017).

First, construction of the term "adjacent" is unnecessary to reach a decision

denying institution on the ground that Petitioner failed to meet its burden.  *Vivid*

*Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."). To the extent the Board finds construction of "adjacent" necessary, the Board should adopt the construction "next to."[4] This construction is consistent with the figures and disclosure of "adjacent" in the patent, and the other terms of the claim. The term "adjacent" appears in claim 2 as part of the claimed feature that the "bearing is located adjacent the first plurality of vanes, such that heat flows from the inner race to the first plurality of vanes." Ex. 1001 at Cl. 2. As the patent explains in one preferred embodiment, heat flows by solid conduction from the inner race of the bearing to the "first vanes." *Id.* at 3:63-4:1 ("the bearing may have an inner race and an outer race … heat flows by conduction from the inner race to the first vanes…"). The specification further describes that the inner race and the "first vanes" are sized and positioned so that heat flows by "solid conduction." *Id.* at 4:3-8 ("the inner race, spinning member, first vanes and second vanes may be sized and positioned so that heat from the inner race of the bearing flows by solid conduction from the inner race to the spinning member and

---

[4] Other courts have construed "adjacent" to mean "next to." *See, e.g.*, *MBO Labs, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323 (Fed. Cir. 2007) (construing "adjacent" to mean "next to"); *Boss Indus., Inc. v. Yamaha Motor Corp. U.S.A.*, 333 F. App'x 531, 541 (Fed. Cir. 2009) (confirming construction of "adjacent" as "next to or adjoining" based on figures in the patent); *Depuy, Inc. v. Zimmer Holdings, Inc.*, 276 F. Supp. 2d 910 (N.D. Ill. 2003) ("[P]lain meaning of the term "adjacent portions" cannot be seriously disputed. 'Adjacent' means 'next to'").

IPR2017-01931
U.S. Patent No. 8,117,930

to the first vanes,"); *see also id*. 6:52-7:7 ("Heat generated by the bearing inner races… is transferred to the exterior by cooling collar assemblies …located ***adjacent*** each bearing…[t]he inner collars 54,56 have eleven cylindrical vanes");  8:1-53 ("FIGS. 10-14 show …cooling collars…***adjacent*** to the primary source of heat, i.e., the inner race of the flywheel bearings. … The result is very efficient heat transfer from the inner race of the bearing to the cooling collar").

Indeed, the figures in the '930 patent disclose that the fins are *next to* (i.e. "adjacent") the bearings and inner races.  *See* Ex. 1001 Figs. 10-14.



In other words, as in *In re Smith*, while the patent disclosure does not explicitly preclude Petitioner's proposed construction, it does provide an interpretation that is clearly different from and more particular than Petitioner's overly broad construction.  In view of the patent disclosure, the broadest reasonable interpretation of "adjacent" in the '930 patent as it relates to the bearings is "next to."  *See Smith Int'l, Inc.*, 871 F.3d at 1383.  That construction is consistent with the inventor's description of the invention embodiments and the figures, which all show the

13

fin/cooling collar elements next to the inner race of the bearing, which structure and location facilitates solid conduction heat transfer. *See* Ex. 1001 at 3:63-4:8, 6:52-7:7, 8:1-53, Figs. 11, 14.

### B. "Vane" Includes the Term "Fin"

While Patent Owner does not concede that the term "vane" as used in the context of the claims and specifications is limited to the term "fin," Patent Owner agrees that the term "vane" at least includes the term "fin".

### C. The Board Need Not Consider Constructions of "Exposed Surface" and "Closely Spaced"

While Petitioner's expert (without support) construes the terms "exposed surface" and "closely spaced," Petitioner in its brief does not present any arguments construing the terms, nor are either of these terms claims limitations. Ex. 1002 ¶ 13. Accordingly, the Board need not, and should not, consider the construction of these terms. *See Vivid Techs.*, 200 F.3d at 803 ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

## VI. INSTITUTION SHOULD BE DENIED BECAUSE PETITIONER CANNOT DEMONSTRATE THAT U.S. PATENT NO. 6,973,847 ("ADAMS"), THE PRIMARY REFERENCE FOR ALL GROUNDS, IS PRIOR ART TO THE '930 PATENT

The Board must deny institution because Petitioner cannot meet its burden of showing that U.S. Patent No. 6,973,847 ("Adams"), the primary reference relied on by Petitioner for all grounds, is prior art under any of the provisions of §102; this

failure renders all of Petitioner's asserted grounds fatally defective. As a result, all grounds of the Petition fail to make a *prima facie* case of obviousness.

As the Federal Circuit has made clear, petitioners have "the burden of persuasion to prove unpatentability by a preponderance of the evidence," including proving whether a reference is prior art. *See, e.g.*, *Dynamic Drinkware, LLC. v. Nat'l Graphics, Inc.,* 800 F.3d 1375 (Fed. Cir. 2015) (reversing Board decision and finding petitioner failed to meet burden of establishing a reference was prior art). Under 35 U.S.C. §311(b), a "petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." Petitioner asserts that the challenged claims are obvious under 35 U.S.C. §103 over Adams in combination with other publications. Pet. 7-8. To qualify as prior art for the purposes of (as relevant here[5]) pre-AIA 35 U.S.C. §103, a patent or printed publication must be prior art under one of the sections of pre-AIA 35 U.S.C. §102. *See*, *e.g.*, *Panduit Corp. v. Dennison, MFB, Co.*, 810 F.2d, 1561, 1568 (Fed. Cir. 1987) ("Before answering *Graham*'s 'content' inquiry, it must be

---

[5] Adams and the '930 patent have the exact same inventors. *Compare* Ex. 1001 *with* Ex. 1006  The work of the *same inventive entity* may not be considered prior art against the claims, even if that work appears in the background section of an application, unless it falls under one of the statutory categories. *See* Manual of Patent Examining Procedures § 2129 (9th Ed. 2015); *see also Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354-55 (Fed. Cir. 2003).

IPR2017-01931
U.S. Patent No. 8,117,930

known whether a patent or printed publication is in the prior Art under 35 U.S.C. § 102."); Manual of Patent Examining Procedures § 2141 (9th Ed. 2015) ("MPEP").

Given that Adams is a U.S. patent, under the wording of pre-AIA 35 U.S.C. §102, only pre-AIA 35 U.S.C. §§102(a), (b), or (e) apply here. In other words, Petitioner bears the burden of demonstrating its grounds rely on "patents or printed publications" that meet the requirements of pre-AIA 35 U.S.C. §102(a), (b), or (e).

But Petitioner has not even attempted to meet this burden, nor can it, because Adams is not prior art under any of these subsections.

First, Adams is not prior art to the '930 Patent under pre-AIA 35 U.S.C. §102(a) because Adams and the '930 Patent share the same inventors. A patent— such as Adams—*cannot* be prior art under this subsection if it shares the very same inventors as the patent-at-issue. As the Federal Circuit has repeatedly explained, "one's own work is not prior art under §102(a) even though it has been disclosed to the public in a manner or form which otherwise would fall under § 102(a)." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 968 (Fed. Cir. 2014) (quoting *In re Katz*, 687 F.2d 450, 454 (CCPA 1982)). Indeed, the MPEP makes clear that, with respect to "*all types* of references eligible as prior art under pre-AIA 35 U.S.C. § 102(a)," the term "others" refers to "any entity which is different from the inventive entity." *See* MPEP §2132; *see also Katz*, 687 F.2d at 454 ("[O]ne's own work is not prior art under §102(a) even though it has been disclosed to the public in a manner or form

16

IPR2017-01931
U.S. Patent No. 8,117,930

which otherwise would fall under 102(a)."). Here, John D. Adams and Shepard W. McKenney are the named inventors of *both* the '930 patent and Adams. *See* Ex. 1001, at [75]; Ex. 1006, at [75]. The Adams patent is the '930 patent inventors' own work and cannot provide statutory basis under pre-AIA 35 U.S.C. §102(a) against the '930 patent.

Similarly, Adams is not prior art to the '930 patent under pre-AIA 35 U.S.C. §102(e), again because Adams and the '930 patent share the same inventors. The statutory language of §102(e) requires that publications finding basis under that section be "by another." As the Federal Circuit has observed, "[P]atents issued to the same inventive entity are not prior art . . . under section 102(e) . . . ." *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1356 (Fed. Cir. 2003); *see also* MPEP §2136.04 ("by another" means that the inventive entity is not the same); *Application of Land*, 368 F.2d 866, 876–77 (C.C.P.A. 1966) ("[I]t is elementary that the copending application of the same inventor entity is not 'prior art'").

Finally, Adams is not prior art to the '930 patent under pre-AIA 35 U.S.C. §102(b), because Adams published December 13, 2005, which is not even *one month* before the priority date of the '930 patent.[6] Under pre-AIA 35 U.S.C. §102(b), an

---

[6] The priority date of the '930 patent is based upon the filing of the parent application, No. 11/330,896, which resulted in issuance of the '782 Patent. The '930 Patent is a continuation of the '782 Patent sharing a substantively identical specification. A copy of the '782 Patent specification as filed and as stored on PAIR is attached as Exhibit 2004. A review shows the figures and specification in the '782

17

IPR2017-01931
U.S. Patent No. 8,117,930

inventor is entitled to a patent unless the invention "was patented or described in a printed publication . . . more than one *year* prior to the date of application for patent in the United States."

Under 35 U.S.C. §311(b), *inter partes* review is limited to grounds supported by patents and printed publications. As such it is inconsequential (although Patent Owner notes it for completeness) that Petitioner failed to assert or provide any evidence showing that the invention was abandoned, patented first in another country, invented by another, or involved in an interference, such that pre-AIA 35 USC §102 (c), (d), (f) and (g) would be implicated.

As discussed above, Petitioner failed to provide an explanation regarding how Adams qualifies as prior art under any section of pre-AIA 35 U.S.C. §102. As the Federal Circuit and the Board have made clear, Petitioner cannot try to correct this error in reply without improperly introducing new evidence and new arguments that were not presented in its Petition—which the Federal Circuit and the Board have explicitly disallowed. As the Federal Circuit has explained, "[i]t is of the ***utmost***

_____

Application are virtually identical to the '930 specification, as common with continuation applications. Further, the Petitioner failed to argue that the '930 Patent is not entitled to the '782 Patent filing date; accordingly the '930 Patent is entitled to the priority date of the '782 Patent. *See Polaris Wireless, Inc. v. TruePosition, Inc.*, IPR2013-00323, Pap. 9, 29 (Nov. 15, 2013) ("[T]he issue first has to be raised by Petitioner in its petition" before Patent owner must show entitlement to earlier filing date); *Hewlett-Packard Co. v. MCM Portfolio, LLC*, IPR2013-00217, Pap. 10, 8-10 (Sept. 10, 2013) (denying institution where petitioner failed to show that the patent was not entitled to the filing date of its parent application).

18

*importance* that petitioners in the IPR proceedings adhere to the requirement that the initial petition identify 'with particularity' the 'evidence that supports the grounds for the challenge to each claim.'" *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016) (quoting 35 U.S.C. § 312(a)(3)). "All arguments for the relief requested in a motion must be made in the motion."

The Board has regularly denied institution where a petitioner has failed to establish that a primary reference is prior art under pre-AIA §102. *See, e.g. Globus Medical, Inc. v. Depuy Synthes Products, LLC*, IPR2015-00099, Decision Denying Institution of *Inter Partes* Review, Pap. 15 (May 1, 2015) (denying institution where petitioner failed to establish that primary reference was prior art); *Apple Inc. v. DSS Technology Mgmt., Inc.*, IPR2015-369, Decision Denying Institution of *Inter Partes* Review, Pap. 14 (same) (Aug. 12, 2005); *L-3 Commc'n Holdings, Inc. et al. v. Power Survey, LLC*, IPR2014-00832, Decision denial of Inter Partes Review, Pap. 9 (same) (Nov. 14, 2014); *Teva Pharms. USA, Inc. v. Indivior UK Limited*, IPR2016-00280, Decision Denying Institution of *Inter Partes* Review, Pap. 23 (June 10, 2016) (same); *Ariosa Diagnostics, Inc. v. Illumina, Inc.*, IPR2014-01093, Final Written Decision, Pap. 69 (Jan. 7, 2016) (same). As in those cases, the Board here should deny institution on all grounds.

19

IPR2017-01931
U.S. Patent No. 8,117,930

## VII.  OBJECTIVE EVIDENCE OF NON-OBVIOUSNESS SHOWS THAT THE '930 PATENT IS NOT INVALID FOR OBVIOUSNESS

Critically, the objective evidence of non-obviousness here—in particular  the commercial success that the Petitioner was aware of when filing the Petition—favors denial of institution on all grounds.  *See, e.g.*, *Lupin Ltd. v. Vertex Pharms. Inc.*, IPR2015-00405, Paper 13 (July 9, 2015); *Omron Oilfield & Marine, Inc. v. Varco, L.P.*, IPR2013-00265, Paper 11 (Institution Dec.) (Oct. 31, 2013).

Objective indicia of non-obviousness are not optional in a petition—when known, they must be disclosed and evaluated.  *See, e.g.*, *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340 (Fed. Cir. 2012).  Moreover, the Board has explained the importance of objective evidence when evaluating obviousness and has noted that a showing of "significant commercial success…overcomes the prima facie case of obviousness."  *Omron Oilfield & Marin*, Pap. 11 at 16.  While Patent Owner typically needs to show nexus between the patented invention and the commercial success and/or industry praise, "[a] prima facie case of nexus is established when the patentee shows both that there is commercial success, and that the product that is commercially successful is the invention disclosed and claimed in the patent."  *Id.* at 14  (finding a presumption of nexus between commercial success and patented invention where "the marketed product embodies the claimed features, and is coextensive with them").

20

IPR2017-01931
U.S. Patent No. 8,117,930

Here, there is no doubt that Patent Owner has been commercially successful, nor that the product that is commercial successful is the invention disclosed and claimed in the patent.  During Reexamination of U.S. Patent No. 6,973,847, John Adams, the Chief Engineer of Patent Owner (and a named inventor of both the '847 and '930 patents), submitted a declaration, Ex. 2003 ("Adams Decl."), describing the commercial success of Patent Owner's products.  Prior to 2008, Patent Owner did not have any sales or products on the market.  Ex. 2003 ¶ 17.  Patent Owner, as a new company, also faced a large entrenched competitor (Mitsubishi Heavy Industries) which had significant manufacturing, sales, and distribution capabilities, and which had been manufacturing gyrostabilizers (also known as "gyroscopic roll stabilizers") for small boats for more than ten years prior to Patent Owner's entry into the market.  *Id*. ¶ 18.  Despite these significant hurdles, by selling a product that embodies the claimed features of the '930 patent, between January 1, 2008, and October 1, 2017, Patent Owner supplied over 4,500 gyroscopic stabilizers for small boats, and is now the world leader in small boat motion control.  *Id*. ¶ 18; *see also* Ex. 2005 at 8.  In fact, the Ferretti Group, one of the largest customers of gyrostabilizers and a long-time customer of Mitsubishi's, switched to Patent Owner's gyroscopes because the products were superior to Mitsubishi's gyrostabilizers.  Ed. 2003 ¶¶ 20, 22.  Sundeck Yachts, another gyrostabilizer customer, also switched from Mitsubishi to Patent Owner's gyrostabilizers, because

21

the Patent Owner products reduced weight and power consumption. *Id*. ¶ 24. Patent Owner is now also the exclusive supplier of gyrostabilizers to Azimut-Benetti, Brunswick, Group Beneteau, Princess, Viking and Sunseeker, which together with Ferreti accounted for at least 55% of all boats sold in 2015 that could be fitted with a Seakeeper Gyrostabilizer. Ex. 2002 ¶ 11 ("Semprevivo Decl."). As such, between 2008 and 2017, Patent Owner went from 0% to around 55% market share. *Id*. Patent Owner's Refit Sales have also increased every year since inception. *Id*. ¶ 13.

As noted above, and as the chart below demonstrates, the '930 patent is directed to and coextensive with the Patent Owner products that have been so commercially successful in the marketplace—a fact which demonstrates a presumption of nexus to that commercial success. *See Transocean Offshore Deepwater Drilling*, 699 F.3d at 1349-50. Patent Owner only sells one type of product: the gyroscopic roll stabilizers, of different sizes, all of which are covered by Patent Owner's patents. *See* Ex. 2003 ¶ 17.

Claims 1-3 of the '930 patent are representative, and closely mirror Patent Owner's products, including the all Seakeeper models that have been sold. The following Claim Chart is for the Seakeeper 5:[7]

---

[7] Although certain figures below are from Seakeeper M8000 materials, all the essential features shown are also present in the Seakeeper 5, though with different dimensioning. *See* Ex. 2003 at 29.

IPR2017-01931
U.S. Patent No. 8,117,930

| Claim 1 | Seakeeper 5 |
|---|---|
| A gyroscopic roll stabilizer for a boat, the stabilizer comprising: | **The Seakeeper 5 is a gyroscopic roll stabilizer for a boat.** Ex. 2007 at 3 ("The Seakeeper 5 uses gyroscopic principles to reduce boat roll motions in waves and wakes independent of boat speed.") |
| a flywheel, the flywheel being configured to be spun about a spin axis; | **The Seakeeper 5 utilizes a flywheel configured to spin around an axis.** Ex. 2007 at 6 ("The gyro assembly consists of a flywheel housed in a cast aluminum vacuum-tight enclosure.")<br><br>*See also* Ex. 2003 at page 23 (annotated):<br><br> |
| a first plurality of vanes coupled to the flywheel such that the first plurality of vanes spin with the flywheel relative to an enclosure; | **The Seakeeper 5 includes a first plurality of vanes couple to the flywheel such that the first plurality of vanes spin with the flywheel relative to the enclosure.** Ex. 2011 (annotated): |

23

IPR2017-01931
U.S. Patent No. 8,117,930



| | |
|---|---|
| a second plurality of vanes fixed relative to the enclosure and the flywheel such that the first plurality of vanes spin with respect to the second plurality of vanes, the second plurality of vanes defining gaps into which the first plurality of vanes extend so that the first and second plurality of vanes are interleaved; | **The Seakeeper 5 includes a second plurality of vanes fixed to the enclosure such that the first plurality of vanes spin with respect to the second plurality of vanes.** Ex. 2011 (annotated):  **The second plurality of vanes defines gaps into which the first plurality of vanes extend such that the vanes are interleaved.** Ex 2011 (annotated): |

24

IPR2017-01931
U.S. Patent No. 8,117,930



| | |
|---|---|
| at least one rotating heat generating component coupled to the flywheel and positioned such that heat is transferred from the heat generating component to the first plurality of vanes; | **The Seakeeper 5 includes heat generating components (i.e. at least one "Flywheel Bearing") coupled to the flywheel which is further position such that heat is transferred from the heat generating component to the first plurality of vanes.** Ex. 2011 (annotated):<br><br> |
| the enclosure surrounding the first plurality of vanes, the second plurality of vanes, the heat generating component, and | **The Seakeeper 5 include an enclosure surrounding the vanes, bearings and other heat generating components, and the flywheel, is a vacuum; the enclosure is further filled with helium, a gas with thermal conductivity at least five times greater than air.** *See* Ex. 2009 at 4 (emphasis added): "The entire assembly undergoes a second balancing process that uses laser measuring devices to detect even minute vibrations. The housing is then fully sealed and the air is removed, creating a |

25

| | |
|---|---|
| a portion or all of the flywheel, the enclosure containing a below-ambient density gas and maintaining a below-ambient pressure, wherein the below ambient density gas has a thermal conductivity at least 5 times greater than air; and | vacuum. The unit is pumped down to zero torr, then backfilled to 10 torr of helium (a Torr is a unit of measure that describes pressure). *Seakeeper units are filled with helium because of its thermal conductivity properties.* Together these processes—run-in, creating the vacuum, and baking out the excess grease—take upwards of ten hours to complete on each unit. That doesn't even include machining, assembly, or testing."<br><br>**The Enclosure for the Seakeeper 5 is vacuum sealed.** *See* Ex. 2006 at 2:<br><br> |
| wherein the flywheel, the first plurality of vanes, the second plurality of vanes, the heat generating component, the enclosure, and the gimbal structure are configured so that, when installed in the boat, the stabilizer damps | **The Seakeeper 5 contains a first plurality of vanes, a second plurality of vanes, a heat generating component, an enclosure, and a gimbal structure.** Ex. 2011 (annotated): |

IPR2017-01931
U.S. Patent No. 8,117,930

| | |
|---|---|
| roll motion of the boat. | <br><br>**The Seakeeper 5 is configured so that, when installed in the boat, the stabilizer damps roll motion of the boat.** Ex. 2003 at page 29:<br><br> |

| Claim 2 | Seakeeper 5 Product |
|---|---|

27

IPR2017-01931
U.S. Patent No. 8,117,930

| The stabilizer of claim 1 wherein: | **As discussed above, *Supra* Claim 1, the Seakeeper 5 practices all the limitations of Claim 1.** |
|---|---|
| the heat generating component includes at least one bearing supporting the flywheel, the bearing having an inner race and an outer race; and | **The Seakeeper 5 includes at least one bearing supporting the flywheel, where that bearing has an inner race and an outer race.** *See* Ex. 2007 at 6 ("The flywheel spins about a vertical axis and is supported by upper and lower pairs of bearings."); *See also* Ex. 2003 at page 23 (cooling collars not shown)*:*  |
| the bearing is located adjacent the first plurality | **The bearings in the Seakeeper 5 are located adjacent to the first plurality of vanes such that heat flows from the inner race to the first plurality of vanes, from the first plurality to** |

IPR2017-01931
U.S. Patent No. 8,117,930

| of vanes such that heat flows from the inner race to the first plurality of vanes, from the first plurality of vanes to the second plurality of vanes, and from the second plurality of vanes to the exterior of the enclosure. | the second plurality of vanes, and from the second plurality of vanes to the exterior of the enclosure. *See* Ex. 2011 (annotated):  |
|---|---|

| Claim 3 | Seakeeper 5 Product |
|---|---|
| The stabilizer of claim 2 wherein the first plurality of vanes and the second plurality of vanes are sized and spaced such that heat flows from the first plurality of vanes to the second plurality of vanes by gaseous conduction. | **As discussed above, *Supra* Claims 1 and 2, the Seakeeper 5 practices all the limitations of Claims 1 and 2.**<br><br>**The Seakeeper 5 further has a first and second plurality of vanes which are sized and space such that heat flows from the first plurality of vanes to the second plurality of vanes by gaseous conduction.** *See* Ex. 2011 (annotated): |

29

IPR2017-01931
U.S. Patent No. 8,117,930



As discussed above, Claim 1 *Supra*, the Seakeeper 5 vacuum enclosure is further filled with helium for its thermal conductive properties. Heat is thus transferred between the fins in the enclosure by gaseous conduction. *See* Ex. 2009 at 4 (emphasis added): "Seakeeper units are filled with helium because of its thermal conductivity properties."

Here, despite the Federal Circuit's admonition that "evidence arising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness," *see Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012), Petitioner presented *no* such arguments—despite obviously being aware of Patent Owner's commercial success.

30

Indeed, Petitioner made its knowledge of Patent Owner's commercial success from having a patented invention that drives sales of its gyroscopic roll stabilizers absolutely clear in the demand letter, Ex. 2001, it sent to Patent Owner threatening to file this IPR petition unless Patent Owner settled in advance.  For example, in that letter to Patent Owner's investors, Petitioner suggested that Patent Owner offer a settlement to have the Petition put "back in the bottle" or "buried."  *Id*. at 1. Petitioner's founder observed that Patent Owner's "exit" value was, in his view, above $1 billion.  *Id*.  The IPR, Petitioner added, "is likely to be discovered after it becomes clear another competitor is about to come into the marketplace."  *Id*. Immediately making clear that Petitioner is that other competitor, and intends to compete with Patent Owner by making the product covered by Patent Owner's patents, Petitioner's founder added that, "[a]fter filing we will immediately begin development with the goal of being ready when this IPR is completed."  *Id*.  (He also added, in suggesting that Patent Owner would be severely harmed should it not "settle" in advance, that, "[o]n the other hand, its unlikely this material will get discovered if buried now…")  *Id*.

Put another way, it is precisely because of Patent Owner's commercial success selling the patented invention that Petitioner is filing IPRs.

Petitioner's lack of arguments that address this secondary consideration of commercial success establish that the Petitioner has failed to meet both parts of the

IPR2017-01931
U.S. Patent No. 8,117,930

obviousness analysis required under 35 U.S.C. §103, and the Board should not institute proceedings.

## VIII.  THE PETITION SIGNIFICANTLY AND IMPROPERLY EXCEEDS THE BOARD'S WORD LIMIT, AND THE BOARD SHOULD EXCLUDE THE EXTRANEOUS MATERIAL

According to 37 C.F.R. §42.24(a)(1)(i), a Petition requesting *inter partes* review is limited to 14,000 words.  Both the Board's regulations and the Board's decisions make clear that this word limit is binding.  So, for example, petitioners may not circumvent these word limits by seeking to incorporate other documents by reference.  *See, e.g.*, 37 C.F.R. §42.6(a)(3) ("Arguments **must not** be incorporated by reference from one document into another document."); *Boehringer Ingelheim Int'l Gmbh v. Biogen Inc.*, IPR2015-00418, Pap. 14, 10 (July 13, 2015).

But—despite Petitioner's certification to the contrary—the Petition here significantly and improperly exceeds this 14,000-word limit.  Petitioner certified that its Petition is 13,058 words.  *See* Pet. at 82.  But, throughout its Petition, Petitioner repeatedly cites to and relies on what Petitioner refers to as a "Claim Chart Appendix"—which is actually merely a 17-page claim chart included as Section X of Petitioner's 10-section Petition.  *See* Pet. 64-80. (For example, Petitioner states that "[t]he Claim Chart Appendix (Section X) provides a claim mapping of all of the elements of claims 1-17 in accordance with Grounds 1 and 2."  Pet. 26; *see also* Pet. 28, 39, 41, 51, 53, 62.)  But Section X is at least an additional 3,961 words long.

32

Together with the 13,058 words that Petitioner *admits* the Petition contains, this means that the Petition is actually over 17,000 words—over *20%* longer than allowed by the Board's regulations. Petitioner's certification is thus either mistaken or false.[8]

Even if Petitioner were correct—and it is not—that the claim chart (Section X of the Petition) is not *part* of the Petition, Petitioner's use of the claim chart is still inappropriate, because under the Board's regulations Petitioner is barred from incorporating by reference any of the arguments therein. *See, e.g.*, 37 C.F.R. §42.6(a)(3); *see also Cisco Sys., Inc. v. C-Cation Techs., LLC*, IPR2014-00454, Pap. 12, at 10 (Aug. 29, 2014) (denying institution and noting that incorporation by reference "amounts to a self-help increase in the length of the [] brief" (citation omitted)).

The Board should not consider, and should thus decline to institute, the petition on any grounds such that would permit the Petitioner to exceed the 14,000 word limit. Accordingly, the Board should exclude all but 942 words of Petitioner's Claim Chart from the Petition. *See Shenzhen Huiding Tech. Co. v. Synpatics Inc.,* IPR2015-01739, Pap. 8, 20-22 (Feb. 16, 2016) (declining to institute on certain

---

[8] While 37 C.F.R. 42.24 excludes from the word count "a table of contents, a table of authorities, mandatory notices under § 42.8, a certificate of service or word count, or appendix of exhibits or claim listing," a substantive claim chart presenting additional arguments and mapping claim elements to prior art does not fall within these exceptions.

IPR2017-01931
U.S. Patent No. 8,117,930

grounds where Petitioner exceeded the page limit, and "reduc[ing] the Petition by the same number of pages that would have otherwise been required to be included in the Petition" where Petitioner exceeded the page limit); *Cisco Sys., Inc.*, IPR2014-00454, Pap. 12, at 10 (Aug. 29, 2014) ("Accordingly, we will not consider arguments that are not made in the Petition, but are instead incorporated by reference….").

## IX.    CONSTITUTIONALITY OF *INTER PARTES* REVIEW

While the Federal Circuit has held IPRs are constitutional, *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1288-92 (Fed. Cir. 2015), *cert. denied*, 137 S. Ct. 292 (2016), in light of the Supreme Court's grant of *certiorari* as to this issue in *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,* 137 S. Ct. 2239 (2017), and to the extent Federal Circuit precedent is overturned, Patent Owner reserves its right to raise constitutionality of IPR.

## X.    CONCLUSION

As an initial matter, institution must be denied with respect to all Grounds because Petitioner cannot meet its burden of demonstrating that Adams, its base reference for all Grounds, is prior art under 35 U.S.C. §102—and it is not.   Because the Petition fails to show that there is a reasonable likelihood that Petitioner will prevail in proving *any* challenged claim unpatentable, the Petition should be denied in its entirety, and, pursuant to § 314, no *inter partes* review should be instituted.

65848454_2

IPR2017-01931
U.S. Patent No. 8,117,930

Dated:  November 17, 2017

Respectfully submitted,

**ROPES & GRAY LLP**

By:     /Edward J. Kelly/
        Edward J. Kelly

        Mailing Address for all PTAB
        Correspondence:
        **ROPES & GRAY LLP**
        IPRM Docketing – Floor 43
        Prudential Tower
        800 Boylston Street
        Boston, MA 02199-3600

        *Attorneys/Agents For Patent Owner*

65848454_2

IPR2017-01931
U.S. Patent No. 8,117,930

## CERTIFICATE OF WORD COUNT

The undersigned certifies that the foregoing PATENT OWNER'S PRELIMINARY RESPONSE UNDER 37 C.F.R. § 42.107 complies with the type-volume limitation in 37 C.F.R. § 42.24(c)(1). According to the word-processing system's word count, and including substantive text in figures, the brief contains 7,659 words, excluding the parts of the brief exempted by 37 C.F.R § 42.24(c).

Dated: November 17, 2017           Respectfully submitted,

By:   /Andrew J. Sutton/
Andrew J. Sutton
**ROPES & GRAY LLP**

IPR2017-01931
U.S. Patent No. 8,117,930

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this PATENT OWNER'S PRELIMINARY RESPONSE UNDER 37 C.F.R. § 42.107 was served by filing this document through the Patent Trial and Appeal Board End to End (PTAB E2E) as well as providing a courtesy copy via e-mail to the following attorneys of record for the Petitioner listed below:

| Lead Counsel: | David D. Bennett (Reg. No. 32,194)<br>COATS & BENNETT, PLLC<br>1400 Crescent Green, Suite 300<br>Cary, NC 27518<br>T: 919-854-1844<br>F: 919-854-2084<br>dbennett@coatsandbennett.com |
|---|---|
| Back-up Counsel: | Brandee N. Woolard (Reg. No. 68,785)<br>COATS & BENNETT, PLLC<br>1400 Crescent Green, Suite 300<br>Cary, NC 27518<br>T: 919-854-1844<br>F: 919-854-2084<br>bwoolard@coatsandbennett.com |

Dated:        November 17, 2017        Respectfully submitted,

By:    /Crena Pacheco/
Name:  Crena Pacheco
**ROPES & GRAY LLP**