## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAKEEPER, INCORPORATED, | |
| Plaintiff, | C.A. No. 25-0484-JCB |
| v. | **REDACTED PUBLIC VERSION** |
| DOMETIC CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

### SEAKEEPER, INCORPORATED'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

OF COUNSEL:

MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 474-6300

Steven J. Fineman (#4025)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*
*SEAKEEPER, INC.*

Dated: May 26, 2025

1

# **TABLE OF CONTENTS**

| | | | |
|---|---|---|---:|
| **I.** | | Seakeeper Is Likely to Succeed on the Merits ................................................................ | 5 |
| | **A.** | Dometic Has and Continues to Commit Acts of Infringement ............................... | 5 |
| | **B.** | The DG3 Infringes ................................................................................................. | 8 |
| | **C.** | Dometic Has Failed to Show a Substantial Question of Validity ........................... | 9 |
| **II.** | | Seakeeper Will Suffer Irreparable Harm ........................................................................ | 12 |
| **III.** | | The Balance of Equities Favors Seakeeper .................................................................... | 14 |

# TABLE OF AUTHORITIES

**Cases**

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964) .................................................................................................................. 6

*Biometics, LLC v. New Womyn, Inc.*,
    112 F.Supp.2d 869 (E.D. Mo. 2000) ....................................................................................... 5

*Douglas Dynamics, LLC v. Buyers Prod. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013) ................................................................................................ 8

*Fellowes, Inc. v. Michilin Prosperity Co.*,
    491 F. Supp. 2d 571 (E.D. Va. 2007) ....................................................................................... 6

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014) ................................................................................................ 9

*Genentech, Inc. v. Chiron Corp.*,
    112 F.3d 495 (Fed. Cir. 1997) .................................................................................................. 9

*Hybritech Inc. v. Abbott Lab'ys*,
    849 F.2d 1446 (Fed. Cir. 1988) .............................................................................................. 14

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*,
    693 F. Supp. 2d 409 (D. Del. 2010) ......................................................................................... 7

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014) .............................................................................................. 12

*ISCO Int'l, Inc. v. Conductus, Inc.*,
    C.A. No. 01-0487, 2003 WL 280276 (D. Del. Feb. 10, 2003) ................................................ 5

*M/A-COM Tech. Sols. Holdings, Inc. v. Laird Techs., Inc.*,
    No. CV 14-181-LPS, 2014 WL 2727198 (D. Del. June 13, 2014) .......................................... 9

*Mabe, LLC v. Wie*,
    No. 2:25-CV-00319-DBB, 2025 WL 1433910 (D. Utah May 19, 2025) .............................. 14

*Meiresonne v. Google, Inc.*,
    849 F.3d 1379 (Fed. Cir. 2017) .............................................................................................. 10

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005) ................................................................................................ 6

*Natera, Inc. v. NeoGenomics Labs., Inc.*,
    106 F.4th 1369 (Fed. Cir. 2024) ............................................................................................ 11

RLF1 33038049v.1

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................... 8

*Polaris Indus. v. Arctic Cat, Inc.*,
    882 F.3d 1056 (Fed. Cir. 2018) ............................................................................................. 12

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) ....................................................................................... 12, 13

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    863 F. Supp. 186 (D. Del. 1993) .......................................................................................... 7, 8

*Woodard v. Sage Prods., Inc.*,
    818 F.2d 841 (Fed. Cir. 1987) ............................................................................................... 13

RLF1 33038049v.1

I. **SEAKEEPER IS LIKELY TO SUCCEED ON THE MERITS**

A. **Dometic Has and Continues to Commit Acts of Infringement**

Dometic declares for the first time after months of engagement that it has "**no involvement** with the accused product." D.I. 41 at 12 (emphasis added); D.I. 32, ¶5. This is false. *First,* Dometic offers the DG3 product for sale on its website, and induces boat manufacturers to purchase that product and offer it for sale as an option on their own products. Duston Supp. Decl, ¶¶7-16. (**DOMETIC CORPORATION (U.S.) Website** (the "Website" or dometic.com/en-us/us") **operated by DOMETIC CORPORATION** ("Dometic")) (emphasis added). That website provides pricing for the DG3 product, warranty and payment terms, and guides purchasers to its "dealer network" at locations within the United States, including in this District. *Id.* ("find a store.") The website advises "Dometic DG3 will begin shipping in June 2025," and it invites consumers to submit information in an interactive form to receive a response from a "specialist" with further information. *Id.* These acts establish that Dometic has, and intends to continue[1], offering the DG3 product for sale in the United States, an infringing act. *See ISCO Int'l, Inc. v. Conductus, Inc.*, C.A. No. 01-0487, 2003 WL 280276, at *2 (D. Del. Feb. 10, 2003) ("Web site pages . . . considered offers for sale if they include pricing and/or other ordering information[.]"); *Biometics, LLC v. New Womyn, Inc.*, 112 F.Supp.2d 869, 873 (E.D. Mo. 2000) (website contained pricing information, form to request additional information,

---

[1] A presently existing threat of injury alone is sufficient to support entry of a preliminary injunction. *See* Ride the Ducks of Philadelphia, LLC v. Duck Boat Tours, Inc., 138 F. App'x 431 (3d Cir. 2005) ("If forced to share the ramp with a competitor, Ride The Ducks would likely lose customers and, in turn, income. Although such injury has not yet occurred, because the purpose of a preliminary injunction is to prevent the occurrence of injuries, the demonstration by Ride The Ducks of a "presently existing **actual threat**" of injury suffices at this stage of the proceedings.")

RLF1 33038049v.1

and independent sales representative locator, were offers to sell within the meaning of Section 271[a]). One purpose for the prohibition on offers to sell is "to prevent . . . generating interest in a potential infringing product to the commercial detriment of the rightful patentee." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005).

*Second,* Dometic's importation and use of the Dometic DG3 at the 2025 Miami Boat Show are acts of infringement. Dometic operated a booth at which imported units of the DG3 product were showcased, it installed (or had installed) DG3 units on two 34-foot Regulator Marine boats, and it operated those units on hourly demonstration rides to potential purchasers. Duston Supp. Decl., ¶¶4-6. These acts constitute an infringing use. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484 (1964) (unauthorized use constitutes infringement); *Fellowes, Inc. v. Michilin Prosperity Co.*, 491 F. Supp. 2d 571, 583 (E.D. Va. 2007) (Foreign manufacturer engaged in unauthorized importation to Underwriters Laboratory for approval). That these were Dometic's acts is clear. The booth prominently displayed the Dometic trademark.  Employees promoting the DG3 at the trade show and those responsible for operating DG3 installed boats were identified as Dometic employees. Dometic claims exclusive use in the U.S., and direct damage from its unauthorized use. Duston Supp. Decl.. *id.*

Dometic seeks to deflect blame to its wholly owned subsidiary, Dometic Marine.[2]  D.I. 41 at 5, 13.  Dometic, however, does business as "Dometic Marine." Duston Supp. Decl., ¶6. Dometic announced introduction of the DG3 from Illinois—the State of its principal place of business—not Canada. *Id*., ¶2-3. Dometic promoted and offered the DG3 for sale on its website,

---

[2] The declarant, Mr. Timothy Hall, has evidently been at Dometic most recently for less than three months, and last employed before the DG3.  Duston Supp. Decl., ¶17.  Mr. Hall's Linkedin Profile suggests that he, personally, has no involvement in Dometic's marine products ("regional" President for "sub-segment" of "Land Vehicles").

and it imported, installed and used the DG3 in demonstration craft bearing trademarks for which it claims to have exclusive rights to use in the United States. That certain intellectual property embodied in the device may be held in the name of a Dometic subsidiary, and that it may be manufactured in Canada by that subsidiary, matters not.

Dometic asserts, without authority, that an injunction against its infringement cannot extend to its dealings with its subsidiary. Dometic indisputably may be enjoined from such acts.

Moreover, Delaware's long-arm statute recognizes personal jurisdiction over foreign related companies under these circumstances. In *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, for example, the court exercised jurisdiction over two corporations that were "two arms of the same business group in their attempt to achieve the common goal of selling lenses in Delaware and other markets." 863 F. Supp. 186, 188-89 (D. Del. 1993) (shared ultimate parent, appeared to operate as larger business group, financial statements presented as a unit, presented as unified entity to employees and marketplace, and shared patented technology); *see also In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.,* 693 F. Supp. 2d 409, 413, 4221 (D. Del. 2010) (corporations had a "nearer than arms length" relationship where they present themselves as a single source through use of common trademarks.)

Such a "nearer than arms length" relationship exists here. Both parent and subsidiary present themselves to the market and identify their employees as a unified entity. Duston Supp. Decl., ¶¶2-16. The subsidiary holds certain patent rights in the DG3 that it apparently shares with Dometic, its parent. Both employ common trademarks designed to identify them as a single source of products. *Id.* Their financial performance is reported as a single unit. *Id.*, ¶18 Dometic establishes the terms and conditions of sale for it, as well as all of its subsidiaries. *Id.*, ¶12.

Dometic contends no evidence links the DG3 to Delaware. Dometic transacts sufficient

7

business in the state, as reflected by its network of authorized dealers, to be subject to general jurisdiction. Under *Wesley-Jessen*, these general contacts are also attributable to its subsidiary. Additionally, Dometic is wrong no evidence exists connecting the DG3 and Delaware. Haynes Decl., ¶¶3-7 (describing infringing offer of DG3 by Regulator Marine induced by Dometic).

### B. The DG3 Infringes

Dometic asserts Claims 11 and 17 of the '782 patent require air-cooled devices. *See* D.I. 41 at 10-12, 16-18. Dometic points to no such requirement in the claims. Instead, Dometic seeks to import limitations into these claims from examples described in the patent's specification. *See* D.I. 41 at 10 ("The specification asserts that this cooling method is beneficial[.]"). This is improper as a matter of law. *See Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013) (limitations may not be read into the claims from the written description).

Dometic's efforts contravene the patent specification. D.I. 1-1 at 6:15-22 ("[C]annot be emphasized too strongly … the invention … is not limited to the detailed implementations described[.]"); *see also* 10:4-10 ("Features have been intentionally left out of claims in order to describe the invention at a breadth consistent with the inventors' contribution."); Troche Supp. Decl. at ¶2. A POSA would understand these claims require only that heat is removed from the interior of the device to its exterior and that second vanes are "configured" such that this transfer can readily occur. *See, e.g.,* D.I. 1-1 at 4:15-16 (The fins serve as part of "a heat path to **the exterior of the device**.") (emphasis added). The claims do not limit means by which heat received by the second vanes is further removed from the device. Troche Supp. Decl. at ¶¶7-9. In fact, dependent Claim 19 specifically recites use of exterior "air-cooled fins" to dissipate heat removed from the interior. *Id.* at ¶10; s*ee Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not in the independent claim.").

8

Dometic asserts Plaintiff disclaimed all uses of liquids to dissipate heat. *See* D.I. 41 at 17. Dometic misrepresents statements expressing benefits of avoiding "a spray of cooling liquid [is directed] onto the rotating vanes … flow[s] radially outward over the surface of the vanes as a thin film of liquid, **and is thrown off the vanes by centrifugal action[,]**"collected, and recirculated. D.I. 1-1 at 4:51-62 (emphasis added); Troche Supp. Decl. at ¶12.   These statements do not address the DG3's use of liquid, nor constitute disavowal of any sort. *See, e.g., GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) (exacting standard requiring specification make clear the invention does not include a particular feature).

Dometic admits its DG3 device removes heat from its interior, *i.e.* readily transfers the heat to the exterior of the enclosure. Additionally, Dometic does not contest that the second vanes in its device are "configured" such that this heat can be readily transferred from the heat generating bearings. *See* Troche Supp. Decl. at ¶¶15-19. The DG3's additional use of a cooling loop to augment this transfer does not avoid infringement. *See Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495, 501 (Fed. Cir. 1997) ("Comprising" is a term of art … mean[ing] … other elements may be added and still form a construct within the scope of the claim.)[3]

### C. Dometic Has Failed to Show a Substantial Question of Validity

Dometic must show a "substantial question" concerning invalidity. *M/A-COM Tech. Sols. Holdings, Inc. v. Laird Techs., Inc.*, No. CV 14-181-LPS, 2014 WL 2727198, *3 (D. Del. June 13, 2014). Dometic improperly incorporates by reference two unsuccessful petitions for *inter partes* review and two eight year old declarations. *See* D.I. 46 at 17-19. Dometic concedes, however, the primary references relied upon are not prior art. *See* D.I. 46 at 17, n.7.

---

[3]  There is also no merit to Dometic's contention that the fluid that draws heat from the second vanes is located within the "interior" of the enclosure. The liquid circulates within channels formed in the enclosure. It is not within the enclosure's interior.

Dometic asks the Court to re-write these declarations, substituting a reference not addressed. D.I. 46 at 17-18. Even if indulged, Dometic's arguments fail.

For purposes of economy, Plaintiff will address the validity of Claim 17 of the '782 Patent.[4] Dometic incorporates by reference arguments that this claim is obvious based upon (1) U.S. Patent No. 6,973,847 ("Adams") in view of U.S. Patent Publication No. 2005/0040776 ("Sibley") and in further view of U.S. Patent No. 3,844,341 ("Bimshas"), or (2) Adams in view of DE19909491 ("Jäger") and in further view of Bimshas. D.I. 46 at 17-18. Neither argument raises a substantial question of validity.

As to the Sibley combination, Dometic proposes incorporating Sibley's cooling design into Adam's vacuum-sealed, gyrostabilizer enclosure, and then altering Sibley's vanes to mimic Bimshas's shape. In its Opening Brief, Plaintiff laid out why a POSA would not have been motivated to incorporate Sibley's cooling design, or have reasonably expected its success. *See* D.I. 9 at 10-11. Dometic has not even attempted to rebut these arguments.

Dometic has further failed to show motivation to modify Sibley's design with Bimshas'. Bimshas teaches away from use of cooling vanes in a vacuum. *See* Troche Supp. Decl. at ¶40 and Att. NT-7 at 3:17-24 (A "gas . . . could be provided *under pressure* within the gaps" of the interleaved fins) (emphasis added). A POSA would not have incorporated vanes dependent on pressurized environments into the vacuum cooling assembly of Sibley. Troche Supp. Decl. at ¶41; *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017) (Reference teaches away if POSA "would be … led in a direction divergent from the path that was taken in the claim.").

Further, Bimshas is not directed to cooling high-heat generating flywheel bearings. *See*

---

[4] Plaintiff does not concede Dometic's arguments concerning the remaining claims. However, Plaintiff need only present a likelihood of success on a single claim to prevail.

10

Troche Supp. Decl. at ¶33. Bimshas cools "*intergimbal* assembl[ies] of inertial guidance structures." Att. NT-7 at 1:22-26 (emphasis added). Gimbals merely allow a gyro to rock forward and back. Troche Supp. Decl. at ¶34. This intermittent, slow movement, and the heat it imparts, is fundamentally unlike the extremely high heat produced in bearings supporting a gyrostabilizer flywheel. *Id.* at ¶35. A POSA would not have considered cooling vanes adapted for such low, fluctuating heat suitable for gyrostabilizer flywheels spinning at very high speeds. *Id.* at ¶37; *see also id.* at ¶¶34-36 (gimbal axis rotates around 25 RPM, whereas flywheels spin at more than 8000 RPM; gimbal application dissimilar in heat and frictional losses.) Bimshas's design would be inoperable at flywheel rotational speeds. *Id.* at ¶34. A POSA would not look to Bimshas when confronting a problem relating to flywheels enclosed in a partial vacuum. *Id.* at ¶38. Dometic does not address these concerns. *See Natera, Inc. v. NeoGenomics Labs., Inc.*, 106 F.4th 1369, 1377 (Fed. Cir. 2024) ("little more than conclusory argument with no meaningful supporting documentation" failed to raise a "substantial" question of validity).

Jager suffers the same defects as Bimshas. Jager's cooling fins depend upon *gas convection* achieved at *atmospheric pressure*. Troche Supp. Decl. at ¶27 and Att. NT-6 at 1:36-47. Nor is Jäger directed to a gyrostabilizer using a flywheel. A POSA would not look to Jager in confronting cooling unique to the claimed gyrostabilizer. Troche Supp. Decl. at ¶28.

Nor would a POSA modify Jäger using Bimshas' design.  In Jager, a shaft rotates in close tolerances within a sleeve. *Id.* at ¶29 and Att. NT-6 at 3:1-30. The proximity of the shaft and sleeve demands that interleaved fins along the length of that shaft be oriented perpendicular (NOT parallel) to the axis of rotation. *Id.* This perpendicular orientation is essential to realizing Jager's ability to increase heat dissipation by adding fins along the length of the shaft. Troche

11

Supp. Decl. at ¶29 and Att. NT-6 at 4:16-20.[5] The minimal clearance between shaft and sleeve would not permit use of Bimshas' parallel oriented fins. Troche Supp. Decl. at ¶43 and Att. NT-6 at 3:1-30. A POSA would not have been motivated to use Jager's design or to modify it in view of Bimshas, nor would they have reasonably expected success. Troche Supp. Decl. at ¶43. Dometic's invalidity arguments improperly rely entirely on hindsight. *See, e.g., InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1352 (Fed. Cir. 2014) (rejecting expert "hindsight" consisting of conclusory references to her belief one would combine); *see also Polaris Indus. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1068 (Fed. Cir. 2018) ("[P]rejudice of hindsight bias often overlooks that the genius of invention[.]")

## II.     SEAKEEPER WILL SUFFER IRREPARABLE HARM

Plaintiff does not rely solely upon a presumption of irreparable harm. Plaintiff has provided evidence of specific irreparable harms it is likely to suffer. Dometic's authority acknowledges infringement works irreparable harm to a patent owner's right to exclude. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either.")

First, Dometic misrepresents Seakeeper's arguments. Seakeeper did not allege it "would essentially cease to exist." D.I. 41 at 19. Nor does irreparable harm require Plaintiff establish a risk of complete extinction. Dometic misleadingly asserts Plaintiff will suffer no harm, relying upon projections prepared *before* Dometic's infringement. These year-old projections were based upon assumptions that Plaintiff would be presently protected by its patents. Plaintiff has presented evidence how Dometic's infringement has upset these expectations, undone the plans

---

[5] Jager locates these fins at the shaft's mid-point. Troche Supp. Decl., ¶43. Similarly placement in a gyrostabilizer would locate them on circumference of flywheel's bulge, far from the bearings they are intended to cool, and potentially interfering with the flywheel's operation. *Id.,* ¶30.

RLF1 33038049v.1

upon which they were based, and threatens to cause irreparable harm. D.I. 9 at 15; D.I. 12 at 3-4; D.I. 13, RS-8 at 20, 23, 28, 30; see also D.I. 31, ¶¶ 16-17, 47-48. Dometic also wrongly suggests Plaintiff is less deserving of injunctive relief because the patents' remaining life is limited. *Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 854 (Fed. Cir. 1987) ("[p]atent rights do not peter out as the end ... is approach[es]."). Plaintiff has explained the importance of this remaining life.

Second, Dometic asserts Plaintiff's irreparable harm is to only a narrow market. The fact that infringer's harm affects only a portion of patentee's business "says nothing about whether that harm can be rectified." *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152 (Fed. Cir. 2011). This purportedly "narrow" segment accounted for nearly ▮ of Seakeeper's overall gyrostabilizer unit sales. Semprevivo Decl. ¶5. Nor does Dometic promise intend to restrict infringement to its DG3. D.I. 11, AS-7, p. 2; D.I. 31, ¶26.

Third, Plaintiff's allegations of harm are not speculative. As to market share, Plaintiff has already lost business a key customers (Regulator) to Dometic. Dometic prominently promotes its Regulator partnership, believing it will divert other purchasers to Dometic. *See https://www.dometic.com/en-us/outdoor/lp/marinelp-gyroscopic-stabilization/.* Dometic has further threatened to leverage its dominant positions in boat steering systems. Duston Supp. Decl., ¶2, TD-5. Given Plaintiff's ▮ market share, virtually every DG3 sale represents a lost sale. D.I. 31, ¶40. Prior to Dometic's infringement, Seakeeper retained over ▮ of its channel partners, accounting for more than ▮ of its revenue. D.I. 13, RS-8, 18-20. High-end user satisfaction drives future demand. *Id.* Dometic also does not dispute multi-year consequences of the incorporation of a specific gyrostabilizer into a boat design, or that such a relationship makes it difficult for another vendor to re-establish a relationship with a particular OEM. Damage to these relationships is irreparable. *Apple*, 809 F.3d at 645 (irreparable harm from loss of even single customer

due to "network effect" where satisfied customers advertise product to their friends, family, etc.); *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456 (Fed. Cir. 1988) (irreparable harm based on potential inability to establish market position and create business relationships in market).

With respect to price erosion, Seakeeper has shown specific instances of price erosion. Seakeeper has ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. D.I. 12, ¶20. Dometic's reference to Seakeeper's advertised list price misses the mark. Plaintiff provided specific evidence that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Seakeeper has strategically avoided engaging with marine industry purchasing groups such as the IBBI to preserve pricing flexibility and sustain profit margins. Semprevivo Decl., ¶6. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* These actual instances of reputational harm demonstrate irreparable harm.

Fourth, Dometic does not contend harms are easily quantified. D.I. 41 at 22 (calling estimates "fanciful"). *See Mabe, LLC v. Wie*, No. 2:25-CV-00319-DBB, 2025 WL 1433910, at *3 (D. Utah May 19, 2025) (harm irreparable even where possible to estimate because of demonstrated loss of business opportunities and likely diminishment of market share).

Fifth, Seakeeper has established the requisite nexus. Gyrostabilizers at the size needed for small and medium-sized boats would not be possible without first solving the problem of how to cool it properly. D.I. 10 at 10. While reference to the performance made possible by the patented cooling would suffice, Plaintiff nevertheless expressly features cooling in its promotional materials. D.I. 13, ¶6 and RS-1 through RS-4.

### III. THE BALANCE OF EQUITIES FAVORS SEAKEEPER

Dometic fails to refute any of Seakeeper's arguments regarding balancing the equities.

<table>
<tr><td>

OF COUNSEL:

MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 South Wacker Drive
Chicago, IL 60606
(312) 474-6300


Dated: May 26, 2025

</td><td>

/s/ *Kelly E. Farnan*
Steven J. Fineman (#4025)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*
*SEAKEEPER, INC.*

</td></tr>
</table>

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2025, a true and correct copy of the foregoing document was caused to be served by e-mail on the following counsel:

**BY E-MAIL**

Andrew C. Mayo
Brian A. Biggs
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

**BY E-MAIL**

Oleg Khariton
Dinsmore & Shohl LLP
255 E. Fifth Street
Suite 1900
Cincinnati, OH 45202

**BY E-MAIL**

Michael. A. Xavier
Dinsmore & Shohl LLP
1775 Sherman Street
Suite 2600
Denver, CO 80203

/s/ Kelly E. Farnan
Kelly E. Farnan (#4395)
farnan@rlf.com