**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SEAKEEPER, INCORPORATED,

                Plaintiff,

      v.

DOMETIC CORPORATION,

                Defendant.

C.A. No. 25-0484-JCB

**REDACTED PUBLIC VERSION**

**JURY TRIAL DEMANDED**

**SEAKEEPER, INCORPORATED'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR A TEMPORARY RESTRAINING ORDER WITH NOTICE**

OF COUNSEL:

MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 474-6300

Steven J. Fineman (#4025)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff
SEAKEEPER, INC.*

Dated: May 27, 2025

## TABLE OF CONTENTS

I.   SEAKEEPER IS LIKELY TO SUCCEED ON THE MERITS................................................5

    A.   Dometic Has and Continues to Commit Acts of Infringement..............................5

    B.   The DG3 Infringes ................................................................................................8

    C.   Dometic Has Failed to Show a Substantial Question of Validity...........................9

II.  SEAKEEPER WILL SUFFER IRREPARABLE HARM .......................................................12

III. THE BALANCE OF EQUITIES FAVORS SEAKEEPER....................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple Inc. v. Samsung Elecs. Co.*,
    809 F.3d 633 (Fed. Cir. 2015)...................................................................................................13

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964).......................................................................................................................6

*Biometics, LLC v. New Womyn, Inc.*,
    112 F.Supp.2d 869 (E.D. Mo. 2000)............................................................................................5

*Cephalon, Inc. v. Watson Pharms., Inc.*,
    629 F. Supp. 2d 338 (D. Del. 2009)..............................................................................................7

*Douglas Dynamics, LLC v. Buyers Prod. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013).....................................................................................................8

*Evonik Degussa GmbH v. Materia, Inc.*,
    C.A. No. 09-636, 2017 WL 3434156 (D. Del. Aug. 10, 2017) ............................................14

*Fellowes, Inc. v. Michilin Prosperity Co.*,
    491 F. Supp. 2d 571 (E.D. Va. 2007) ..........................................................................................6

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014)....................................................................................................9

*Genentech, Inc. v. Chiron Corp.*,
    112 F.3d 495 (Fed. Cir. 1997)......................................................................................................9

*High Tech Med. Instrumentation, Inc. v. New Image Indus.*,
    49 F.3d 1551 (Fed. Cir. 1995).....................................................................................................12

*Hybritech Inc. v. Abbott Lab'ys*,
    849 F.2d 1446 (Fed. Cir. 1988)..................................................................................................13

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014)..................................................................................................11

*ISCO Int'l, Inc. v. Conductus, Inc.*,
    C.A. No. 01-0487, 2003 WL 280276 (D. Del. Feb. 10, 2003) ................................................5

*M/A-COM Tech. Sols. Holdings, Inc. v. Laird Techs., Inc.*,
    No. CV 14-181-LPS, 2014 WL 2727198 (D. Del. June 13, 2014)............................................9

3

*Mabe, LLC v. Wie*,
    No. 2:25-CV-00319-DBB, 2025 WL 1433910 (D. Utah May 19, 2025) ............................. 14

*Meiresonne v. Google, Inc.*,
    849 F.3d 1379 (Fed. Cir. 2017) ........................................................................................ 10

*Natera, Inc. v. NeoGenomics Labs., Inc.*,
    106 F.4th 1369 (Fed. Cir. 2024) ....................................................................................... 11

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .......................................................................................... 8

*Polaris Indus. v. Arctic Cat, Inc.*,
    882 F.3d 1056 (Fed. Cir. 2018) ........................................................................................ 12

*Ride the Ducks of Philadelphia, LLC v. Duck Boat Tours, Inc.*,
    138 F. App'x 431 (3d Cir. 2005) ......................................................................................... 5

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) ........................................................................................ 12

*Tigo Energy Inc. v. SMA Solar Tech. Am. LLS*,
    No. CV 22-915-GBW, 2023 WL 6990896 (D. Del. Oct. 23, 2023) ..................................... 7

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
    No. 23- 975-RGA, 2024 U.S. Dist. LEXIS 97445 (D. Del. May 31, 2024) .......................... 14

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    863 F. Supp. 186 (D. Del. 1993) ......................................................................................... 7

## I.    SEAKEEPER IS LIKELY TO SUCCEED ON THE MERITS

### A.    Dometic Has and Continues to Commit Acts of Infringement

After repeatedly holding itself out as the proper party, Dometic declares for the first time that it has "**no involvement** with the accused product." D.I. 46 at 12 (emphasis added); D.I. 32, ¶¶2-5. In fact, Dometic offers the DG3 product for sale on its website, and induces boat manufacturers to purchase that product and offer it for sale as an option on their own products. D.I. 54, ¶¶7-16. (**DOMETIC CORPORATION (U.S.) Website** (the "Website" or dometic.com/en-us/us") **operated by DOMETIC CORPORATION** ("Dometic")) (emphasis added). Dometic provides pricing for the DG3 product, warranty and payment terms, and guides purchasers to its "dealer network" at locations within the United States, including in this District. *Id.* ("find a store.") Dometic advises "Dometic DG3 will begin shipping in June 2025," and it invites consumers to submit information in an interactive form to receive a response from a "specialist" with further information. *Id.* Dometic announced the introduction of the DG3 from Illinois—the State of its principal place of business. *Id.*, ¶2-3. These acts establish that Dometic has, and intends to continue[1], offering the DG3 product for sale in the United States, an infringing act. *See ISCO Int'l, Inc. v. Conductus, Inc.,* C.A. No. 01-0487, 2003 WL 280276, at *2 (D. Del. Feb. 10, 2003) ("Web site pages . . . considered offers for sale if they include pricing and/or other ordering information[.]"); *Biometics, LLC v. New Womyn, Inc.,* 112 F.Supp.2d 869, 873 (E.D. Mo.

---

[1]    A presently existing threat of injury alone is sufficient to support entry of a preliminary injunction. *See Ride the Ducks of Philadelphia, LLC v. Duck Boat Tours, Inc.,* 138 F. App'x 431 (3d Cir. 2005) ("If forced to share the ramp with a competitor, Ride The Ducks would likely lose customers and, in turn, income. Although such injury has not yet occurred, because the purpose of a preliminary injunction is to prevent the occurrence of injuries, the demonstration by Ride The Ducks of a "presently existing **actual threat**" of injury suffices at this stage of the proceedings.")

5

2000) (website contained pricing information, form to request additional information, and independent sales representative locator, were offers to sell within the meaning of Section 271[a]).

*Second,* Dometic's importation and use of the DG3 at the 2025 Miami Boat Show are acts of infringement. Dometic operated a booth at which imported units of the DG3 product were showcased, it installed (or had installed) DG3 units on two 34-foot Regulator Marine boats, and operated those units during hourly demonstrations rides provided to potential purchasers. D.I. 54, ¶¶4-6. These acts constitute infringing use. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484 (1964) (unauthorized use constitutes infringement); *Fellowes, Inc. v. Michilin Prosperity Co.*, 491 F. Supp. 2d 571, 583 (E.D. Va. 2007) (shipment to Underwriters Laboratory for approval by foreign manufacturer constituted unauthorized importation). That these were Dometic's acts is clear. The booth prominently displayed the Dometic trademark. Employees promoting the DG3 at the trade show and those responsible for operating DG3 installed boats were identified as Dometic employees. Dometic claims exclusive U.S. use of these marks, and direct damage from their unauthorized use. D.I. 54. *id.*

*Lastly,* Dometic deflects blame to its wholly owned subsidiary, Dometic Marine.[2]  D.I. 46 at 5, 12-13. Dometic contends Dometic Marine is responsible for the DG3's "design, manufacture and distribution." D.I. 12. Importantly, these allegations do not negate Dometic's involvement in advertising, promoting, and offering the DG3. Dometic admits that it does business in the U.S. as "Dometic Marine." D.I. 54, ¶6. Dometic may be enjoined for its own actions in serving as the U.S. sales arm of this manufacturer. Dometic promoted and offered the DG3 for sale on its website,

---

[2] The declarant, Mr. Timothy Hall, has been at Dometic most recently for less than three months, and last employed prior to development of the DG3. D.I. 54, ¶17. Mr. Hall's Linkedin Profile suggests that he has no personal involvement in Dometic's marine products ("regional" President for "sub-segment" of "Land Vehicles").

promised shipment in June 2025, and imported, installed and used the DG3 in demonstrations to which it lent its exclusive branding. *Id.*, ¶4-6.

In any event, this court may exercise jurisdiction over corporations that constitute "two arms of the same business group in their attempt to achieve the common goal of selling lenses in Delaware and other markets." *See Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186, 188-89 (D. Del. 1993) (shared ultimate parent, appeared to operate as larger business group, financial statements presented as a unit, presented as unified entity to employees and marketplace, and shared patented technology). It is not necessary to establish one is the alter ego of the other. *See Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) (two had a "nearer-than-arms-length" relationship and "operated in concert with each other with respect to [infringing] drug sales."); *Tigo Energy Inc. v. SMA Solar Tech. Am. LLS*, No. CV 22-915-GBW, 2023 WL 6990896, *7-9 (D. Del. Oct. 23, 2023) (infringing actions of a "group").

Such a "nearer than arms length" relationship exists here. Both parent and subsidiary present themselves to the market and identify their employees as a unified entity. D.I. 54, ¶¶2-16. The subsidiary holds certain patent rights in the DG3 that it apparently extends to Dometic. Common trademarks identify them as a single source of products. *Id.* Their financial performance is reported as a single unit. *Id.*, ¶18  Dometic establishes the terms and conditions of sale for it, as well as all of its subsidiaries, including Dometic Marine. *Id.*, ¶12.

This manufacturer/distributor's intent to supply DG3s into the U.S. has directly resulted in infringing acts within this District. D.I. 55, ¶¶3-7 (describing infringing offer of DG3 Regulator Marine in Delaware induced by Dometic and its subsidiary). *See Tigo Energy Inc. v. SMA Solar Tech. Am. LLS*, No. CV 22-915-GBW, 2023 WL 6990896 (D. Del. Oct. 23, 2023) ("A non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the

Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware.")

### B.     The DG3 Infringes

Dometic asserts Claims 11 and 17 of the '782 patent require air-cooled devices. *See* D.I. 46 at 7-9, 15-16. Dometic points to no such requirement in the claims. Instead, Dometic seeks to import limitations into these claims from examples described in the patent's specification. *See* D.I. 46 at 9 ("The specification asserts that this cooling method is beneficial[.]"). This is improper. *See Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013) (limitations may not be read into the claims from the written description).

In fact, the patent specification refutes Dometic's arguments. D.I. 1-1, 6:15-22 ("[C]annot be emphasized too strongly … the invention … is not limited to the detailed implementations described[.]"); *see also* 10:4-10 ("Features have been intentionally left out of claims in order to describe the invention at a breadth consistent with the inventors' contribution."); D.I. 57, ¶2. A POSA would understand these claims require only that heat is removed from the interior of the device and that second vanes are "configured" such that this transfer can readily occur. *See, e.g.,* D.I. 1-1 at 4:15-16 (The fins serve as part of "a heat path to **the exterior of the device**.") (emphasis added). The claims do not limit means by which heat received by the second vanes is further removed from the device. D.I. 57, ¶¶7-9. In fact, use of exterior "air-cooled fins" is recited only in dependent Claim 19. *Id.* at ¶10; s*ee Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not in the independent claim.").

Dometic asserts Plaintiff disclaimed all uses of liquids to dissipate heat. *See* D.I. 41 at 17. Dometic points to statements expressing the benefits of avoiding "a spray of cooling liquid [that is directed] onto the rotating vanes … flow[s] radially outward over the surface of the vanes as a

thin film of liquid, **and is thrown off the vanes by centrifugal action[.]**" D.I. 1-1 at 4:51-62 (emphasis added); D.I. 57, ¶12. These statements do not describe DG3's use of liquid, nor would they constitute a disavowal in any event. *See, e.g., GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) (exacting standard requiring specification makes clear the invention does not include a particular feature).

Dometic admits its DG3 device removes heat from its interior, *i.e.* readily transfers the heat to the enclosure and from there to the exterior. Dometic does not contest that the second vanes in its device are "configured" such that this heat can be readily transferred from the heat generating bearings. *See* D.I. 57, ¶¶15-19. The DG3's additional use of a cooling loop to augment this transfer does not avoid infringement. *See Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495, 501 (Fed. Cir. 1997) ("Comprising" is a term of art … mean[ing] … other elements may be added and still form a construct within the scope of the claim.)

### C.    Dometic Has Failed to Show a Substantial Question of Validity

Dometic must show a "substantial question" concerning invalidity. *M/A-COM Tech. Sols. Holdings, Inc. v. Laird Techs., Inc.*, No. CV 14-181-LPS, 2014 WL 2727198, *3 (D. Del. June 13, 2014). Dometic improperly incorporates by reference two unsuccessful petitions for *inter partes* review and two eight year old declarations. *See* D.I. 46 at 17-19. Dometic concedes, however, the primary references relied upon are not prior art. *See* D.I. 46 at 17, n.7.

Dometic asks the Court to re-write these declarations, substituting a reference not addressed. D.I. 46 at 17-18. Even if indulged, Dometic's arguments fail.

For purposes of economy, Plaintiff will address the validity of Claim 17 of the '782 Patent.[3] Dometic incorporates by reference arguments this claim is obvious based upon (1) U.S. Patent No.

---

[3] Plaintiff does not concede Dometic's arguments concerning the remaining claims. However, Plaintiff need only present a likelihood of success on a single claim to prevail.

6,973,847 ("Adams") in view of U.S. Patent Publication No. 2005/0040776 ("Sibley") and in further view of U.S. Patent No. 3,844,341 ("Bimshas"), or (2) Adams in view of DEl9909491 ("Jäger") and in further view of Bimshas. D.I. 46 at 17-18. Neither raises a substantial question.

As to the Sibley combination, Dometic proposes incorporating Sibley's cooling design into Adam's vacuum-sealed, gyrostabilizer enclosure, and then altering Sibley's vanes to mimic Bimshas's shape. In its Opening Brief, Plaintiff laid out why a POSA would not have been motivated to incorporate Sibley's cooling design, or have reasonably expected its success. *See* D.I. 9 at 10-11. Dometic has not even attempted to rebut these arguments.

Dometic has further failed to show motivation to modify Sibley with Bimshas' design. Bimshas teaches away from use of cooling vanes in a vacuum. *See* D.I. 57, ¶40, Att. NT-7 at 3:17-24 (A "gas … could be provided *under pressure* within the gaps" of the interleaved fins) (emphasis added). A POSA would not have incorporated vanes dependent on pressurized environments into the vacuum cooling assembly of Sibley. D.I. 57, ¶41; *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017) (Reference teaches away if POSA "would be … led in a direction divergent from the path that was taken in the claim.").

Further, Bimshas is not directed to cooling high-heat generating flywheel bearings. *See* D.I. 57, ¶33. Bimshas cools "*intergimbal* assembl[ies] of inertial guidance structures." Att. NT-7 at 1:22-26 (emphasis added). Gimbals merely allow a gyro to rock forward and back. D.I. 57, ¶34. This intermittent, slow movement, and the heat it imparts, is fundamentally unlike the extremely high heat produced in bearings supporting a gyrostabilizer flywheel. *Id.* at ¶35. A POSA would not have considered cooling vanes adapted for such low, fluctuating heat suitable for gyrostabilizer flywheels spinning at very high speeds. *Id.* at ¶37; *see also id.* at ¶¶34-36 (gimbal axis rotates around 25 RPM, whereas flywheels spin at more than 8000 RPM; gimbal application dissimilar in

heat and frictional losses.) Bimshas's design would be inoperable at flywheel rotational speeds. *Id.* at ¶34. A POSA would not look to Bimshas when confronting a problem relating to flywheels enclosed in a partial vacuum. *Id.* at ¶38. Dometic does not address these concerns. *See Natera, Inc. v. NeoGenomics Labs., Inc.*, 106 F.4th 1369, 1377 (Fed. Cir. 2024) ("little more than conclusory argument with no meaningful supporting documentation" failed to raise a "substantial" question of validity).

Jager suffers the same defects as Bimshas. Jager's cooling fins depend upon *gas convection* achieved at *atmospheric pressure*. D.I. 57, ¶27, Att. NT-6 at 1:36-47. Nor is Jäger directed to a gyrostabilizer using a flywheel. A POSA would not look to Jager in confronting cooling unique to the claimed gyrostabilizer. D.I. 57, ¶28.

Nor would a POSA modify Jäger using Bimshas' design. In Jager, a shaft rotates in close tolerances within a sleeve. *Id.* at ¶29 and Att. NT-6 at 3:1-30. The proximity of the shaft and sleeve demands that interleaved fins along the length of that shaft be oriented perpendicular (NOT parallel) to the axis of rotation. *Id.* This perpendicular orientation is essential to realizing Jager's ability to increase heat dissipation by adding fins along the length of the shaft. D.I. 57, ¶29, Att. NT-6 at 4:16-20.[4] The minimal clearance between shaft and sleeve would not permit use of Bimshas' parallel oriented fins. D.I. 57, ¶43, Att. NT-6 at 3:1-30. A POSA would not have been motivated to use Jager's design or to modify it in view of Bimshas, nor would they have reasonably expected success. D.I. 57, ¶43. Dometic's invalidity arguments improperly rely entirely on hindsight. *See, e.g., InTouch Techs., Inc. v. VGO Commc'ns, Inc.,* 751 F.3d 1327, 1352 (Fed. Cir. 2014) (rejecting expert "hindsight" consisting of conclusory references to her belief one would

---

[4] Jager locates these fins at the shaft's mid-point. D.I. 57, ¶43. Similarly placement in a gyrostabilizer would locate them on circumference of flywheel's bulge, far from the bearings they are intended to cool, and potentially interfering with the flywheel's operation. *Id.,* ¶30.

combine); *see also Polaris Indus. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1068 (Fed. Cir. 2018) ("[P]rejudice of hindsight bias often overlooks that the genius of invention[.]")

## II.    SEAKEEPER WILL SUFFER IRREPARABLE HARM

Plaintiff does not rely solely upon a presumption of irreparable harm. Plaintiff has provided evidence of specific irreparable harms it is likely to suffer. Dometic's authority acknowledges infringement works irreparable harm to a patent owner's right to exclude. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either.")

*First*, Dometic argues Plaintiff "slept on its rights" and it cannot be enjoined before commencing shipment, regardless of the ensuing irreparable harm. D.I. 20. This assertion is contradicted by correspondence in evidence. Dometic repeatedly urged Plaintiff to delay taking action by promising it would address Plaintiff's concerns. D.I. 32, ¶¶2-5. When Dometic ultimately refused to refrain from infringement, Plaintiff moved for a preliminary injunction with the hope such motion could be heard before Dometic introduced its product, or that Dometic would otherwise agree to delay introduction until that motion was resolved. *Id.* When Dometic refused to postpone its product introduction, or to agree to the requested schedule, Plaintiff was forced to seek temporary injunctive relief. *Id.* Dometic's cited authority  is inapposite. *See High Tech Med. Instrumentation, Inc. v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (relying on 17 month delay, but declaring delay alone insufficient to deny relief).

*Second,* Dometic asserts Plaintiff's irreparable harm is to only a narrow market. The fact that infringer's harm affects only a portion of patentee's business "says nothing about whether that harm can be rectified." *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152 (Fed. Cir. 2011). This purportedly "narrow" segment accounted for ████████ of Seakeeper's overall gyrostabilizer unit sales. D.I. 56, ¶5. Dometic does not promise to restrict infringement to its DG3.

12

D.I. 11, AS-7, p. 2; D.I. 31, ¶26. Dometic anticipates beginning shipments within a matter of days, and refuses to refrain from infringement pending resolution of the motion for preliminary injunction. As detailed in Plaintiff's Opening Brief, Plaintiff is likely to suffer irreparable harm before that motion is resolved.

Plaintiff has already lost business of a key customer (Regulator) to Dometic. Dometic's assertion that Regulator's decision to jump ship is without consequence is belied by its prominent promotion of Regulator's decision in the belief it will divert other purchasers to Dometic. *See* https://www.dometic.com/en-us/outdoor/lp/marinelp-gyroscopic-stabilization/.                                    Plaintiff presented evidence that ███████████████████████████ D.I. 12, ¶7. Without an injunction, Plaintiff is at imminent risk ████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████; *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015), (irreparable harm from loss of even single customer due to "network effect"); *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456 (Fed. Cir. 1988) (irreparable harm to ability to establish market position and create business relationships).

Dometic misinterprets a tracking spreadsheet to argue Plaintiff's chances of securing this future business is ███████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████ *Id.,* ¶4. Plaintiff's industry relationships do not negate the harm from having to compete against one's own

patented technology. *See Evonik Degussa GmbH v. Materia, Inc.,* C.A. No. 09-636, 2017 WL 3434156, at *2 (D. Del. Aug. 10, 2017).[5]

      With respect to price erosion, Seakeeper has shown specific instances of actual erosion.



D.I. 12, ¶20. Dometic's reference to list pricing misses the mark. Plaintiff provided specific evidence

Price erosion will continue unless DG3's launch is enjoined.

      Dometic declares the asserted harms are easily quantifiable. D.I. 46 at 23. In the same breath, Dometic disparages Plaintiff's ability to calculate these damages. *Id.* (calling estimates "fanciful"); s*ee Mabe, LLC v. Wie*, No. 2:25-CV-00319-DBB, 2025 WL 1433910, at *3 (D. Utah May 19, 2025) (harm irreparable even where possible to estimate because of demonstrated loss of business opportunities and likely diminishment of market share).

      *Finally*, Plaintiff's gyrostabilizers would not be possible without proper cooling. D.I. 10 at 10. The touted performance has a nexus to the patented cooling, which is also separately featured in promotional materials. D.I. 13, ¶6 and RS-1 through RS-4.

## III.  THE BALANCE OF EQUITIES FAVORS SEAKEEPER

      Dometic ignores entirely Seakeeper's arguments regarding balancing the equities.

---

[5] The proposition cited by Plaintiff in *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 23- 975-RGA, 2024 U.S. Dist. LEXIS 97445, *38 (D. Del. May 31, 2024) concerned balance of hardships, not harm.

OF COUNSEL:

MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 South Wacker Drive
Chicago, IL 60606
(312) 474-6300


Dated: May 27, 2025

/s/ *Kelly E. Farnan*
Steven J. Fineman (#4025)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*
*SEAKEEPER, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, a true and correct copy of the foregoing document was caused to be served by e-mail on the following counsel:

**BY E-MAIL**

Andrew C. Mayo
Brian A. Biggs
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

**BY E-MAIL**

Oleg Khariton
Dinsmore & Shohl LLP
255 E. Fifth Street
Suite 1900
Cincinnati, OH 45202

**BY E-MAIL**

Michael. A. Xavier
Dinsmore & Shohl LLP
1775 Sherman Street
Suite 2600
Denver, CO 80203

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com