# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAKEEPER, INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 25-484-JCB |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| DOMETIC CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

*Of Counsel:*

Oleg Khariton
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
(513) 977-8200
oleg.khariton@dinsmore.com

Michael A. Xavier
DINSMORE & SHOHL LLP
1775 Sherman Street, Suite 2600
Denver, CO 80203
(303) 296-3996
michael.xavier@dinsmore.com

Dated: June 12, 2025

Andrew C. Mayo (#5207)
Brian A. Biggs (#5591)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
PO Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
bbiggs@ashbygeddes.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDINGS ............................................................ 5

II. SUMMARY OF ARGUMENT ....................................................................................... 5

III. STATEMENT OF FACTS ............................................................................................. 6

IV. ARGUMENT ................................................................................................................. 7

    A. Legal Standards ...................................................................................................... 7

    B. The Complaint Does Not Plausibly Allege That Dometic Corporation Is the Entity Responsible for the Alleged Infringement. ........................................................... 8

    C. The Court Should Deny Seakeeper Leave to Amend the Complaint, Because Any Amendment Would Be Futile. ............................................................................. 10

        1. Seakeeper Could Not Plausibly Allege That Dometic Corporation Is Directly Liable for Any Alleged Infringement. ..................................................... 11

        2. Seakeeper Could Not Plausibly Allege That Dometic Corporation Is Vicariously Liable for DMC's Alleged Infringement. ........................................ 14

V. CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*AstraZeneca Pharms. LP v. Apotex Corp.*,
    No. 10-338-RBK-KW, 2010 U.S. Dist. LEXIS 132727 (D. Del. Dec. 22, 2010) ............ 6

*Avicolli v. BJ's Wholesale Club, Inc.*,
    No. 21-1119, 2021 U.S. Dist. LEXIS 112546 (E.D. Pa. June 16, 2021) .................. 15, 16

*A. Stucki Co. v. Worthington Indus.*,
    849 F.2d 593 (Fed. Cir. 1988) ............................................................................... 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 6

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) .................................................................................. 6

*Dole v. Arco Chem. Co.*,
    921 F.2d 484 (3d Cir. 1990) .................................................................................... 7

*In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010) .................................................................. 15

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................................ 7

*Garza v. Citigroup Inc.*,
    192 F. Supp. 3d 508 (D. Del. 2016) ...................................................................... 13

*Glanta Ltd. v. Soapy Care Ltd.*,
    762 F. Supp. 3d 405 (D. Del. 2025) ........................................................................ 6

*Intellectual Ventures I LLC v. Toshiba Corp.*,
    66 F. Supp. 3d 495 (D. Del. 2014) ........................................................................ 14

*Lake v. Arnold*,
    232 F.3d 360 (3d Cir. 2000) .................................................................................... 7

*Majestec 125, LLC v. Sealift, Inc.*,
    No. 1:06-cv-104, 2006 U.S. Dist. LEXIS 49522 (W.D. Mich. July 19, 2006) ............... 11

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005) ...................................................................... 10, 11

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F. Supp. 260 (D. Del. 1989) .............................................................. 13, 14, 16

*M2M Sols. LLC v. Motorola Sols., Inc.*,
    No. 12-33-RGA, 2016 U.S. Dist. LEXIS 872 (D. Del. Jan. 6, 2016) ...................... 14, 16

## TABLE OF AUTHORITIES (CONT.)

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
　311 F.3d 198 (3d Cir. 2002) ........................................................................................... 6

*Rotec Indus. v. Mitsubishi Corp.*,
　215 F.3d 1246 (Fed. Cir. 2000) ............................................................................... 10, 11

*Smith v. Garlock Equip. Co.*,
　658 F. App'x 1017 (Fed. Cir. 2016) ............................................................................. 12

*Strikeforce Techs., Inc. v. Phonefactor, Inc.*,
　No. 13-490-RGA-MPT, 2013 U.S. Dist. LEXIS 161560 (D. Del. Nov. 13, 2013) .. 14, 15

*WiTricity Corp. v. Momentum Dynamics Corp.*,
　563 F. Supp. 3d 309 (D. Del. 2021) ............................................................................... 7

### **Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 4, 6, 9

Federal Rule of Civil Procedure 15(a)(2) .................................................................................... 7

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Seakeeper, Inc. ("Seakeeper") sued the wrong party. Contrary to Seakeeper's bald assertions, Dometic Corporation, the named defendant, did not manufacture, sell, or offer to sell the accused Dometic DG3 gyroscopic stabilizer (the "Accused Product") and has no plans to do so in the future. Rather, the Dometic entity responsible for the Accused Product is Dometic Marine Canada, Inc. ("DMC").[1] The Complaint does not contain any well-pleaded factual allegations plausibly establishing that Dometic Corporation committed any of the allegedly infringing acts. It simply assumes that Dometic Corporation is the responsible party, but it alleges no specific facts to support that assumption. Because the Complaint thus fails to state a claim upon which relief can be granted, it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Furthermore, because Seakeeper could not plausibly allege any set of facts that would justify holding Dometic Corporation liable (either directly or vicariously) for any of the allegedly infringing conduct, the dismissal of Seakeeper's claims against Dometic Corporation should be with prejudice.

## II. SUMMARY OF ARGUMENT

A. The Complaint does not plausibly allege that Dometic Corporation manufactured, used, sold, offered for sale, or imported the Accused Product. Although the Complaint alleges that Dometic Corporation committed these acts, these allegations amount to unsupported legal conclusions and are not entitled to any weight.

---

[1] As this Court has been made aware, DMC has discontinued the accused version of the Dometic DG3 gyrostabilizer. (D.I. 67.) In its place, DMC will market a new version of the DG3 that differs substantially from the prior, accused version of the product, at least insofar as it eliminates the features of that prior design that Seakeeper alleged to be the claimed "cylindrical" "interleaved" "vanes." (*Id.*) Seakeeper has not accused (and, realistically, could not accuse) the new version of the DG3 of infringement. Therefore, as used in this brief, the term "Accused Product" refers only to the prior, discontinued version of the DG3.

B.  Seakeeper's claims against Dometic Corporation should be dismissed with prejudice. The issue of whether Dometic Corporation is a proper defendant has already been briefed and argued in connection with Seakeeper's motions for a preliminary injunction and temporary restraining order. None of the additional facts that Seakeeper has asserted in those motion papers would be enough to make Dometic Corporation liable for the allegedly infringing activities, either directly or vicariously. At most, the facts indicate that Dometic Corporation and DMC are part of the same corporate family, sell products under a common Dometic brand, and share certain corporate marketing and information technology resources. However, even when viewed in the light most favorable to Seakeeper, these facts would not establish that Dometic Corporation itself committed any of the allegedly infringing acts, or, alternatively, that it would be proper to pierce the corporate veil in order to hold it vicariously liable for DMC's activities.

## III.  STATEMENT OF FACTS

Seakeeper filed the Complaint against Dometic Corporation alleging that Dometic Corporation directly and indirectly infringed Seakeeper's U.S. Patents No. 7,546,782 and 8,117,930 (the "Patents-in-Suit") by "manufactur[ing], us[ing], sell[ing], offer[ing] for sale and/or import[ing]" the Accused Product. (D.I. 1, ¶¶ 68, 75, 76, 88, 97, 98.) Although the Complaint purports to identify Dometic Corporation as the manufacturer and distributor of the Accused Product, it does not plead any specific facts that would support that allegation.

Dometic Corporation is a Delaware corporation with its principal place of business in Chicago, Illinois. (D.I. 41-1, ¶ 3.) It is an indirect subsidiary of Dometic Group AB (publ) ("Dometic Group"), a publicly held corporation based in Sweden. (D.I. 9 at 19; D.I. 41-1, ¶ 4.) Dometic Corporation makes and sells a variety of products, including those designed for use in outdoor recreation, recreational vehicles, and the marine industry (*e.g.*, marine air conditioners,

power generators, and ice machines). (Ex. A, ¶ 4.) However, Dometic Corporation did not design, manufacture, or distribute the accused DG3 gyroscopic stabilizer. (D.I. 41-1, ¶¶ 6-7; Ex. A, ¶ 6.) The Dometic entity responsible for the Accused Product is DMC, a British Columbia corporation headquartered in Vancouver, Canada. (D.I. 41-1, ¶ 8; Ex. A, ¶ 6.)

DMC is an independent corporation, separate from Dometic Corporation. (D.I. 41-1, ¶ 10.) DMC is responsible for its own management, operations, and governance. (*Id.*) Dometic Corporation is not responsible for the day-to-day operations of DMC and does not set its policies. (*Id.*) While Dometic Corporation is situated as DMC's indirect parent in the Dometic corporate structure, both corporations are ultimately owned by Dometic Group. (D.I. 41-1, ¶¶ 4, 8.)

## IV. ARGUMENT

### A. Legal Standards

Dismissal under Rule 12(b)(6) is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the district court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *Glanta Ltd. v. Soapy Care Ltd.*, 762 F. Supp. 3d 405, 410 (D. Del. 2025) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). In evaluating a motion under Rule 12(b)(6), the district court "may consider extraneous documents if the complaint references the documents or if the documents are integral to the plaintiff's claims." *AstraZeneca Pharms. LP v. Apotex Corp.*, No. 10-338-RBK-KW, 2010 U.S. Dist. LEXIS 132727, at *27 (D. Del. Dec. 22, 2010) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)), *aff'd*, 669 F.3d 1370, 1378 n.5 (Fed. Cir. 2012).

While Federal Rule of Civil Procedure 15 directs "[t]he court [to] freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "[t]he policy favoring liberal amendments of pleadings . . . is not unbounded." *WiTricity Corp. v. Momentum Dynamics Corp.*, 563 F. Supp. 3d 309, 326 (D. Del. 2021) (quoting *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990)). "The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A district court may deny leave to amend a complaint where it is "apparent from the record" that an amendment "would be futile." *Id.* (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

### B. The Complaint Does Not Plausibly Allege That Dometic Corporation Is the Entity Responsible for the Alleged Infringement.

The Complaint asserts that Dometic Corporation has directly infringed the Patents-in-Suit by "manufactur[ing], us[ing], sell[ing], offer[ing] for sale and/or import[ing]" the Accused Product. (D.I. 1, ¶¶ 68, 88.) It also asserts that Dometic Corporation's alleged "manufacture, sale, offer for sale and/or importation" of the Accused Product amounts to indirect infringement of the Patents-in-Suit. (*Id.*, ¶¶ 75, 76, 97, 98.) However, these are legal conclusions, not well-pleaded facts, and do not plausibly establish that Dometic Corporation is the Dometic entity responsible for the alleged infringement. In reality, the company responsible for the manufacture and distribution of the Accused Product is DMC, a legally distinct entity in the Dometic corporate family. (D.I. 41-1, ¶¶ 6-8.) Indeed, there is not a single well-pleaded factual allegation in the Complaint tying Dometic Corporation to the allegedly infringing conduct. Rather, the Complaint assumes that Dometic Corporation is the Dometic entity responsible for the manufacture and sale of the Accused Product, without pleading any specific facts in support of that assumption.

None of the documents referenced in the Complaint mention Dometic Corporation, either. For example, the Complaint refers to a U.S. patent application that Dometic Corporation allegedly

filed in 2021 describing a design for a marine gyrostabilization product. (D.I. 1, ¶ 53.) However, the application, U.S. Patent Application No. 2024/0400167, was not filed by Dometic Corporation. Instead, the face of the application clearly identifies DMC as the applicant. (D.I. 10 at 32.) Therefore, far from suggesting that Dometic Corporation is engaged in the business of designing, manufacturing, and/or selling marine gyroscopic stabilizers, the application actually confirms that DMC is the Dometic entity responsible for that product category.

The Complaint also refers to a "Dometic" press release from February 2025 announcing the Accused Product. (D.I. 1, ¶ 46.) However, Dometic Corporation is not mentioned in the press release. (*See* D.I. 1-3.) Further, the dateline identifies Litchfield, Illinois as the location from which the press release was being issued. (*Id.* at 2.) But Dometic Corporation has no offices in Litchfield. (Ex. A, ¶ 7.)[2]

The Complaint also refers to a "confidentiality agreement" that Seakeeper and Dometic Corporation allegedly entered into in February 2024, pursuant to which Seakeeper allegedly shared "confidential financial and technical information" concerning its gyrostabilizer products with Dometic Corporation. (D.I. 1, ¶¶ 50, 51.) Setting aside that this allegation is completely irrelevant to Seakeeper's claims of patent infringement, the suggestion that Dometic Corporation was a party to the confidentiality agreement is easily refuted by the document itself. The confidentiality agreement identifies Dometic Group, the ultimate parent of the Dometic corporate family based out of Sweden, as the "Recipient" of Seakeeper's alleged confidential information. (D.I. 11 at 53.) It was executed on Dometic Group's behalf by its President/CEO and CFO. (*Id.*) Dometic Corporation is not mentioned in the document.

---

[2] As discussed *infra* at 15-16, the Litchfield place of business belongs to Sierra International LLC ("Sierra International"), which is a separate, legally distinct entity in the Dometic corporate family.

Indeed, the Complaint's discussion of the confidentiality agreement is representative of Seakeeper's complete disregard for the principles of corporate separateness. The Complaint initially acknowledges that the purpose of the confidentiality agreement was to facilitate discussions between Seakeeper and "Dometic [Corporation's] parent" regarding a potential acquisition of Seakeeper by the parent company. (D.I. 1, ¶ 51.) But then, beginning with the very next sentence, Seakeeper lumps Dometic Corporation together with its parent and proceeds as if Dometic Corporation, and not the parent, was the party to the negotiations. (*See id.* ("More than a year ago, in January 2024, **Dometic's parent** approached Seakeeper expressing an interest in acquiring Seakeeper. **Dometic** represented that it wished to discuss incorporating Seakeeper's gyrostabilizing products into its Marine division product line." (Emphasis added.)))[3]

In short, there are no facially plausible allegations in the Complaint that would establish that Dometic Corporation has committed any of the allegedly infringing acts. Nor is Dometic Corporation identified as the entity responsible for the design, manufacture, or sale of the Accused Product in any of the attachments to the Complaint or other documents referenced in it. Seekeper has thus failed to plead sufficient factual content to "allow[] the court to draw the reasonable inference that **the defendant** is liable for the misconduct alleged." *Ashcroft*, 556 U.S. t 678 (emphasis added). Therefore, the Complaint should be dismissed pursuant to Rule 12(b)(6).

### C. The Court Should Deny Seakeeper Leave to Amend the Complaint, Because Any Amendment Would Be Futile.

To the extent Seakeeper requests leave to amend the Complaint so that it can try to state a plausible claim of infringement against Dometic Corporation, leave should be denied. As this Court will recall, the issue of whether Dometic Corporation is a proper defendant in this case was

---

[3] It should be noted that, though not relevant to the grounds for this motion, Seakeeper's suggestion that Dometic Group approached Seakeeper regarding the potential acquisition is wrong. Seakeeper approached Dometic Group, not the other way around.

briefed as part of Seakeeper's motions for a preliminary injunction (D.I. 9) and temporary restraining order. (D.I. 29.) Thus, the papers filed by Seakeeper in connection with those motions effectively preview what Seakeeper would allege in an amended pleading if it were granted leave to file one. None of those allegations would give rise to a plausible claim that Dometic Corporation is liable, either directly or vicariously, for any alleged infringement of the Patents-in-Suit.

        **1.**      **Seakeeper Could Not Plausibly Allege That Dometic Corporation Is Directly Liable for Any Alleged Infringement.**

Seakeeper has suggested that Dometic Corporation is directly liable for infringement because it allegedly "offer[ed] the DG3 product for sale" through the dometic.com website. (D.I. 53 at 5.) As evidence, Seakeeper points to the presence on that website of a product page related to the Accused Product. (*Id.*) However, even assuming for argument's sake that the dometic.com website is, in fact, controlled in whole or in part by Dometic Corporation, the mere promotion of the Accused Product on that website would not be tantamount to an "offer to sell" the product by Dometic Corporation. The most that it would establish is the sharing of certain marketing and information technology resources by two affiliated corporations, Dometic Corporation and DMC, as is common in large corporate families. However, holding Dometic Corporation responsible for "offering to sell" the allegedly infringing product would require significantly more.

"[L]iability for an 'offer to sell' under section 271(a) [of Title 35]" is defined "according to the norms of traditional contractual analysis." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (quoting *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000)). Thus, the defendant must "communicate[] a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Rotec*, 215 F.3d at 1257 (quoting Restatement (Second) of Contracts § 24 (1979)). That is, the alleged "offer to sell"

must be capable of being "ma[d]e into a binding contract by simple acceptance." *MEMC*, 420 F.3d at 1376 (citing *Rotec*, 215 F.3d at 1251). For example, if the defendant's communication to third parties does not include specific, definite price terms, then it is not an "offer to sell." *See id.*; *see also Majestec 125, LLC v. Sealift, Inc.*, No. 1:06-cv-104, 2006 U.S. Dist. LEXIS 49522, at *22 (W.D. Mich. July 19, 2006) ("Generally, courts that have addressed the issue after *Rotec* have concluded that under traditional contract principles and case law interpreting the UCC, an 'offer to sell' must create a power of acceptance. In turn, to create a power of acceptance, the terms of the communication must include specific, definite terms.").

Here, the promotional content on the dometic.com website did not qualify as an "offer to sell" the Accused Product at least because it did not create the power of acceptance in the public. Seakeeper does not suggest that a member of the public could have purchased the Accused Product directly from the website by, for example, adding the product to a virtual shopping cart and then using a "check out" function to pay for the product and arrange for its shipping. In fact, as Seakeeper's own filings demonstrate, the website advised the public that the Accused Product was available not through any Dometic entity directly but through a "dealer network":

**Dometic DG3**
Gyroscopic stabilizer

● Sold in our dealer network   |   Art nr: 9620018742

◉ Find in store

Introducing the first truly active gyro on the recreational market. DG3 boasts industry-leading spin up and down times, coupled with a remarkable 40% reduction in power consumption. DG3 ...
Read more

✓ Enhanced Bearing Life
✓ Electric Precession Actuator
✓ High Performance Brushless DC Motor

(D.I. 54, ¶ 7.)  The website did not even list any definite pricing information.  Although Seakeeper suggests that the website "share[d] the cost of the [Accused Product]" (*id.*, ¶ 10), the URL link provided by Seakeeper listed only the Manufacturer's Suggested Retail Price, or "MSRP," for the Accused Product:

# HOW MUCH DOES DG3 COST?

The DG3 has an MSRP of $43,999 USD. Installation costs vary depending on your boat's hull structure, installation location, and rigging requirements.  Includes 48V smart lithium battery and water pump.

https://www.dometic.com/en-us/support/faq/gyro-01.  Thus, the pricing information listed in connection with the Accused Product on the website was limited to a *suggested* retail price that the dealers might charge for the Accused Product; it was not an actual price that a member of the public could have accepted to create a binding contract.  At least for these reasons, the promotional content on the dometic.com website constituted not an "offer to sell" but, at most, an invitation to the interested public to contact an authorized dealer of the Accused Product and discuss their interest in the product with the dealer—in other words, a "mere[] solicitation[] for offers."  *Smith v. Garlock Equip. Co.*, 658 F. App'x 1017, 1028 (Fed. Cir. 2016).

In addition, Seakeeper has suggested that Dometic Corporation is directly liable for infringement because of its alleged "importation and use of the [Accused Product] at the 2025 Miami Boat Show."  (D.I. 53 at 6.)  Seakeeper's only evidence that Dometic Corporation was responsible for these activities is that the booth where the Accused Product was exhibited at the trade show displayed the DOMETIC trademark, ⌃⌄DOMETIC, and the employees who promoted the product wore shirts with the same logo.  (*Id.*; *see* D.I. 54, ¶¶ 4, 5.)  However, this does not plausibly establish that Dometic Corporation, and not DMC, was responsible for bringing the Accused Product to the boat show and showcasing it there.  Dometic Corporation does now own

the DOMETIC trademark. The trademark is owned by Dometic Sweden AB, a separate IP holding company in the Dometic corporate family. (Ex. A, ¶ 8; Ex. B at 4.) Dometic Sweden AB has licensed the trademark to *all* Dometic Group companies via an intra-corporate license. (Ex. A, ¶ 8.) Therefore, the mere display of the DOMETIC trademark in connection with the Accused Product does not make Dometic Corporation responsible for any alleged "importation" or "use" of the Accused Product.

### 2. Seakeeper Could Not Plausibly Allege That Dometic Corporation Is Vicariously Liable for DMC's Alleged Infringement.

Seakeeper's current Complaint does not allege vicarious liability by Dometic Corporation, and thus Seakeeper cannot rely on such a theory without amending the Complaint. But the Court should not entertain any such amendment, because it would be futile. Seakeeper cannot plausibly allege that, even though Dometic Corporation did not itself make, use, sell, offer to sell, or import the Accused Product, it should be held responsible for DMC's performance of one or more of these allegedly infringing acts.

A parent corporation may be liable for infringement by a subsidiary "only if the evidence reveals circumstances justifying disregard of the status of [the subsidiaries and the parent] as distinct, separate corporations." *A. Stucki Co. v. Worthington Indus.*, 849 F.2d 593, 596 (Fed. Cir. 1988). Piercing the corporate veil requires a showing that the subsidiary is the alter ego of its parent or is an agent of the parent. *Garza v. Citigroup Inc.*, 192 F. Supp. 3d 508, 513 (D. Del. 2016) (internal citation omitted). A subsidiary can be considered the alter ego of its parent where there is a lack of attention to corporate formalities or complete domination and control by the parent. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 266 (D. Del. 1989). Meanwhile, "[a]gency theory treats the parent and its subsidiary as two separate corporate entities, holding the parent liable for the specific actions it directed or authorized the subsidiary to perform."

*Strikeforce Techs., Inc. v. Phonefactor, Inc.*, No. 13-490-RGA-MPT, 2013 U.S. Dist. LEXIS 161560, at *13 (D. Del. Nov. 13, 2013) (citing *Mobil Oil*, 718 F. Supp. at 271). However, "[s]imply being a wholly-owned subsidiary of a parent corporation alone does not make the subsidiary the agent of its parent; rather, a parent corporation will be held liable for the activities of the subsidiary only if the parent dominates those activities." *M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-33-RGA, 2016 U.S. Dist. LEXIS 872, at *84-85 (D. Del. Jan. 6, 2016) (citing *Intellectual Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495, 498 (D. Del. 2014)).

DMC is an independent corporation, separate from Dometic Corporation. (D.I. 41-1, ¶ 10.) It is responsible for its own management, operations, and governance. (*Id.*) Dometic Corporation does not control the activities of DMC. (*Id.*) Furthermore, Dometic Corporation is not even DMC's ultimate corporate parent; rather, both companies are ultimately owned by Dometic Group, a Swedish corporation. (*Id.*, ¶ 8.) Therefore, Seakeeper could not plausibly allege that DMC is an alter ego of Dometic Corporation, or that Dometic Corporation "directed or authorized" DMC's alleged infringement of the Patents-in-Suit.

Seakeeper seems to argue that Dometic Corporation can be held liable for the allegedly infringing conduct of DMC because Dometic Corporation "does business as 'Dometic Marine'"; because the press release announcing the Accused Product was issued from Litchfield, Illinois and not Canada; and because Dometic Corporation allegedly "promoted and offered the [Accused Product] for sale on its website." (D.I. 53 at 6.) However, these assertions are not remotely sufficient to establish Dometic Corporation's liability for the allegedly infringing activities of DMC under an "alter ego" or "agency" theory of vicarious liability.

First, Dometic Corporation sells products under the "Dometic Marine" brand because it does, in fact, make a variety of products for the marine industry, including marine air conditioners,

power generators, ice machines, and others. (Ex. A, ¶ 4.) However, it neither made nor sold *the accused gyrostabilizer product*. (*Id.*, ¶ 6.) The entity responsible for that product is DMC. (*Id.*) The fact that these two corporations have sold products under a common brand does not make one the alter ego of the other. *See Avicolli v. BJ's Wholesale Club, Inc.*, No. 21-1119, 2021 U.S. Dist. LEXIS 112546, at *13-14 (E.D. Pa. June 16, 2021) ("A plaintiff cannot show a subsidiary is an alter ego of its parent company by solely demonstrating the subsidiary and parent 'operate as a single brand with common corporate control.'"). Nor does it establish that Dometic Corporation "directed or authorized" DMC's activities with respect to the accused gyrostabilizer product. *Strikeforce*, 2013 U.S. Dist. LEXIS 161560, at *13.

Second, the fact that the press release announcing the launch of the Accused Product was issued from Litchfield, Illinois and not Canada is immaterial. As discussed *supra* at 8, Dometic Corporation does not even have offices in Litchfield. The Litchfield offices belong to Sierra International, a separate entity in the Dometic corporate structure, which also happens to market marine-related products under the "Dometic Marine" brand. (Ex. A, ¶ 7.) Therefore, the most that the press release could establish is that DMC shares some marketing resources with other members of the Dometic corporate family. It does not establish that DMC is an alter ego or agent of Dometic Corporation. *See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 735 F. Supp. 2d 277, 323-34 (W.D. Pa. 2010) (holding that oversight of marketing, use of a shared trademarked logo, and sharing of human resource and information technology services do not show a "high-level operational control" by a parent over its subsidiaries sufficient to justify piercing the corporate veil).

Third, the mere promotion of the Accused Product on the dometic.com website would not justify holding Dometic Corporation liable for DMC's allegedly infringing activities, either. Even

viewed in the light most favorable to Seakeeper, all that it shows is the sharing of certain marketing and information technology services by two affiliated corporations "operat[ing] as a single brand with common corporate control." *Avicolli*, 2021 U.S. Dist. LEXIS 112546, at *13-14. Again, this is not enough to warrant the "exceptional" remedy of piercing the corporate veil. *M2M*, 2016 U.S. Dist. LEXIS 872, at *83 (quoting *Mobil Oil*, 718 F. Supp. at 270).

## V. CONCLUSION

Seakeeper has not, and could not, state a plausible claim for relief against Dometic Corporation. Therefore, the Court should dismiss the Complaint as to Dometic Corporation with prejudice.

*Of Counsel:*

Oleg Khariton
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
(513) 977-8200
oleg.khariton@dinsmore.com

Michael A. Xavier
DINSMORE & SHOHL LLP
1775 Sherman Street, Suite 2600
Denver, CO 80203
(303) 296-3996
michael.xavier@dinsmore.com

Dated: June 12, 2025

ASHBY & GEDDES

*/s/ Brian A. Biggs*
_____
Andrew C. Mayo (#5207)
Brian A. Biggs (#5591)
500 Delaware Avenue, 8th Floor
PO Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
bbiggs@ashbygeddes.com

*Attorneys for Defendant*