**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SEAKEEPER, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CA No. 1:25-cv-00484-JCB |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| DOMETIC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO
<u>DISMISS</u>**

ASHBY & GEDDES

Andrew C. Mayo (#5207)
Brian A. Biggs (#5591)
500 Delaware Avenue, 8th Floor
PO Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
bbiggs@ashbygeddes.com

*Attorneys for Defendant*

OF COUNSEL:

DINSMORE & SHOHL LLP

Oleg Khariton
255 East Fifth Street, Suite 1900,
Cincinnati, OH 45202
(513) 977-8200
oleg.khariton@dinsmore.com

Michael A. Xavier
1775 Sherman Street, Suite 2600
Denver, CO 80203
(303) 831-6980
michael.xavier@dinsmore.com

Dated: July 17, 2025

1

## TABLE OF CONTENTS

I.    The Complaint Does Not Plausibly Allege That Dometic Corporation Has Committed the Alleged Infringement. .................................................................................5

II.    The Court Should Deny Seakeeper Leave to Amend the Complaint, Because Any Amendment Would Be Futile. ...........................................................................10

      A.    Seakeeper Could Not Plausibly Allege That Dometic Corporation Is Directly Liable for Any Alleged Infringement. ...................................................10

      B.    Seakeeper Could Not Plausibly Allege That Dometic Corporation Is Vicariously Liable for DMC's Alleged Infringement. ........................................12

III.    Conclusion ..........................................................................................................14

# TABLE OF AUTHORITIES

## Cases

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
    160 F.3d 1373 (Fed. Cir. 1998) ..................................................................................... 11

*Agricola Baja Best v. Harris Moran Seed Co.*,
    44 F. Supp. 3d 974 (S.D. Cal. 2014) ............................................................................. 14

*C.R. Bard, Inc. v. Guidant Corp.*,
    997 F. Supp. 556 (D. Del. 1998) .................................................................................... 12

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) ...................................................................................... 7, 13

*Elbit Sys. v. Credit Suisse Grp.*,
    917 F. Supp. 2d 217 (S.D.N.Y. 2013) ........................................................................... 13

*Energy Marine Servs. v. DB Mobility Logistics AG*,
    No. 15-24-GMS, 2016 U.S. Dist. LEXIS 7406 (D. Del. JAns. 22, 2016) ..................... 13

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ........................................................................................... 8

*Hughes v. Rowe*,
    449 U.S. 5 (1980) ........................................................................................................... 7

*HVLPO2, LLC v. Oxygen Frog, LLC*,
    187 F. Supp. 3d 1097 (D. Neb. 2016) ........................................................................... 11

*Intellectual Ventures I LLC v. Toshiba Corp.*,
    66 F. Supp. 3d 495 (D. Del. 2014) .................................................................................. 8

*Invitrogen Corp. v. Evident Techs., Inc.*,
    No. 6:08-CV-163, 2008 U.S. Dist. LEXIS 125465 (E.D. Tex. Oct. 29, 2008) ............. 11

*LoganTree LP v. Omron Healthcare, Inc.*,
    No. 18-1617 (MN), 2019 U.S. Dist. LEXIS 159730 (D. Del. Sep. 19, 2019) ................. 9

*Masimo Corp. v. Sotera Wireless*,
    No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 81873 (S.D. Cal. May 8, 2020) ... 5

*Mayne Pharma Int'l PTY Ltd. v. Merck & Co.*,
    No. 15-438-LPS-CJB, 2015 U.S. Dist. LEXIS 162912 (D. Del. Dec. 3, 2015) ............... 8

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) ...................................................................................... 8

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005) ............................................................................... 10, 11

## TABLE OF AUTHORITIES (CONT.)

*In re Rockefeller Ctr. Props. Secs. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ....................................................................................... 5, 7

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471 (3d Cir. 2001) ......................................................................................... 12

*Rotec Indus. v. Mitsubishi Corp.*,
    215 F.3d 1246 (Fed. Cir. 2000) ............................................................................... 10, 11

*Shorter v. United States*,
    12 F.4th 366 (3d Cir. 2021) ......................................................................................... 14

*Xactware, Inc. v. Symbility Sol. Inc.*,
    402 F. Supp. 2d 1359 (D. Utah 2005) ........................................................................ 11

**<u>Statutes</u>**

35 U.S.C. § 271(a) ........................................................................................... 5, 6, 9, 11

35 U.S.C. § 271(b) ............................................................................................. 5, 8, 11

35 U.S.C. § 271(c) ........................................................................................................ 8

**<u>Rules</u>**

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 7, 9, 10, 13

The Complaint does not adequately plead that Dometic Corporation is liable for the alleged infringement of Seakeeper's patents.  Importantly, Seakeeper does not dispute that the allegations in the Complaint are limited to a theory of direct liability.  That is, the Complaint does not purport to allege that Dometic Corporation is vicariously liable for the conduct of its corporate affiliate DMC, under either an alter-ego or agency theory.  (*See* Op. Br. at 14.)  Indeed, the Complaint does not even acknowledge DMC's existence.  Rather, it alleges only that Dometic Corporation is itself liable under 35 U.S.C. § 271(a) for making, using, selling, offering to sell, and/or importing the Accused Device, and liable under §§ 271(b) and (c) for inducing and contributing to third parties' infringement.   However, Seakeeper's answering brief identifies no non-conclusory, well-pleaded factual allegations in the Complaint that would support that conclusion.  Furthermore, Seakeeper's brief confirms that granting it leave to amend the Complaint so that it could attempt to state a plausible claim against Dometic Corporation, for either direct or vicarious liability, would be futile.  Thus, Seakeeper's claims against Dometic Corporation should be dismissed, with prejudice.

## I.    The Complaint Does Not Plausibly Allege That Dometic Corporation Has Committed the Alleged Infringement.

In effect, Seakeeper argues that, because the Complaint says that Dometic Corporation is liable under § 271(a) for manufacturing, using, selling, offering to sell, and/or importing the Accused Device, the Court must blindly accept those allegations as fact.  There is no merit to this argument.  A district court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint."  *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  Thus, "where plaintiffs make conclusory allegations that a defendant itself manufactured, used, sold, or offered to sell infringing products, courts have held that they do not state a claim for direct infringement."  *Masimo Corp. v. Sotera Wireless*, No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 81873, at *13 (S.D. Cal. May 8, 2020) (collecting cases).  Here, the Complaint's

allegation that Dometic Corporation itself made, used, sold, offered for sale, and/or imported the Accused Product is just that—a bald, conclusory allegation that is not entitled to any weight.

Seakeeper points to various allegations in the Complaint that purportedly support the inference that Dometic Corporation is itself liable for direct infringement under § 271(a). Citing the Complaint, Seakeeper asserts that Dometic Corporation "announced [the] release" of the Accused Product; that its employees "promoted" the Accused Product at the Miami Boat Show; that the Accused Product "was installed into boats to demonstrate its performance to potential customers" at the same trade show; and that Dometic Corporation "targeted a specific Seakeeper customer" (Regulator Marine) and "persuaded that customer to discontinue purchases from Seakeeper in favor of purchasing the Accused Product" from Dometic Corporation. (Ans. Br. at 9-19 (citing D.I. 1, ¶¶ 46, 47, 57).) However, Seakeeper's reliance on these allegations is unavailing. First, on their face, the allegations that Dometic Corporation "announced [the] release" of the Accused Product and that its employees "promoted" the Accused product at a trade show do not come within the scope of the infringing activities prohibited by § 271(a) (*i.e.*, making, using, selling, offering to sell, and/or importing an infringing product). Furthermore, all of the above allegations (including that Dometic Corporation installed the Accused Product on Regulator Marine boats and sold the Accused Product to Regulator Marine) are entirely conclusory, because the Complaint offers no factual basis for alleging that it was Dometic Corporation who, in fact, engaged in those activities. The Complaint simply invites the Court to accept its say-so that Dometic Corporation was the actor, without pleading any facts in support of that assertion.[1]

---

[1] As to the alleged "use" of the Accused Product at the Miami Boat Show, Seakeeper implies that it must have been carried out by Dometic Corporation's personnel because the presentation was branded using the DOMETIC trademark. (Ans. Br. at 10 n.2.) However, beyond the use of this shared trademark, Seakeeper does not identify any facts indicating that any Dometic Corporation personnel was actually involved in the installation or demonstration of the Accused Products.

Although Seakeper argues that it need not actually plead any facts to support its assertion that Dometic Corporation itself made, used, sold, offered for sale, and/or imported the Accused Product (Ans. Br. at 9), this argument is contrary to the settled law that "bald assertions" are not credited at the motion-to-dismiss stage. *Rockefeller*, 311 F.3d at 216. Further, the cases relied upon by Seakeeper do not support its position. For example, it cites *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016), for the proposition that, in deciding a motion under Rule 12(b)(6), a district court is generally required to accept a complaint's factual allegations as true. (Ans. Br. at 8.) But Seakeeper omits the very next sentence from *Davis*, which confirms that courts "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* (internal citation omitted). Moreover, although, in *Davis*, the Third Circuit permitted the plaintiff's breach-of-contract claim against one of the defendants to proceed despite the defendant's contention that the plaintiff's contract was with a related entity (and not the defendant itself), the complaint in *Davis* included at least two exhibits expressly indicating that a contract existed between the plaintiff and defendant. 824 F.3d at 351. Here, neither the Complaint nor any of the exhibits reveals any facts tying Dometic Corporation to the Accused Product.

Seakeeper also cites *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007), as a case holding that a bare allegation that the accused product is "manufactured and distributed by the defendant[]" is sufficient under *Twombly*. (Ans. Br. 8.) However, Seakeeper's reliance on *McZeal* is misplaced for several reasons. First, that case involved a *pro se* plaintiff, and, as the Federal Circuit acknowledged, "the pleadings of *pro se* litigants should be held to a lesser standard than those drafted by lawyers." *McZeal*, 501 F.3d at 1356 (citing *Hughes v. Rowe*, 449 U.S. 5 (1980)). Second, in concluding that the *pro se* complaint was sufficient to survive a motion under Rule 12(b)(6), the Federal Circuit specifically relied on Form 16 (later Form 18) in the Appendix

to the Federal Rules of Civil Procedure, which set forth a sample complaint for direct patent infringement that required only five basic allegations, including "a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent.'" *McZeal*, 501 F.3d at 1357. However, Form 16/18 has since been abrogated, meaning that, today, "allegations of direct infringement [are] subject to the pleading standards established by *Twombly* and *Iqbal*, requiring plaintiffs to demonstrate a 'plausible claim for relief.'" *Mayne Pharma Int'l PTY Ltd. v. Merck & Co.*, No. 15-438-LPS-CJB, 2015 U.S. Dist. LEXIS 162912, at *4-5 n.1 (D. Del. Dec. 3, 2015). Finally, to the extent *McZeal* cited *Twombly*, it suggested that that decision did not actually change the pleading standard of Rule 8 as articulated in prior Supreme Court decisions. 501 F.3d at 1356 n.4. However, the Third Circuit—whose law controls here, *see id.* (explaining that motions to dismiss in patent cases are governed by "the law of the regional circuit")—has held the opposite, concluding that *Twombly* and *Iqbal* "specifically repudiated" earlier precedent. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). For all of these reasons, *McZeal* does not support Seakeeper's argument that a bare allegation that the defendant made or sold the accused product is sufficient to withstand a motion to dismiss.

*Intellectual Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495 (D. Del. 2014), is also unhelpful to Seakeeper. There, the complaint alleged specific facts in support of its assertion that Toshiba and several of its subsidiaries were liable as joint tortfeasors for infringement of the plaintiff's patents based on an agency relationship that existed between Toshiba and the subsidiaries. *Id.* at 498. By contrast, Seakeeper does not even allege such an agency theory in the Complaint, much less provide any facts in support of it.

Nor is there any merit to Seakeeper's attempt to salvage the Complaint by pointing to its allegations of induced and contributory infringement under 35 U.S.C. §§ 271(b) and 271(c),

respectively. (Ans. Br. at 10.) These allegations suffer from the same basic flaw as Seakeeper's allegations of direct patent infringement under § 271(a). "Indirect infringement, whether it be induced or contributory, requires pleading that the defendant has knowledge of the patent," among other things. *LoganTree LP v. Omron Healthcare, Inc.*, No. 18-1617 (MN), 2019 U.S. Dist. LEXIS 159730, at *12-13 (D. Del. Sep. 19, 2019) (internal citations omitted). Here, the Complaint alleges that Dometic Corporation "knew about the [patents-in-suit] by at least as early as February 2024 during its due diligence as part of Dometic's potential acquisition of Seakeeper." (D.I. 1, ¶¶ 78, 100.) However, elsewhere the Complaint admits that it was Dometic Corporation's Swedish "parent" company, Dometic Group, who was in preliminary discussions with Seakeeper regarding the acquisition. (*Id.*, ¶ 49; *see also* D.I. 11 at 53 (attaching a copy of the confidentiality agreement signed by Dometic Group).) The Complaint pleads no facts suggesting that Dometic Corporation was involved in any "due diligence" related to those discussions, or that Dometic Group's knowledge of the patents-in-suit (if it actually acquired any such knowledge during any "due diligence") could be properly attributed to its subsidiary Dometic Corporation. Because the Complaint fails to adequately plead at least the knowledge element, its allegations of induced and contributory infringement against Dometic Corporation are insufficient to survive a Rule 12(b)(6) challenge. *See, e.g.*, *LoganTree* 2019 U.S. Dist. LEXIS 159730, at *12-13.

Finally, contrary to Seakeeper's suggestion, the motion to dismiss neither asks the Court to draw inferences in Defendant's favor with respect to the patent application and confidentiality agreement identified in the Complaint (Ans. Br. 11-12) nor invites the Court to resort to extrinsic evidence in the form of the Hall declarations. (Ans. Br. 12-13.) As explained in the motion, the patent application and confidentiality agreement do not mention Dometic Corporation; for this reason, neither document supports the inference that Dometic Corporation is responsible for the

Accused Product.  (Op. Br. 8-9.)  Seakeeper's brief does not explain how such an inference *could* be drawn from the documents.  As to the Hall declarations, while they provide useful context insofar as they confirm that Dometic Corporation has not engaged in the manufacture, sale, offering for sale, use, and/or importation of the Accused Device, the motion to dismiss did not rely on the declarations to challenge the sufficiency of the Complaint under Rule 12(b)(6).  Rather, the inadequacy of the allegations in the Complaint is apparent from the document itself, as it lacks any well-pleaded factual allegations indicating that Dometic Corporation has engaged in any of the allegedly infringing conduct in connection with the Accused Product.

## II.    The Court Should Deny Seakeeper Leave to Amend the Complaint, Because Any Amendment Would Be Futile.

Seakeeper has not demonstrated that, if given the chance to amend the Complaint, it could allege a plausible claim against Dometic Corporation for either direct or vicarious infringement.

### A.    Seakeeper Could Not Plausibly Allege That Dometic Corporation Is Directly Liable for Any Alleged Infringement.

Seakeeper seems to suggest that, if granted leave to amend, it would be able to plead additional facts showing that Dometic Corporation (1) offered the Accused Product for sale; (2) sold the Accused Product; (3) used the Accused Product at the Miami Boat Show; and (4) induced others to infringe through these same actions.  (Ans. Br. 13-17.)  However, Seakeeper could not plausibly allege any of these theories of direct liability.

First, as to offers to sell, Seakeeper relies solely on the presence on the dometic.com website of a product page related to the Accused Product.  (Ans. Br. at 16-17.)  But that product page cannot qualify as an "offer to sell" under Federal Circuit precedent, which requires an actionable "offer to sell" to be capable of being "ma[d]e into a binding contract by simple acceptance."  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005) (citing *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000)).

As previously discussed (Op. Br. at 11-12), the product page at issue does not satisfy those criteria. Further, Defendant respectfully notes that, although the Court's order denying Seakeeper's injunctive-relief motions found that the promotional content on dometic.com may have qualified as an "offer to sell" the Accused Product (D.I. 87 at 9), the pre-*Rotec*/*MEMC* cases cited by the Court in support of that finding, including *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998), have effectively been overruled by those later decisions clarifying that an "offer to sell" under § 271(a) is defined by traditional contract principles. *See Invitrogen Corp. v. Evident Techs., Inc.*, No. 6:08-CV-163, 2008 U.S. Dist. LEXIS 125465, at *10 (E.D. Tex. Oct. 29, 2008) ("*Rotec* effectively overruled *3D Systems*' broader interpretation of § 271(a)"); *Xactware, Inc. v. Symbility Sol. Inc.*, 402 F. Supp. 2d 1359, 1367 (D. Utah 2005) (explaining that *Rotec* requires "a much different analysis" compared to *3D Sys.*); *HVLPO2, LLC v. Oxygen Frog, LLC*, 187 F. Supp. 3d 1097, 1111 (D. Neb. 2016) (explaining that the Federal Circuit "revised its 'offer to sell' analysis" in *Rotec*). Notably, Seakeeper's brief continues to cite pre-*Rotec*/*MEMC* cases without even acknowledging the later decisions, let alone distinguishing them. (Ans. Br. at 17 n.9).

Second, as to actual sales, Seakeeper claims that Dometic Corporation "entered into an agreement with . . . Regulator Marine[] to supply Regulator with the [Accused Product]." (Ans. Br. at 16.) However, Seakeeper merely assumes that Dometic Corporation was the Dometic entity that signed an agreement with Regulator Marine. It provides zero support for this assertion.

Third, as to use, Seakeeper does not identify any additional facts beyond what it has already alleged in the Complaint. (Ans. Br. at 14-15.) As discussed *supra* at 5 & n.1, those allegations do not amount to a plausible claim that Dometic Corporation has "used" the Accused Device.

Finally, as to inducement, Seakeeper could not plausibly plead an inducement claim against Dometic Corporation under § 271(b) at least for the reason discussed *supra* at 7-8. Specifically,

Seakeeper has no basis for plausibly alleging that Dometic Corporation had knowledge of the patents-in-suit during any relevant period. While Seakeeper suggests that Dometic Corporation acquired such knowledge as part of "due diligence" related to its parent's potential acquisition of Seakeeper in 2024, Seakeeper has identified no facts suggesting that Dometic Corporation was involved in that "due diligence," or that its parent company's purported knowledge of the patents-in-suit could somehow be imputed to it. And Seakeeper's answering brief identifies no additional facts that would plausibly suggest the requisite knowledge of the patents by Dometic Corporation.

### B.    Seakeeper Could Not Plausibly Allege That Dometic Corporation Is Vicariously Liable for DMC's Alleged Infringement.

Seakeeper's answering brief does not show that, if granted leave to amend the Complaint, Seakeeper could plausibly allege an alter-ego or agency theory of vicarious liability against Dometic Corporation to hold it liable for the actions of non-party DMC.

As to the alter-ego theory, Seakeeper suggests in passing that "the facts now known and likely to be revealed during discovery would support" a finding that DMC is the alter ego of Dometic Corporation. (Ans. Br. at 15.) However, as the Court observed in its order denying Seakeeper's injunctive-relief motions, the alter-ego test requires a showing that, "in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such." (D.I. 87 at 11 (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).) "Plaintiff must demonstrate 'some fraud, injustice, or inequity in the use of the corporate form.'" (*Id.* (quoting *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559 (D. Del. 1998).) The alter-ego analysis weighs the following factors: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the

12

operations of the dominant stockholder." *Pearson*, 247 F.3d at 484-85.  Seakeeper's brief does not address a single of these factors or identify any facts that it would plead in order to support the existence of an alter-ego relationship between Dometic Corporation and DMC.  Nor could it circumvent this problem with a mere conclusory allegation that DMC is the alter ego of Dometic Corporation, because such an allegation would not survive a challenge under Rule 12(b)(6).  *See Energy Marine Servs. v. DB Mobility Logistics AG*, No. 15-24-GMS, 2016 U.S. Dist. LEXIS 7406, at *9 (D. Del. JAns. 22, 2016) ("EMS has provided no basis for the court to infer an alter-ego relationship for any of the entities between Schenker SA and DBMLAG.  The alleged multilevel alter-ego relationship amounts to 'naked assertion[s] devoid of further factual enhancement' and is therefore insufficient to meet the minimum pleading requirements.").[2]

As to the agency theory, Seakeeper's brief does not mention it at all (or otherwise suggest that DMC acted as the agent of Dometic Corporation with respect to any of the alleged acts of infringement).  Further, while Defendant acknowledges the Court's preliminary finding that Dometic Corporation and DMC "held themselves out as one 'Dometic' company when displaying the [Accused Product] at the Miami boat show" (D.I. 87 at 12), it respectfully submits that that finding is not sufficient to support the existence of an agency relationship between the two corporations.  The use of shared trade names and logos by members of the same corporate family is a ubiquitous practice that, alone, does not justify holding one corporation to be the agent of another.  *See, e.g.*, *Elbit Sys. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 226 (S.D.N.Y. 2013) (explaining that "the use of a shared brand identity" does not create an agency relationship);

---

[2] *Davis*, cited by Seakeeper (Ans. Br. at 15), does not support its suggestion that an alter-ego claim can survive a motion to dismiss based solely on the plaintiff's speculation that discovery may uncover evidence supporting such a claim.  Rather, in *Davis*, the Third Circuit concluded that the alter-ego theory was "irrelevant" on the facts of that case, because the complaint sufficiently alleged that the defendant corporation *itself* was a party to the contract-in-suit.  824 F.3d at 348.

*Agricola Baja Best v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 983 (S.D. Cal. 2014) ("branding with a parent corporation's logo is, alone, insufficient to establish an agency relationship").

Regardless, even if the Court were to find that Seakeeper could plead sufficient facts to allege that DMC acted as Dometic Corporation's agent at the Miami Boat Show (or vice versa), it should grant Seakeeper leave to amend the Complaint only for that limited purpose. The allegation that Dometic Corporation and DMC collaborated with respect to the demonstration of the Accused Product at a single trade show, in a way that would establish the existence of an agency relationship between them as to that particular trade show, would not establish the existence of a broader agency relationship between the two corporations (*e.g.*, with respect to DMC's sales of, or offers to sell, the Accused Products outside of the trade show). That is, Seakeeper has offered no facts suggesting that an agency relationship has existed between Dometic Corporation and DMC beyond the activities that occurred at the Miami Boat Show. Thus, if it is allowed to amend the Complaint at all, it should not be permitted to extend its allegations of agency beyond those limited activities.

Finally, the Court should reject Seakeeper's invitation to permit it to engage in "expedited discovery" so that it could attempt to marshal the facts it needs to state a plausible claim. (Ans. Br. at 17-18.) Contrary to Seakeeper's suggestion, *Shorter v. United States*, 12 F.4th 366 (3d Cir. 2021), does not support granting it leave to conduct such discovery. In *Shorter*, the Third Circuit concluded that the plaintiff was entitled to take discovery because his complaint had "provided sufficient allegations of the Defendants' [misconduct] to proceed to the next stage in the litigation." *Id.* at 375. By contrast, Seakeeper has neither pleaded, nor could plead, a plausible claim against Dometic Corporation that would entitle it to proceed to the discovery phase.

## III.    Conclusion

The Court should dismiss Seakeeper's claims against Dometic Corporation with prejudice.

ASHBY & GEDDES

/s/ Brian A. Biggs

OF COUNSEL:                          Andrew C. Mayo (#5207)
                                     Brian A. Biggs (#5591)
DINSMORE & SHOHL LLP                 500 Delaware Avenue, 8th Floor
                                     PO Box 1150
Oleg Khariton                        Wilmington, DE 19899
255 East Fifth Street, Suite 1900,   (302) 654-1888
Cincinnati, OH 45202                 amayo@ashbygeddes.com
(513) 977-8200                       bbiggs@ashbygeddes.com
oleg.khariton@dinsmore.com

Michael A. Xavier                    *Attorneys for Defendant*
1775 Sherman Street, Suite 2600
Denver, CO 80203
(303) 831-6980
michael.xavier@dinsmore.com

Dated: July 17, 2025

15