# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAKEEPER, INCORPORATED, <br><br> Plaintiff, <br><br> v. <br><br> DOMETIC CORPORATION, <br><br> Defendant. | C.A. No. 25-0484-JCB <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION FOR RECONSIDERATION
OF ORDER DENYING PRELIMINARY INJUNCTION FOLLOWING TRO HEARING**

OF COUNSEL:

MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 474-6300

Steven J. Fineman (#4025)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff
SEAKEEPER, INC.*

Dated: July 21, 2025

1

## I.       INTRODUCTION

Plaintiff respectfully moves for reconsideration of the Court's July 7, 2025 Order denying a preliminary injunction, which was issued following a hearing noticed and held solely for argument on Plaintiff's Motion for a Temporary Restraining Order ("TRO"). D.I. 87. The denial of preliminary injunctive relief at this early stage, without affording Plaintiff the opportunity to take discovery or present further evidence, constitutes clear error and results in manifest injustice. Accordingly, reconsideration is warranted under District of Delaware Local Rule 7.1.5.[1]

## II.      LEGAL STANDARD

A motion for reconsideration may be granted where there is: (1) an intervening change in controlling law, (2) newly available evidence, or (3) a need to correct clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The third ground is directly implicated here. The Court's *sua sponte* conversion of a TRO proceeding into a merits ruling on a preliminary injunction—without notice or further factual development—deprived Plaintiff of procedural due process and the opportunity to meet its burden under Rule 65(a).

## III.     ARGUMENT

### A.    The Court Committed Clear Error by Converting the TRO Hearing into a Preliminary Injunction Ruling Without Notice

Under Federal Rule of Civil Procedure 65, temporary restraining orders and preliminary injunctions are distinct remedies subject to different standards and procedures. A TRO may be granted on an emergency basis and without notice. By contrast, a preliminary injunction requires

---

[1] Pursuant to District of Delaware Local Rule 7.1.1, Counsel for Plaintiff has conferred with counsel for Defendant. Defendant opposes the relief sought in this motion.

2

notice and an evidentiary showing. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 432 n.7 (1974) (explaining distinction).

Here, Plaintiff moved for a TRO and sought a prompt hearing consistent with Rule 65(b). D.I. 33 at 1. The Court noticed a hearing solely on Plaintiff's request for a TRO. D.I. 38. The hearing noticed for May 28, 2025 concerned emergency relief pending further proceedings, including subsequent discovery of Defendant and an eventual evidentiary hearing on Plaintiff's separate request for a preliminary injunction. See, e.g., D.I. 75 at 30 ("THE COURT: … I know this is just a TRO that, you know, I scheduled on your requested emergency timeline, so I expect we would be getting more from both sides on this should the case develop[.]"); 65 ("THE COURT: What evidence is before the Court, at least at the TRO stage where we are today -- maybe you will introduce more if there is more preliminary injunction briefing[.]"); 80 ("THE COURT: … So I think we have established today that for purposes of the TRO, not the PI but the TRO at least, the '930 patent is off the table. So we are focusing on the '782 patent.")

Indeed, both parties had contemplated that discovery and an evidentiary hearing would precede a decision on Plaintiff's separate request for a preliminary injunction. D.I. 9 at 1 n.1 (Plaintiff "intends to seek entry of a schedule governing the preliminary injunction, which would include discovery and the opportunity to supplement this brief based on information learned in discovery."); D.I. 32 at 32-33 (Defendant proposing schedule for discovery and evidentiary hearing). Plaintiff's separate request for a temporary restraining order was, in fact, prompted by the need to prevent harm during the period of time needed to accomplish this discovery and hold that further hearing. D.I. 30 at 6 (TRO prompted by Defendant refusal to refrain from infringement pending discovery leading to evidentiary hearing on preliminary injunction).

3

Plaintiff was not given notice that the Court would adjudicate its request for preliminary injunction at the hearing, nor was Plaintiff afforded the procedural safeguards required by Rule 65(a)—including the right to develop a factual record through limited discovery. This approach is inconsistent with longstanding precedent. *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 324 (3d Cir. 2015) ([W]e have noted that it 'may be improper to resolve a preliminary injunction motion on a paper record alone; [and] where the motion turns on a disputed factual issue, an evidentiary hearing is ordinarily required[.]"); *Corporate Synergies Group, LLC v. Andrews*, 775 Fed.Appx. 54, *60 (3d Cir. May 31, 2019) (reversing district court's decision to convert TRO hearing into hearing on motion for preliminary injunction without adequate notice).

### B.     Plaintiff Was Denied a Fair Opportunity to Present Evidence in Support of Preliminary Injunctive Relief

The record at the TRO hearing was limited, and understandably so. Plaintiff had no opportunity to conduct discovery. Plaintiff was not afforded the opportunity to depose Defendant's expert regarding patent validity. Plaintiff was not afforded an opportunity to present testimony of Defendant's employees and others knowledgeable concerning Defendant's planned activities with respect to the infringing product that would reveal further, additional irreparable harms to Plaintiff. These procedural limitations materially prejudiced Plaintiff.

To prevail on a motion for preliminary injunction, a plaintiff must establish a likelihood of success, irreparable harm, and the balance of equities. But courts routinely recognize that these are fact-intensive inquiries that require development through testimony and targeted discovery. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179-80 (3d Cir. 2017) (vacating and reversing order denying preliminary injunction, crediting assertions by party bearing the burden of proof that it "would have requested a full hearing to present more fully their case as to likelihood of success" had they received adequate notice); *see also OMG Fid., Inc. v. Sirius Techs., Inc.,* 239 F.R.D. 300,

305 (N.D.N.Y. 2006) ("[G]iven that plaintiff contemplates a motion for a preliminary injunction, depending upon the results of its proposed discovery efforts, **it is clear that plaintiff will potentially be unfairly prejudiced should I not permit discovery to go forward** since it will not have an early opportunity to develop evidence for use in support of such a motion.") (Emphasis added).

"[A] district court cannot resolve a motion for a preliminary injunction that depends upon the resolution of disputed issues of fact without first holding an evidentiary hearing." *Arrowpoint Cap. Corp.*, 793 F.3d at 324 (citing *Pro. Plan Examiners of New Jersey, Inc. v. Lefante*, 750 F.2d 282, 288 (3d Cir. 1984)). "Within the Third Circuit, a court may decide a motion for preliminary injunction on the paper alone '[o]nly when the facts are not in dispute, or when the adverse party has waived its right to a hearing.'" *ASI Business Solutions, Inc. v. Otusuka America Pharm., Inc.*, 233 F. Supp. 3d 432, 438 (E.D. Pa. 2017) (quoting *Pro. Plan Examiners of New Jersey*, *id.*) The limited evidence that was presented during the hearing on Plaintiff's request for a TRO was heavily disputed, and Plaintiff did not waive its right to discovery and a subsequent evidentiary hearing on its request for a preliminary injunction.[2]

Had Plaintiff been permitted to proceed with its request for a preliminary injunction in the ordinary course—after discovery and an evidentiary hearing—the outcome may well have differed. For example, the Court concluded Plaintiff had failed to meet its burden of establishing a likelihood of irreparable harm. The Court based its conclusion on its determination that Plaintiff

---

[2]  During the hearing, the Court inquired whether Plaintiff would consent to having its motion for a preliminary injunction resolved solely on the basis of the arguments presented on its request for a temporary restraining order. Plaintiff's counsel declined, citing the likely need for additional discovery were the Court to deem the evidence presented insufficient for a TRO. D.I. 75 at 27 and 110-12 (counsel advising that if the TRO were denied, Plaintiff sought a separate hearing on the request for preliminary injunction following further factual development).

faced, at most, damage to only a quarter of its business. D.I. 87 at 30 (observing that Defendant's current DG3 offering competes only with certain of Plaintiff's models). Defendant, however, has announced its intention to launch additional infringing models likely to damage far more than 25% of Plaintiff's business. D.I. 11-1 at 157 (The DG3 is "the first in a planned series of advanced stabilizers[.]"); D.I. 31, ¶ 26. Discovery will likely reveal that during the term of Plaintiff's patents, Defendant plans to introduce additional models of infringing gyrostablizers that target a larger percentage of Plaintiff's business.[3]

In addition, the Court faulted Plaintiff for failing to establish the importance of the patented features to the marketability of Defendant's infringing product. D.I. at 32 ("[I]t is more than possible that harm incurred by plaintiff arising from DG3's entry into the marketplace may arise from the device's non-patented features.") Discovery of Defendant's testing data will likely reveal that the ultimate performance of its infringing product is dependent on the patented cooling technology.[4]

Similarly, the Court dismissed as "speculative" Plaintiff's claims that it would continue to suffer *further* price erosion. D.I. 87 at 32. The Court concluded that all potential price erosion was in the past. *Id.* ("A significant portion of plaintiff's supposed price-erosion harms have already occurred.") Plaintiff, however, has not had the benefit of discovery regarding Defendant's future

---

[3] The Court's focus on current boat design projects also failed to address the damages likely to occur in future months prior to trial—harm that a preliminary injunction is designed to address. D.I. 87 at 30 (citing D.I. 12 at 3 (discussing only present design projects expected to close in the near term).

[4] For example, features singled out by the Court, such as use of glycol and seawater to dissipate heat, depend foremost on the ability to first remove heat from the bearings adjacent the stabilizer's moving flywheel—something first accomplished by the patented innovation. In other words, without the heat removal made possible by the patented invention, there would be nothing to dissipate.

pricing plans. Discovery is likely to reveal Defendant's future plans to discount pricing of its infringing gyrostablizer in response to Plaintiff's recent price reductions. Such discovery will also likely detail Defendant's plans to discount pricing through its announced bundling of its infringing gyrostablizer with its other marine product offerings, such as its marine steering systems, trim tabs and other control surface products. Plaintiff should be allowed to secure and present such evidence in support of its request for a preliminary injunction.

Likewise, the Court's conclusions that a substantial question of patent validity existed were reached without providing Plaintiff with an adequate opportunity to counter Defendant's evidence. Defendant first raised its invalidity defense on May 22, 2025, just six days before the hearing scheduled on Plaintiff's motion for a temporary restraining order. D.I. 46.[5] To support its defense, Defendant presented declarations of Dr. Gregory Buckner, a professor of mechanical and aerospace engineering at North Carolina State University. Plaintiff was not afforded an adequate opportunity prior to the hearing to cross-examine Dr. Buckner concerning Defendant's defense.

Dr. Buckner failed to address numerous differences between the prior art and the patent invention highlighted by Plaintiff. Dr. Buckner also did not address numerous disclosures in those references that would have dissuaded a person of skill in the art from modifying them in the manner asserted. Had Plaintiff been afforded an opportunity to cross-examine Dr. Buckner, Plaintiff could well have undermined Dr. Buckner's testimony based upon these failings.

The Court's decision to deny preliminary injunctive relief also failed to afford Plaintiff the opportunity to present its own expert testimony. The Court acknowledged that the case was at an early stage, and that Plaintiff had not had a fulsome opportunity to provide expert testimony in

---

[5]  Dr. Buckner's testimony in an earlier IPR proceeding was rejected because based upon a different, non-prior art reference. No cross-examination occurred as a consequence.

response to Defendant's evidence. D.I. at 26.[6] Plaintiff had insufficient opportunity to engage its own expert to counter Dr. Buckner's testimony. Such testimony would likely point out reasons why Defendant's prior art references could not have motivated the patented invention:

- **_Sibley_ reference**: Among other things, such an expert would likely highlight the fact that the Patent Office allowed the '782 Patent over the *Sibley* reference. That expert would also likely explain that the Sibley reference does not suggest use of interleaved fins adjacent the heat generating bearings, but teaches the opposite—in *Sibley* the fins are deliberately distanced from the heat generating bearings and used only to condense the vaporized liquid which actually cools the bearings.

- **_Jager_ reference**: Among other things, such an expert would likely have explained that the *Jager* reference teaches away from interleaved fins that are not perpendicular to the axis of rotation. An expert would likely have highlighted that *Jager* cites this perpendicular orientation as a distinct advantage of its design because it allows cooling to be increased through the simple multiplication of identical fins without major design changes. Such an expert could likely explain why parallel oriented interleaved fins could not be similarly employed in *Jager's* design and why a person of skill in this art would not deem them compatible with such a design.

- **_Bimshas reference_**: Among other things, such an expert would likely have explained that the slow-moving gimbal design depicted in *Bimshas* relied for its cooling upon the convection made possible through introduction of gas under pressure. Such an expert would likely explain that a person of skill in the art would not have concluded from *Bimshas* that there was a reasonable expectation of successfully employing *Bimshas's* design to cool bearings in a gas-*evacuated* environment, where the bearings generate heat vastly exceeding that anticipated in *Bimshas's* application. As further discussed above, such an expert would also explain how the orientation of fins in *Bimshas* would have been thought unsuitable for the applications described in *Sibley* and *Jager*.

---

[6] The Court too would clearly benefit from expert evidence bearing upon patent validity. The Court's opinion denying preliminary injunctive relief reveals that lacking such evidence the Court was reduced to speculating on what a person of skill in the art would conclude. D.I. 87 at 25 (Noting the Court's application of its own "common-sense" judgment to conclude that there was a "substantial possibility" a person of skill in this art would make the necessary modifications to the prior art).

Denying preliminary relief on an underdeveloped record, without notice, creates manifest injustice and warrants reconsideration.

## IV. CONCLUSION

The Court's *sua sponte* conversion of a TRO hearing into a ruling on a preliminary injunction—without notice or the procedural protections mandated by Rule 65(a)—was error and resulted in manifest injustice. Plaintiff respectfully requests that the Court reconsider its July 7, 2025 Order, vacate the denial of the preliminary injunction, and permit the motion to proceed on a proper record following discovery and full briefing.

| | |
|---|---|
| | */s/ Kelly E. Farnan* |
| OF COUNSEL: | Steven J. Fineman (#4025) |
| | Kelly E. Farnan (#4395) |
| MARSHALL, GERSTEIN & BORUN LLP | Christine D. Haynes (#4697) |
| 6300 Willis Tower | Richards, Layton & Finger, P.A. |
| 233 S. Wacker Drive | One Rodney Square |
| Chicago, IL 60606 | 920 North King Street |
| (312) 474-6300 | Wilmington, DE 19801 |
| | 302-651-7700 |
| | farnan@rlf.com |
| Dated:  July 21, 2025 | haynes@rlf.com |
| | |
| | *Attorneys for Plaintiff* |
| | *Seakeeper, Inc.* |

9