IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAKEEPER INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DOMETIC CORPORATION, )<br>)<br>Defendant. ) | C.A. No. 25-484-JCB |

**DOMETIC CORPORATION'S LETTER TO THE HONORABLE J. CAMPBELL
BARKER IN RESPONSE TO SEAKEEPER'S MARCH 2, 2026 LETTER**

*Of Counsel:*

Oleg Khariton
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
(513) 977-8200
oleg.khariton@dinsmore.com

Michael A. Xavier
DINSMORE & SHOHL LLP
1775 Sherman Street, Suite 2600
Denver, CO 80203
(303) 296-3996
michael.xavier@dinsmore.com

Dated: March 5, 2026

John G. Day (#2403)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
PO Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

{02211500;v1 }

Dear Judge Barker,

The Court should deny Seakeeper's motion to compel. Although Dometic warned Seakeeper that the version of the DG3 that Seakeeper had seen in promotional materials did not necessarily represent the final product design (D.I. 14-1 at 22), Seakeeper rushed to file suit based on that version of the product. Even before the Court denied Seakeeper's ensuing motions for preliminary injunctive relief, Dometic advised Seakeeper that the accused DG3 design had been discontinued (after a meager three shipments to a single customer) in favor of another, clearly non-infringing design. (D.I. 65; D.I. 67; D.I. 102 at 67:5-9.) Since then, Dometic has produced ample technical documentation confirming the non-infringing nature of this design. Tellingly, in the face of these materials, Seakeeper has opted not to amend its complaint to accuse the current design of infringement (presumably because it has no plausible infringement claim to assert). Accordingly, Seakeeper has not shown that it is entitled to further discovery into this product.

### I.   The Current DG3 Design Is Not Relevant to the Allegations in the Complaint.

Following the Court's denial of Seakeeper's injunction motions, Seakeeper requested that Dometic provide it with technical documents concerning the new DG3 design, ostensibly to allow Seakeeper to verify that the current DG3 lacks the claimed vane architecture. Dometic has provided this information. Seakeeper suggests that, to date, Dometic has produced only "six pages of black-and-white line drawings" of the current DG3 design (D.I. 156 at 2), but this is simply not the case. For one, the production drawings referred to by Seakeeper are dense with information. They show, in substantial detail, both the individual parts of the product (including dimensions, tolerances, and materials) and how these parts are assembled together to create the finished device.[1] Moreover, Seakeeper neglects to mention that Dometic has also produced the full set of CAD files requested by Seakeeper. (D.I. 157-4 at 2.) And Dometic has produced additional technical documentation, including operation and installation manuals, that are common to both the current and prior DG3 designs. In fact, after Seakeeper's counsel suggested, remarkably, that the reason why Seakeeper has continued to pursue further discovery into the current DG3 design is because it simply "doesn't believe" that the design change announced by Dometic last May has been implemented, Dometic even offered Seakeeper's attorneys the opportunity to inspect a sample of the current DG3 product in person, provided Seakeeper agreed not to burden the Court with motion practice pending the completion of the inspection. (D.I. 157-6 at 3.) Despite its stated desire to confirm non-infringement, Seakeeper rejected Dometic's offer. (*Id.* at 2.)

Seakeeper asserts that it is entitled to further discovery into the current DG3 design because it is an "accused product." (D.I. 156 at 2.) But the infringement allegations in its complaint are directed solely to the prior, discontinued version of the DG3. (D.I. 1 at ¶¶ 47-48, 73.) And though Seakeeper's Initial Infringement Contentions purport to identify the current version as an "accused product," these contentions are both untethered from the only infringement theory alleged in the complaint and implausible on their face. (D.I. 157 at 2-3.) As explained in Dometic's motion to strike Seakeeper's infringement contentions concerning the current design, Seakeeper should not be permitted to circumvent the pleading requirements of Rule 8 in order to obtain discovery about a product that it is unwilling and unable to accuse of infringement in a complaint. (*See id.*)

---

[1] Seakeeper's suggestion that these production drawings lack adequate detail is belied by the fact that it repeatedly references them in its purported "infringement contentions." (D.I. 156-5 at 75-101.)

Alternatively, Seakeeper suggests that further discovery into the current DG3 design is relevant to its claims concerning the ***prior*** design. (D.I. 157 at 4.) On this point, Seakeeper is wrong. As to damages, Dometic has not said that it intends to rely on the current DG3 design as a "non-infringing alternative" for the purpose of rebutting Seakeeper's damages theories.[2] Accordingly, Seakeeper's motion to compel additional discovery on that basis is, at best, "premature." *Sensor Elec. Tech., Inc. v. Bolb, Inc.*, No. 18-cv-05194-LHK (VKD), 2019 U.S. Dist. LEXIS 22873, at *9 (N.D. Cal. Feb. 12, 2019). As to willfulness, this issue turns on the conduct of the defendant "at the time of accused infringement." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016)). Thus, where the defendant attempted, but failed, to design around a patent prior to launching an infringing product, then such evidence could arguably go to willfulness. *Applied Med. Res. Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir. 2006). But the defendant's ***later*** successful development of a ***non***-infringing product has no bearing on whether it willfully infringed the patent "at the time of accused infringement" (*i.e.*, at the time it launched the infringing product). *Exmark*, 879 F.3d at 1353.

## II.     The Court Should Deny Each of Seakeeper's Requests for Discovery.

***Core technical documents.***   Seakeeper asks the Court to compel Dometic to produce, "within 10 days," technical documents "describing the configuration and operation of the current [DG3] design." (D.I. 156 at 4.) Setting aside whether Seakeeper is entitled to this information under Paragraph 4(b) of the Default Standard for Discovery (and Dometic maintains that it is not, because the current design has not been alleged to be an "accused product" in any pleading), Seakeeper's request is entirely moot at this point. As discussed *supra*, Dometic has ***already provided*** Seakeeper with production drawings, CAD files, and other key technical documents that, collectively, are more than sufficient to show the "configuration and operation" of the current design. Tellingly, Seakeeper does not argue that it is unable to determine from the documents produced to date whether the current design has the claimed vane architecture. It fails to identify ***any*** additional categories of documents that it still requires in order to understand the "configuration and operation" of the current design, aside from "testing data relating to heat transfer." (D.I. 156 at 4.) But even that part of its request is moot. Seakeeper apparently demands this "testing data" because the asserted patent claims require heat to travel from the "first" set of vanes to the "second" set of vanes, and then from the "second" set of vanes to the "exterior of the enclosure." (D.I. 1-1 at 42-43 (10:47-50, 11:28-33).) To begin with, because the current design has no "interleaved" "vanes" to speak of, demanding that Dometic produce test data that shows how heat flows from a non-existent "first" set of vanes to a non-existent "second" set of vanes, and then from these non-existent vanes to the enclosure's exterior, makes no sense. Regardless, even accepting Seakeeper's implausible labeling of certain components in the current design as the "first" and "second" sets of vanes, Dometic has already told Seakeeper that it has not identified any "testing data" that would be responsive to Seakeeper's request. (Ex. A at 2.)

***Other "responsive information."***   Seakeeper also demands that Dometic produce further "responsive information about the current design" in response to unspecified requests for production and interrogatories. (D.I. 156 at 4.) Seakeeper's "shotgun" approach is inappropriate because it fails to give the Court and Dometic adequate notice of the specific categories of

---

[2] Of note, given the number of allegedly infringing shipments (three), Seakeeper's potential damages are negligible.

information being requested. In any event, as discussed *supra*, Seakeeper has not shown that it is reasonably entitled to any further information about the current design beyond the extensive technical documentation that it has already been given. If Seakeeper wants further discovery into this product, it should amend its complaint and give Dometic the chance to test the facial plausibility of its purported infringement theory before such further discovery is permitted.

***Early partial Rule 30(b)(6) deposition.*** Finally, Seakeeper demands that, "within 7 days" of Dometic's production of additional core technical and sales documents, Dometic also make a Rule 30(b)(6) witness available to testify on several broad topics concerning both the current and prior DG3 designs, including, but not limited to, the "components" of each design and all "sale[s]" and "proposal[s] to sell" each design. (D.I. 156-10 at 4.) Because Seakeeper's request is contrary to both common sense and the Federal Rules of Civil Procedure, it should be denied.

To be clear, Dometic does not object to producing, at an appropriate juncture in discovery, a corporate representative who can testify about the topics in Seakeeper's initial deposition notice to the extent those topics concern the prior DG3 design. Dometic is also willing to provide a corporate representative who can testify about the technical documentation related to the current design (*i.e.*, the production drawings, CAD files, and other technical documents that have been provided to Seakeeper). Rather, Dometic's objection to Seakeeper's deposition notice is two-fold.

*First,* Dometic objects to Seakeeper's initial deposition notice to the extent it seeks sales and other commercial information concerning the current DG3 design. As discussed *supra*, such information is simply not relevant to the parties' claims or defenses.

*Second,* Dometic objects to the notice because of its premature and piecemeal nature. The parties are in the midst of document discovery (remarkably so, given the *de minimis* shipments of the prior version of the DG3). The April 2, 2026 deadline to substantially complete document production[3] is ***only a month away***. (D.I. 141 at 4.) There is no exigency here that would justify letting Seakeeper take an early, incomplete deposition of Dometic while document discovery is on-going, only for it to notice a second, follow-on Rule 30(b)(6) deposition mere weeks from now once the parties have substantially finished producing documents. Indeed, Seakeeper all but admits that it intends to serve Dometic with a second Rule 30(b)(6) notice later in discovery. (D.I. 156 at 3.) But it identifies no prejudice that it could possibly suffer from having to wait until after April 2 to depose Dometic. By contrast, permitting Seakeeper to proceed with the Rule 30(b)(6) deposition in a piecemeal fashion is all but certain to force Dometic into bringing one or more of the same witnesses back for a second deposition.[4] Dometic should not be subjected to this unfair burden as it is not remotely necessary or proportional to the needs of this case. In fact, avoiding this type of burden is precisely why the one-deposition-per-person limit in Rule 30(a)(2)(A)(ii) has been held to apply equally to corporate parties. *Sight Sciences, Inc. v. Ivantis, Inc.*, No. No. 21-1317-GBW-SRF, 2023 U.S. Dist. LEXIS 204811, *15 (D. Del. July 3, 2023) (citing *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234-35 (E.D. Pa. Nov. 25, 2008)).

---

[3] The fundamental purpose of the substantial document production deadline is to serve as a point in time ***after*** which fact depositions should be taken.

[4] To illustrate, Topic 1 in Seakeeper's current notice relates to the "components" of the "Accused Products." (D.I. 156-10 at 4.) Meanwhile, Topic 5 (which Seakeeper has "withdrawn without prejudice" for the time being but intends to re-notice later in discovery) relates to "[a]ll testing" of the "Accused Products." (*Id.*) Given the common technical nature of these topics, Dometic is almost certain to designate the same witness to cover both.

                                                              Respectfully,

                                                              */s/ Andrew C. Mayo*

                                                              Andrew C. Mayo (#5207)

ACM/mlk
attachment
cc:      All counsel of record (via electronic mail)

{02211500;v1 }