# EXHIBIT Q

# Morris James LLP

Charles H. Toliver, IV
302.888.6941
ctoliver@morrisjames.com

December 11, 2015

**BY E-FILING**

Stephen B. Brauerman, Esquire
Richard D. Kirk, Esquire
Sara E. Bussiere, Esquire
Vanessa Riberioro Tirandentes, Esquire
Bayard, P.A.
222 Delaware Ave., Ste. 900
Wilmington, DE 19801

Anne Shea Gaza, Esquire
Samantha G. Wilson, Esquire
Young Conaway Stargatt & Taylor LLP
Rodney Square
1000 N. King Street
Wilmington, DE 19801

Adam S. Hoffman, Esquire
Benjamin T. Wang, Esquire
Jay C. Chung, Esquire
Jeffrey Z.Y. Liao, Esquire
Marc A. Fenster, Esquire
Paul A. Kroeger, Esquire
Russ August & Kabat
12424 Wilshire Blvd., 12th Fl.
Los Angeles, CA 90025

Deborah A. Laughton, Esquire
Robert F. Kappers, Esquire
Sandra A. Frantzen, Esquire
Jesse T. Dyer, Esquire
McAndrews, Held & Malloy Ltd.
500 West Madison St., 34th Fl.
Chicago, IL 60661

Edward R. Reines, Esquire
Michele Gauger, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Pkwy.
Redwood Shores, CA 94065

John W. Shaw, Esquire
Karen Elizabeth Keller, Esquire
Shaw Keller LLP
300 Delaware Ave., Ste. 1120
Wilmington, DE 19801

Re: ***Orthophoenix, LLC v. Stryker Corp., et al.***
<u>**Civil Action No. 13-1628-LPS**</u>

8223568/

500 Delaware Avenue, Suite 1500 | Wilmington, DE 19801-1494   T 302.888.6800   F 302.571.1750
Mailing Address   P.O. Box 2306 | Wilmington, DE 19899-2306   www.morrisjames.com

December 11, 2015  
Page 2

Morris James LLP

Dear Counsel:

On September 25, 2015, you wrote to me as Special Discovery Master concerning disputes as to discovery filed in this action as above referenced. Having now had the opportunity to review the submissions filed by counsel as well as the arguments raised during the course of conferences regarding this aspect of the case, I have reached decisions in response to the issues you raised. Those decisions, as well as the reasoning underlying the same, are set forth below.

## **PROCEDURAL POSTURE**

As the record will reflect, the instant litigation was instituted on October 1, 2013 when Orthophoenix, LLC filed a complaint in the United States District Court for the District of Delaware alleging that the Stryker Corporation and others were infringing upon certain patents owned by Orthophoenix. The case was subsequently assigned to the Honorable Leonard P. Stark and a case scheduling order was entered on May 14, 2015. Paragraph two of that order incorporated what was referenced as the "Default Standard for Discovery of Electronic Documents",[1] which would apply to the conduct of discovery unless the parties otherwise agreed or the Court ordered a different process.

On May 6, 2015, Judge Stark appointed the undersigned as Special Discovery Master for purposes of addressing and resolving disputes arising out of discovery between the parties. After consulting with the parties, I entered an order in that capacity establishing the "Procedures for Addressing Discovery Disputes"[2] effective on September 11, 2015. Pursuant to those procedures, counsel for the parties notified me on September 25, 2015 of two issues regarding discovery which counsel had not been able to resolve amongst themselves.

The first issue concerned Stryker's refusal to designate a deponent or deponents in response to Orthophoenix's April 6, 2015 Rule 30(b)(6) notice of deposition. The second issue related to Orthophoenix's refusal to produce all electronically stored information ("ESI") in Orthophoenix's possession in response to Stryker's First Set of Document Requests filed on October 21, 2014. As per the Discovery Dispute Procedures, counsel represented that they had met and

---

[1] Hereinafter to be referred to as the "Default Standard for Discovery".

[2] Hereinafter to be referred to as the "Discovery Dispute Procedures".

8223568/

conferred but could not reach agreement. As a result, those disputes were being submitted to the Special Discovery Master for resolution.[3]

A teleconference was held on October 12, 2015 to confirm the parameters of the aforementioned disputes and to establish a schedule according to which counsel would present written argument in support of the positions of their respective clients. Pursuant to that schedule, Orthophoenix filed its opening memorandum of law on October 16, 2015 as to the first issue, to which Stryker replied on October 27. Stryker filed its opening memorandum of law on October 23, 2015 as to the second issue, to which Orthophoenix replied on November 4. On November 16, 2015 a teleconference was initiated by me for purposes of clarifying the positions now being advocated by the parties.

### Contentions of the Parties

In so far as the first issue is concerned, Stryker complains that it should not be required to designate one or more Rule 30(b)(6) witnesses until Orthophoenix produces a comprehensive list of topics which will be the focus of the Rule 30(b)(6) depositions. The Rule 30(b)(6) notice of deposition filed by Orthophoenix identified six topics about which a witness was to be presented to testify at his, her or their depositions. These topics were, according to Stryker, narrowly drawn, thereby likely to require serial and/or redundant depositions in the future.[4] In addition, Stryker contends that the topics for which a witness or

---

[3] To be specific, the issues were described as follows:

1. Stryker Corporation's refusal to testify in response to Topics 1 through 6 of Plaintiff Orthophoenix's April 6, 2015 Notice of Deposition Pursuant to Fed. R. Civ. Pro. 30 (b)(6). . .

2. Orthophoenix's refusal to produce electronically stored information in response to, e.g., Stryker's First Set of Document Requests (Nos. 1-31) served October 21, 2014. . . .

[4] Orthophoenix identified its initial Rule 30(b)(6) topics as follows:

1. How You and/or any distributor and/or intermediary distributes each Accused Instrumentality to end users, physicians, hospitals and/or medical groups.

2. The identity of purchasers and/or users of the Accused Instrumentalities including individuals and entities.

3. The identity, location, custodian(s) and general description of the contents of documents that relate to the past and present design, development, operation, distribution, sales and tracking of use of the Accused Instrumentalities.

4. Your organizational and corporate structure, and all departments, teams, or groups responsible for the business, financial, engineering, or advertising operations of the Accused Instrumentalities.

8223568/

December 11, 2015  
Page 4

Morris James LLP

witnesses are sought are not relevant to the instant controversy or are "unnecessary" because the information sought has been or will be provided in responses to other forms of discovery. Lastly, Stryker posits that there have been no complaints about what has been provided and, to the extent that complaints arise as to the sufficiency of any responses that will be provided, those issues can be resolved thru discussions between counsel for the parties.

Orthophoenix responds that the six topics are clearly relevant and the information sought discoverable.[5] It further contends there is no authority which requires the formulation of a comprehensive list of Rule 30(b)(6) topics before a party to whom the notice is directed must designate an appropriate witness or witnesses to testify on behalf of the corporation. Stryker's objection in this regard is therefore premature since only one Rule 30(b)(6) deposition has been noticed, and there could not have been any abuse or hardship put upon Stryker up to this point in the proceedings. However, Orthophoenix does acknowledge that there could be limitations on the scope and/or number of subsequent Rule 30(b)(6) depositions where the subject matter has been addressed at an earlier deposition taken pursuant to that rule.[6]

The controversy relative to the second issue arises out of Stryker's demand that Orthophoenix produce all relevant information since it acquired the patents at issue,[7] including electronically stored data and/or information, in Orthophoenix's possession, custody and/or control as described in Stryker's request for production. Orthophoenix has already produced copies of documents in its physical possession custody and/or control, and elected to complete its response pursuant to Section 5(b) of the Default Standard for Discovery. That provision allows a party to review ESI and respond to a request for production by using terms to search for

---

5. Your efforts to collect and produce documents in this litigation.

6. Your document retention policies and procedures, including any backup systems (*e.g.*, tapes, hard drives, servers, and e-mail systems).

Docket Entry No. 86, Ex. A.

[5] Orthophoenix does concede, however, that Topics 5 and 6 might be combined to more accurately reflect what is being sought. *See* 11/16/15 Special Master Hrg., at 12:15-13:22.

[6] *See* 11/16/15 Special Master Hrg., at 16:4-17:7.

[7] Stryker clarified at the November teleconference that it in fact seeks documents pre-dating Orthophoenix's formation. *See* 11/16/15 Special Master Hrg., at 35:11-36:19.

8223568/

and retrieve information referencing the key words and/or phrases so chosen. Stryker's arguments in support of that position are straightforward.

First, Stryker cites the fact that Orthophoenix is a "patent assertion entity" having recently been formed on April 25, 2013. It does not sell or manufacture products, provide services, have customers or otherwise engage in activities normally associated with traditional businesses. Its sole purpose is to "license and sue" on the patents at issue here. As a consequence, all the information Orthophoenix possesses is relevant and discoverable. Second, Stryker contends Orthophoenix must show, but has not shown, that the traditional methods of responding to discovery are too burdensome before electing to utilize search terms. Lastly, Orthophoenix has failed, according to Stryker, to show that its search terms are structured to capture relevant information and has refused to use other terms provided by Stryker.

Orthophoenix has an equally uncomplicated response. Simply put, the Default Standard for Discovery controls and allows Orthophoenix to respond as it has elected to do. Stryker cannot otherwise dictate the manner in which Orthophoenix will respond to the discovery in question simply because Stryker wants Orthophoenix to respond differently. Orthophoenix contends that the only way to effectively search for the remaining information not already provided, due to the fact that it is stored and/or contained in multiple electronic mail accounts, is according to the process set forth in the Default Standard for Discovery. Moreover, Orthophoenix contends that the failure to complete this aspect of the discovery process is not due to its lack of diligence but to the lack of cooperation by Stryker and the Defendants in the companion cases. However, I need not consider that contention or what impact it could have on the resolution of this issue.[8]

---

[8] It now appears that there is agreement concerning the search terms to be used if Stryker's motion to compel is denied. As a consequence, I need not address the adequacy of any words or phrases sought to be used by either party and need only decide if Orthophoenix must produce all of the emails and related information in its possession.

8223568/

December 11, 2015  
Page 6

Morris James<sub>LLP</sub>

## DISCUSSION

### Issue No. 1

#### Applicable Law

Several principles of law govern this aspect of the instant dispute.

First, at the time the dispute arose, Rule 26 of the Federal Rules of Civil Procedure provided that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."[9]  "For purposes of discovery, relevancy is broadly construed,"[10] and the party resisting discovery "bears the burden of showing that the information requested is not discoverable."[11]

However, Rule 26 also provides that the court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

---

[9] FED. R. CIV. P. 26(b)(1).  Effective December 1, 2015, Rule 26 was amended to provide:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

However, this change does not alter my analysis regarding this issue.

[10] *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009) (citing *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)).

[11] *SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959, at *1 (E.D. Pa. Mar. 23, 2004) (citing *Joseph v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).

8223568/

    (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (iii) the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.[12]

Second, a corporate entity may be deposed via representative officers testifying on its behalf.[13] The corporation must produce a witness prepared to testify on all topics listed in a valid Rule 30(b)(6) deposition notice, regardless of whether that witness has personal knowledge of the subject matter.[14] Indeed, "when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), [p]roducing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)."[15] In consideration of the corporation's obligation to sufficiently prepare a witness, however, a Rule 30(b)(6) deposition notice "must describe with reasonable particularity the matters for examination."[16] Consequently, the court may quash a notice for failure to specify the areas of inquiry with reasonable particularity because an "overbroad notice subjects the responding party to an impossible task."[17]

Finally, absent a court order or stipulation among the parties, a party must obtain leave of court to take the deposition of a person who has already been deposed.[18] The courts in this Circuit have held the rule equally applicable to Rule 30(b)(6) deponents.[19] Thus, courts in this jurisdiction have held that a party may

---

[12] FED. R. CIV. P. 26(b)(2)(C).

[13] FED. R. CIV. P. 30(b)(6).

[14] *Id.* ("The persons designated *must* testify about information known or reasonably available to the organization." (emphasis added)).

[15] *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000).

[16] FED. R. CIV. P. 30(b)(6).

[17] *Reed v. Nellcor*, 193 F.R.D. 689, 692 (D. Kan. 2000).

[18] FED. R. CIV. P. 30(a)(2)(A)(ii).

[19] *See State Farm v. New Horizon*, 254 F.R.D. 227, 234 (E.D. Pa. 2008); *Sunny Isle Shopping Ctr., Inc. v. Xtra Super Food Ctrs., Inc.*, 2002 WL 32349792, at *1 (D.V.I. July 24, 2002) (citing *Ameristar Jet Charter v. Signal*, 244 F3d 189, 192 (1st Cir. 2001)). The *State Farm* Court thoroughly examined this issue, and, while it acknowledged that "at least one court has held that leave of court is not required when seeking a second Rule 30(b)(6) deposition of

8223568/

properly refuse to designate a witness in response to a notice for a second Rule 30(b)(6) deposition issued without the noticing party having first sought leave of court.[20] "Like most discovery disputes, the availability of a second deposition is left to the discretion of the trial court,"[21] and, even when granting leave for a second deposition, courts frequently limit the scope of that deposition.[22]

### Application of the Law

Simply put, Rule 30(b)(6) does not contain any requirement that all topics known, or which should be known, be noticed together or otherwise announced at the outset of discovery or before any Rule 30(b)(6) depositions are taken. Stryker has not cited any legal basis for this proposition. Stryker relies instead on what it suggests in reasonableness, common sense and/or litigation efficiencies to require Orthophoenix to notice broader, more substantive topics. Unfortunately, that is not enough given the language of the relevant rules of procedure.

Given the absence of support for the position being advocated, I must conclude that Stryker may not refuse to proffer a Rule 30(b)(6) witness because the deposition topics noticed are limited and not comprehensive, and its objection is therefore overruled. However, it is equally clear that unless the opposing party agrees, if Orthophoenix fails to include topics which are known or should have been known at the time of the initial deposition notice, Orthophoenix runs the risk of being barred from conducting additional Rule 30(b)(6) depositions without leave of court or being limited as to the scope of the examination even if leave is so obtained. Stryker is also free to seek relief via Rule 37 of the Federal Rules of

---

a corporate party who has already been deposed," it concluded the better view is that leave is required. *State Farm*, 254 F.R.D. at 234-35. The *State Farm* Court reasoned that "[n]either the text of the rule nor the committee's note exempts Rule 30(b)(6) depositions from the leave requirement in the event of a second deposition of a party already deposed," and "[t]he policy against permitting a second deposition of an already-deposed witness is equally applicable to depositions of individuals and organizations." *Id.* at 235. Indeed, the *State Farm* Court recognized that "[t]aking serial depositions of a single corporation may be as costly and burdensome, if not more so, as serial depositions of an individual." *Id.*

[20] *State Farm*, 254 F.R.D. at 235; *accord Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) ("Because this second Rule 30(b)(6) subpoena was issued to GEAE without leave of the court, it was invalid.").

[21] *Id.* (quotations and citation omitted).

[22] *See, e.g., Christy v. Pa. Turnpike Comm'n*, 160 F.R.D. 51, 53 (E.D. Pa. 1995) (limiting second deposition to "areas not covered in the first deposition"); *Tri-Star Pictures v. Unger*, 171 FRD 94, 101-102 (S.D.N.Y. 1997) (requiring second deposition be "strictly confined to new claims").

8223568/

December 11, 2015　　　　　　　　　　　　　　　　　　　Morris James LLP
Page 9

Civil Procedure should Orthophoenix's conduct in noticing subsequent Rule 30(b)(6) depositions warrant such relief.

To the extent Stryker argues that the information sought does not seem relevant, necessary or urgent, those arguments are not persuasive. While it is well established that courts have discretion in managing discovery, there is no basis in the instant record to direct a different mechanism or limit the efforts of Orthophoenix to engage in discovery as Stryker insists, based upon the subject matter or the type of testimony sought. Again, as noted above, parties may obtain discovery of any mater relevant to a party's claim or defense, including the existence, condition, and location of documents and tangible things. Evidence is relevant where "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."[23]

This is a patent infringement case. Topics 1 thru 4 clearly relate to such a cause of action in that they seek information as to the sale, distribution, marketing and use of the product which is allegedly involved in the offending conduct. Topics 5 and 6 are of equal significance to the litigation in that the information sought represents an attempt to determine and/or confirm what efforts were and could have been made to obtain information critical the cause of action being advanced in light of Stryker's document retention and storage practices/procedures. One can only conclude as a consequence that the discovery sought is relevant to the allegations at the center of the litigation and appears necessary to the prosecution of the case.[24]

To the extent Stryker contends that the information sought has already been or will be produced thru other discovery vehicles and that a Rule 30(b)(6) deposition would be unnecessary as a result, that argument is unsupported by any law, rule of procedure or judicial interpretation of either. There is no legal authority for the proposition that a party has the option of choosing how its adversary responds to discovery other than within the confines of the rules of

---

[23] FED. R. EVID. 401.

[24] To the extent Stryker cites authority from other jurisdictions for the proposition that document retention policies and document production efforts are not relevant where there has been no claim of discovery deficiencies, I find those cases unpersuasive and inconsistent with case law in this federal Circuit. *See, e.g., Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2008 WL 4693374, at *3 (W.D. Pa. Oct. 23, 2008) ("It is commonplace in litigation to inquire of a corporate defendant the steps it took to find and produce documents relating to the litigation, as well as the corporation's electronic document storage and retrieval systems, in order to ensure that discovery was diligently completed.").

8223568/

procedure and the case law interpreting the same.[25] Nor is there any support for the proposition that a Rule 30(b)(6) deposition cannot proceed unless there have been complaints from the party noticing the deposition about the sufficiency of discovery that has already been provided or there have been efforts to address any such complaints informally with opposing counsel.[26] Any way it is viewed, there can little doubt that the discovery sought here, as the court in *Dongguk University* recognized, may be useful to the conduct of this litigation and must be provided.[27]

### Conclusion

Based upon the foregoing, the Rule 30(b)(6) deposition noticed by Orthophoenix shall go forward as to the topics identified within thirty (30) days unless Orthophoenix chooses to revise the notice. Stryker shall have fifteen (15) days to designate the individuals who will testify and the subjects upon which they will give testimony. No comprehensive list of Rule 30(b)(6) topics is required as a precondition to initiating that discovery. Stryker's concerns in that regard are premature.

The topics noticed are discoverable pursuant to Rule 26 of the Federal Rules of Civil Procedure. Orthophoenix is not required to rely upon responses to other forms of discovery or engage in discussion with opposing counsel prior to engaging in Rule 30(b)(6) depositions. If there is an effort by Orthophoenix or any other party to revisit areas previously reviewed or those which could have been previously reviewed pursuant to that rule, application for relief can be filed with me pursuant to the Discovery Dispute Procedures and/or Rule 37 of the Federal Rules of Civil Procedure.

### Issue No. 2

#### Applicable Law

---

[25] The *SmithKline Beecham Corp.* and *Dongguk University* opinions cited by Stryker in support of its position are not persuasive, and, moreover, are distinguishable on their facts because here the noticed topics do not require testimony that would be difficult for a non-attorney witness to provide.

[26] It should be noted that Orthophoenix contests Stryker's assertion that it has not identified any discovery deficiencies. *See* 11/16/15 Special Master Hrg., at 30:22-31:8.

[27] *See Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) ("When information has already been provided in other forms, a witness may still be useful to testify as to . . . information which the defendant knows but is not apparent on the face of the documents.").

8223568/

December 11, 2015
Page 11

Morris James LLP

"Under the Federal Rules of Civil Procedure [and Third Circuit] jurisprudence, district courts have broad discretion to manage discovery."[28] Indeed, "Rule 26 was amended in 1993 to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery in light of the information explosion of recent decades [that] has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression."[29] "The emergence of e-discovery only has intensified the need for judicial scrutiny of the scope of discovery."[30]

In addition, in the District of Delaware, parties before the Court are encouraged to cooperate as far as practicable in matters relating to the conduct of discovery. To be specific, where the Court has not otherwise decreed or the parties have not reached a different agreement, the Default Standard for Discovery provides:

> 1. General Provisions
>     a. Cooperation. Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement. . . .

In this case, as previously noted, the Court, on May 14, 2015, entered a case scheduling order incorporating the aforementioned default standard which is clearly applicable to the disposition of the second issue. It remains in effect and in relevant part, states:

> 5. Specific E-Discovery Issues.
>     . . .
>     b. Search methodology. If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting

---

[28] *Ethypharm S.A. France v. Abbott Labs.*, 271 F.R.D. 82, 85 (D. Del. 2010) (quotations and citation omitted).

[29] *City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5055241, at *2 (D.N.J. Aug. 21, 2015) (quotations and citation omitted).

[30] *Id.*

8223568/

> party. Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with the electronic search. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b) and (ii) emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a).

There is no other language in the Default Standard for Discovery or the case scheduling order which modifies, conditions or acts as a precursor to the election to so respond to discovery directed to a party involving ESI.

**Application of the Law**

Reduced to its essence, this dispute is limited to whether, as Stryker contends, Orthophoenix must produce all discoverable information, including that which is electronically stored, in its possession, custody and/or control regardless of how it is maintained, since Orthophoenix's creation. Orthophoenix argues that it has the option of using search terms as contemplated by the Default Standard for Discovery incorporated into the case scheduling order governing the proceedings in this case. As noted above, there is no longer any controversy concerning the number, identification and/or scope of the search terms if the dispute is resolved in favor of Orthophoenix.[31]

Stryker's view is premised upon the fact that Orthophoenix is a patent assertion entity and has no other function than to "license or sue" on patents. Because it was created shortly before instituting the instant litigation, Stryker argues that since the information sought is limited and all of it relates to this litigation, there would not be any hardship to Orthophoenix if it is required to respond in this fashion. Orthophoenix obviously disagrees and continues to rely on the Default Standard for Discovery in refusing to provide the information sought.

Having reviewed and considered the arguments advanced in this regard, I must conclude that Orthophoenix is not required to do more once it elected to use search terms to locate discoverable ESI. There is no language outside of Section

---

[31] *See supra* note 6.

8223568/

5(b) of the Default Standard for Discovery which modifies or conditions the election to produce ESI. Nor has Stryker been able to point to any authority which mandates a different view. Stated differently, the Default Standard for Discovery does not limit a responding party's ability to elect to use search terms based on the size or function of that entity. Nor does it require a responding party show that it is too burdensome to use traditional document collection methods before electing to use search terms. Rather, the only limitation on a responding party's election is that it must disclose its search terms to the requesting party.

Stryker's concern about the adequacy of the search terms chosen by Orthophoenix is again premature and/or speculative at this point in time. If there is a rational basis upon which to assert that the search terms are deficient after being used or implemented, Stryker can renew its application for relief. However, the process must first be given an opportunity to work as contemplated by the Default Standard for Discovery.

**Conclusion**

Orthophoenix is entitled to respond to Stryker's request for production pursuant to Section 5(b) of the Default Standard for Discovery. Stryker has failed to provide any basis to require a different result. Since the parties now agree on the search terms to be used and Orthophoenix has started searching its ESI using those terms, Orthophoenix shall be allowed thirty (30) days from the date of this decision to complete that process and provide Stryker with the results. If there are any difficulties complying with that schedule, it should be brought to my attention if the parties are unable to resolve the same.

**IT IS SO ORDERED.**[32]

/s/ Charles H. Toliver
Charles H. Toliver, IV (I.D. 633)
Special Discovery Master

---

[32] These decisions are being rendered pursuant to Para. 3 of the "Order Appointing Special Master" dated May 6, 2015. Any appeal shall be taken pursuant to Para. 6 of that Order. *See* Docket Entry No. 49.

8223568/