# EXHIBIT 2



1526 Gilpin Avenue
Wilmington, Delaware 19806
United States of America
Tel: 302-449-9010
Fax: 302-353-4251
www.devlinlawfirm.com

May 12, 2022

**VIA ELECTRONIC FILING**

The Honorable Sherry R. Fallon
U.S. District Court for the District of Delaware

Re: *PerDiemCo LLC v. CalAmp Corp*., C.A. No. 20-1397-VAC-SRF

Dear Judge Fallon:

      This is a patent infringement action in which PerDiemCo, LLC ("PerDiem") asserts eight patents directed to vehicle and asset tracking services against CalAmp Corporation ("CalAmp"). This action involves patent claims directed to devices and patent claims directed to methods.
      The patented technology at issue relates to improvements in (1) what is known as Electronic Logging Devices ("ELDs") and related services which are used to log and track hours of service for drivers of ELD-equipped vehicles, and (2) geofencing services used to manage and track vehicles and assets (which includes equipment, warehouse items, and shipped packages).
      CalAmp sells various devices that are accused of infringement, but its core business relates to the operation of a software platform that interfaces with GPS-enabled devices that report location information. This platform is referred to as the CalAmp Telematics Cloud ("CTC") and is used by each of the accused products and services. The CTC platform records the reported locations, compares those locations to geofencing zones established for those devices, evaluates other information provided, determines whether any pre-set conditions for an alert or report are met, generates any pre-set alerts or reports, and circulates those alerts or reports to predetermined individuals or groups.
      In use, the CTC is covered by PerDiem's patented methods, and the accused products and services infringe at the very least because they use the CTC. Central to the infringement analysis are what conditions are set, how those conditions are established, and the division of rights (referred to in the patent claims as "privileges") to set those conditions and identify who is to receive the reports or alerts generated by the system. PerDiem's patent claims define the roles to be played by what is referred in the patents to as a "first administrator" or "system administrator" (a role played by CalAmp) and the roles CalAmp assigns to its customer, referred to a "second administrator," "group administrator," or "driver administrator" (e.g., employees of CalAmp's customers). For the ELD patent claims, the focus of the infringement analysis is on the structure and function of the accused devices.
      The discovery sought by PerDiem relates to the core functionality of the accused products and services and the sales of those products and services. Those disclosures are required by Paragraph 7(b) of the October 27, 2021 Scheduling Order entered in this action. [D.I. 16]. To date, CalAmp has failed to produce sales information mandated by the Scheduling Order and, contrary to the requirements of that Order, has largely limited its document production to publicly available information taken from CalAmp's website or user manuals

**DEVLIN LAW FIRM**
May 12, 2022
Page 2 of 5

provided to its customers. CalAmp has not produced its (i) source code, (ii) software description documents; (iii) server-side documentation (such as internal operator's guides, manuals, and training materials for the use of its server-side platform) or (iv) product circuit schematics for the accused devices. More specifically, and as laid out in PerDiem's March 28, 2022 letter to this Court, PerDiem seeks the following (all but the last of which was due months ago under Paragraph 7(b) of the Scheduling Order):

    1.    Financial Information. Sales information for the accused products and services. Importantly, many of PerDiem's asserted claims are method claims performed by CalAmp in the United States even though the devices that are being monitored, managed, or tracked may be located outside the U.S. CalAmp's sale information should include devices that are monitored, managed, or tracked by CalAmp in the United States.

    2.    Core Technical Documents.
    a.    Server-side software description documents – These are documents that describe the operation, functionality, and interoperation of the server-side software that comprises each of the accused services and the CTC cloud platform on which those services are implemented.
    b.    Server-side manuals and training materials – These documents are for CalAmp employees/agents to inform them how to operate the CTC from the server-side to, for example, create customer accounts, set rights and privileges, set customer-available features, configure the CTC or portions thereof on behalf of a customer, etc.
    c.    Source code – PerDiem seeks CalAmp's server-side source code for the accused services and the CTC on which those services are implemented.
    d.    Circuit schematics of customer hardware devices – PerDiem seeks circuit schematics for all ELDs sold, leased, rented, or otherwise disposed of in the US during the damages period. This request includes any technical submissions made to the FCC.

    3.    Accused Service Sample. As a "production" of CalAmp's accused services, PerDiem seeks access to a fully-functional "dummy" account for each of CalAmp's accused services without payment.

Procedural Background. PerDiem filed its Complaint with this Court on October 16, 2020. [D.I. 1]. PerDiem's complaint identified the infringing CalAmp products of which PerDiem was then aware. PerDiem subsequently learned that CalAmp had revised its entire product offering, apparently discontinuing the products and services identified in PerDiem's Complaint but introducing several new products. It is PerDiem's contention that each of these new products, like those identified in PerDiem's complaint, infringe PerDiem's patents.

Accordingly, on November 19, 2021, PerDiem served a Disclosure that identified all of the accused products – both those identified in PerDiem's Complaint and those PerDiem subsequently discovered in accordance with Paragraph 7(a) of the Scheduling Order.[1] Having made the disclosure required by Paragraph 7(a), it fell to CalAmp to:

---

[1] The date by which PerDiem was to make this disclosure (October 14) had already passed on the date the Scheduling Order issued (October 27). PerDiem made its disclosure on November 19, 2021.

2

**DEVLIN LAW FIRM**
May 12, 2022
Page 3 of 5

> Produce core technical documents related to the accused product(s), sufficient to show how the accused product(s) work(s), including but not limited to non-publicly available operation manuals, product literature, schematics and specifications. Each Defendant shall also produce sales figures for the accused products.

Scheduling Order, paragraph 7(b). Those CalAmp disclosures were due no later than December 17, 2021. As noted above, CalAmp has improperly limited its disclosures – refusing to produce sales information for any of the accused products, limiting its technical disclosures to the now obsolete products identified in PerDiem's complaint, failing to provide access to any source code materials, and producing little more than the web site snap shots and materials taken from manuals CalAmp supplies to its customers. PerDiem's efforts to obtain even the mandatory disclosures proved unsuccessful, with CalAmp insisting that (i) PerDiem's identification should not have included products or services not identified in the Complaint, and (ii) PerDiem's subsequent preliminary infringement claim charts are inadequate. Neither contention has merit.

     As to CalAmp's first point, the Federal Rules of Civil Procedure are based on the concept of notice pleading. Not only did PerDiem's Complaint identify CalAmp products and services PerDiem was accusing of infringement, that Complaint included detailed claim infringement claim charts for those products and services. PerDiem was not required to identify every infringing product and clearly could not identify products of which it was unaware, especially where those products had not yet been commercialized. That reality is reflected in Paragraph 7(a) of the Scheduling Order to the extent that it required the Plaintiff to identify the "accused products." Limiting that disclosure to only the specific products identified in the Complaint would make no sense – those products have already been identified and further identification would serve no purpose. Indeed, limiting an action to only those products identified in the complaint would result in wasteful and duplicative litigation, with multiple suits being required as defendants modify their product offering.

     Turning to CalAmp's second point, CalAmp's argument puts the horse before the cart and imposes the very difficulties CalAmp seeks to impose here. Paragraph 7(c) of the October 2021 Scheduling Order provided PerDiem with two months *after receiving CalAmp's mandatory Paragraph 7(b) disclosures* to generate its initial claim charts. CalAmp seeks to impose a requirement that PerDiem present initial claim charts that meet CalAmp's approval *before* it makes its Paragraph 7(b) disclosures. That approach reverses the order of disclosure established by the Court's Scheduling Order and ties PerDiem's hands – PerDiem was to be provided CalAmp's "core technical" documents months before the initial claim charts were due. Presumably, that disclosure would help inform PerDiem's analysis.

     In any event, conditioning CalAmp's disclosure requirements on CalAmp's approval of PerDiem's infringement claim charts would present a no-win situation for patent owners It is hard to imagine an infringement defendant ever agreeing that the patent owner's infringement claim charts are sufficient. Accused infringers should not be given veto authority and that is not the structure adopted by the Scheduling Order in this case. Not only does PerDiem disagree with CalAmp's criticisms of the initial claim charts presented, CalAmp cannot be permitted to

3

**DEVLIN LAW FIRM**

May 12, 2022
Page 4 of 5

withhold the required disclosures pending its approval of PerDiem's claim charts.[2]

      Nor is PerDiem's Request No. 81, which seeks a product sample, in any way improper. *See* Exhibit B (excerpt). Requests for product samples are not unusual in patent litigation. Here, CalAmp is believed to be tracking hundreds of thousands of devices for thousands of customers. PerDiem seeks to further its understanding of how the accused CalAmp products and services operate by gaining access to the CalAmp CTC servers the same way CalAmp's customer access and utilize the services offered by the CTC servers. With that access, PerDiem and its technical expert can assess and analyze how accounts are created, how users and groups are created within that system, as well as how alerts are generated and controlled. These functions are at the heart of the asserted patent claims and would represent very little burden to CalAmp who supports thousands of groups and users.

      Finally, and without prior consultation with PerDiem, CalAmp filed its own discovery letter on March 29, 2022. [D.I. 39]. Through that letter, CalAmp formalized its request that no discovery be required until CalAmp is satisfied with PerDiem's initial infringement contentions. CalAmp goes even further and now asks this Court to stay all discovery and the *Markman* claim construction process pending CalAmp's approval of PerDiem's infringement disclosures. As noted above, however, CalAmp was obligated to make the disclosures sought by PerDiem ***before*** those initial contentions were even due. PerDiem has identified the accused CalAmp products and services and has provided infringement contentions. If those contentions are so weak, as CalAmp asserts, then CalAmp should have no problem explaining why it does not infringe in Response to PerDiem's interrogatory number 10. *See* Exhibit C (excerpt). CalAmp has not done so. That disclosure would meaningfully advance this case and streamline what promises to be a needlessly burdensome *Markman* claim construction process (CalAmp has identified approximately 60 "disputed" claim terms to PerDiem and argued that terms like "boundary," "first," "second," "third," "mobile," and "proximity" are indefinite).

      PerDiem respectfully asks this Court to reject CalAmp's efforts to stonewall and delay this case by compelling CalAmp to make the very basic disclosures sought by PerDiem. The irony is that CalAmp filed a motion to dismiss this case for alleged lack of prosecution by PerDiem. But it is CalAmp that has steadfastly refused to produce court-ordered discovery that would facilitate progress and development of the case. The parties are in the midst of the Markman process and CalAmp has yet to disclose even the basic information required under Paragraph 7(b) of the Scheduling Order.

                                                  Respectfully submitted,

                                                  */s/ Peter A. Mazur*
                                                  Peter A. Mazur (Bar No. 6732)

---

[2] CalAmp's sales and other information is also requested by PerDiem RFPs 11-12 and 45. CalAmp's technical documents and source code are also requested by RFPs 1 and 4. *See* Exhibit A (excerpts).

**DEVLIN LAW FIRM**

May 12, 2022
Page 5 of 5

cc: Clerk of the Court (via CM/ECF, w/encl.)
    All Counsel of Record (via CM/ECF, w/encl.)