# EXHIBIT C



*Legal Counsel.*

DINSMORE & SHOHL LLP
255 E. Fifth St., Suite 1900
Cincinnati, OH 45202
www.dinsmore.com

Oleg Khariton
(513) 977-8246 (direct) · (513) 977-8141 (fax)
oleg.khariton@dinsmore.com

February 3, 2026

**VIA EMAIL**
Raymond R. Ricordati
Marshall, Gerstein & Borun LLP
233 South Wacker Drive, Suite 6300
Chicago, IL 60606
rricordati@marshallip.com

> *Re: Seakeeper Inc. v. Dometic Corporation* **(D. Del. Case No. 1:25-cv-00484-JCB) – Deficiencies in Seakeeper's Responses and Objections to Dometic's First Set of Requests for Production**

Ray:

We write to bring to your attention numerous deficiencies in Seakeeper's responses to Dometic's First Set of Requests for Production ("RFPs"). Seakeeper must promptly revise its responses to Dometic's RFPs and confirm that it will produce the requested documents. Please also note that the deficiencies identified below are not exhaustive, and that we reserve the right to identify additional deficiencies in Seakeeper's responses at a later date.

**Seakeeper's Agreement to Produce Only "Non-Cumulative" and/or "Representative" Documents**: In nearly all of its responses to Dometic's RFPs, Seakeeper agrees to produce only "non-cumulative" documents. In several other responses, it further limits its anticipated production to "representative" documents. However, except for RFP Nos. 5, 20, and 26 (which specifically request materials "sufficient to show" certain facts), Dometic's RFPs are not so limited. To be sure, the Federal Rules do not obligate Seakeeper to conduct a search for responsive documents that would exceed what is reasonable and proportional to the needs of this case. However, to the extent that, as a result of its search, Seakeeper locates documents that are responsive to Dometic's RFPs, that are not privileged, and that are otherwise discoverable, it would be improper for Seakeeper to unilaterally withhold such relevant, responsive, and non-privileged documents from production based on a subjective determination that these documents are sufficiently "cumulative" of other documents already produced. Nor would it be appropriate for Seakeeper to withhold such relevant, responsive, and non-privileged documents on the basis that other documents produced by Seakeeper are sufficiently "representative" of the requested materials. Please confirm that Seakeeper does not intend to withhold documents on either of these grounds (except in response to RFP Nos. 5, 20, and 26).

February 3, 2026
Page 2

**RFP No. 2** requests "non-privileged Documents and things not produced in response to [RFP No. 1] that relate to the preparation, filing, prosecution, or issuance of any of the Patents-in-Suit, Related Patents, or Related Patent Applications."  Seakeeper's response agrees to produce only "public file histories of the Seakeeper Patent Applications."[1]  This is identical to Seakeeper's response to RFP No. 1, even though RFP No. 2 expressly seeks materials "not produced in response to" RFP No. 1.  Seakeeper's response provides no explanation specific to RFP No. 2 why the full scope of the requested materials should not be produced.

**RFP No. 4** requests materials related to "any actual or potential reexamination, reissue, or interference proceeding of the Patents-in-Suit or Related Patents." Seakeeper states that it will produce certain materials concerning "the conception and reduction to practice of the inventions claimed in the Patents-in-Suit and maintenance fee payments for the Patents-in-Suit."  This statement is not responsive to RFP No. 4 and may have been an inadvertent duplication of Seakeeper's response to RFP No. 3. Moreover, Seakeeper's response provides no explanation specific to this RFP why the full scope of the requested materials should not be produced.

**RFP Nos. 5 and 6** request, respectively, materials "sufficient to show any past or present ownership interest in the Patents-in-Suit, Related Patents, or Related Patent Applications" (RFP No. 5) and materials concerning "any contemplated transfer of ownership" in the same patents and patent applications (RFP No. 6). Seakeeper's responses to both RFPs agree to produce only "copies of recorded assignments of the Patents-in-Suit."  These responses are far narrower than the scope of discoverable materials requested.  Among other things, they omit all of the following: materials sufficient to show unrecorded past or ownership interests in the Patents-in-Suit (RFP No. 5); materials sufficient to show either recorded or unrecorded ownership interests in other Seakeeper Patent Applications (RFP No. 5); and, more generally, documents related to any contemplated transfers of ownership in these patents and applications other than the copies of recorded assignments of the Patents-in-Suit (RFP No. 6). Seakeeper's responses provide no explanation specific to these RFPs why the full scope of the requested materials should not be produced.

**RFP Nos. 7, 9, and 13** request materials concerning, respectively, "the research, conception, design, development, or any actual or constructive reduction to practice" of the alleged inventions claimed in the Patents-in-Suit, Related Patents, or Related Patent Applications (RFP No. 7); "Seakeeper's efforts to develop, design, test, commercialize, manufacture, or have manufactured Flywheel Cooling technology" (RFP No. 9); and "demonstrations, testing, evaluations, or safety studies" related to Flywheel Cooling technology, regardless of who conducted them (RFP No. 13). Seakeeper's responses to these RFPs agree to produce only "documents relating to the conception and reduction to practice of the inventions claimed in the

---

[1] Seakeeper generally objects to Dometic's definition of "Related Patents" and "Related Patent Applications" as overbroad.  Seakeeper states that, "[w]ith respect to requests directed to 'Related Patents' and 'Related Applications,' Seakeeper's responses are limited to those patent applications that claim priority, either directly or indirectly, to U.S. Patent Application Serial No. 11/330896 filed January 12, 2006 (issued as U.S. Patent No. 7,546,782), as well as any patents that may have issued from those applications." These patents and patent applications are collectively referred to by Seakeeper as the "Seakeeper Patent Applications."  We note that, even despite this ostensibly narrower definition, Seakeeper improperly limits many of its RFP responses to just the Patents-in-Suit and refuses to produce relevant documents concerning other "Seakeeper Patent Applications" (as defined by Seakeeper).

February 3, 2026
Page 3

Patents-in-Suit." These responses are far narrower than the scope of discoverable materials requested.  Among other things, they omit all of the following: materials concerning the <u>research</u>, <u>design</u>, and <u>development</u> of the inventions claimed in the Patents-in-Suit and other Seakeeper Patent Applications (RFP No. 7); materials that are unrelated to the conception or reduction to practice of the specific inventions claimed in the Patents-in-Suit but that nevertheless concern Seakeeper's efforts to develop, design, test, commercialize, manufacture, or have manufactured Flywheel Cooling technology  (RFP No. 9); and materials concerning either Seakeeper's or third parties' testing or evaluations of Flywheel Cooling technology <u>other than</u> materials specifically related to the conception or reduction to practice of the inventions claimed in the Patents-in-Suit (RFP No. 13). Seakeeper's responses provide no explanation specific to these RFPs why the full scope of the requested materials should not be produced.

**RFP Nos. 8 and 14** request materials concerning, respectively, "the first disclosure, first public use, first demonstration, first sale, or first offer for sale of the subject matter disclosed and claimed in the Patents-in-Suit, Related Patents, or Related Patent Applications" (RFP No. 8) and "Seakeeper's knowledge or awareness of, or participation in, meetings, presentations, or conferences conducted by any person and that relate to Flywheel Cooling technology" (RFP No. 14). Seakeeper's responses to both RFPs agree to produce "documents establishing the first press release, first public use of and/or first sale of a product embodying an invention recited in the Patents-in-Suit."  These responses are far narrower than the scope of discoverable materials requested.  Among other things, they omit materials concerning the <u>first demonstration</u> or <u>first offer for sale</u> of any subject matter disclosed in any of the Patents-in-Suit and other Seakeeper Patent Applications (RFP No. 8) and Seakeeper's knowledge or awareness of, or participation in, conferences that relate to Flywheel Cooling technology, <u>unless</u> those also involved the first press release, first public use of, and/or first sale of a product embodying a claim-in-suit (RFP No 14). Seakeeper's responses provide no explanation specific to these RFPs why the full scope of the requested materials should not be produced.

**RFP No. 34** similarly requests materials concerning "any attempt by Seakeeper to commercialize or license any invention claimed in any of the Patents-in-Suit." Seakeeper states that it will produce only "documents relating to the first public disclosure of a product embodying inventions claimed in the Asserted Patents." This statement is not responsive to RFP No. 34 and clearly falls short of an agreement to produce the requested document categories. Nor does Seakeeper's response provide any explanation specific to this RFP why the full scope of the requested materials should not be produced.

**RFP Nos. 10 and 11** request, respectively, materials that "constitute or refer to Prior Art" (RFP No. 10) and certain publications relating to Flywheel Cooling technology, whether or not Seakeeper agrees that they are Prior Art (RFP No. 11).  Seakeeper's responses to both RFPs agree to produce only "copies of prior art to the Patents-in-Suit." This is far narrower than the scope of discoverable materials requested and omits, *inter alia*, materials that <u>"refer to"</u> Prior Art (RFP No. 10) and <u>other</u> relevant publications regardless of whether Seakeeper considers them "Prior Art" (RFP No. 11). Seakeeper's responses provide no explanation specific to these RFPs why the full scope of the requested materials should not be produced.

**RFP 12** similarly requests materials that "constitute or refer to the results of any search for Prior Art concerning any of the Patents-in-Suit, Related Patents, or Related Patent Applications."

February 3, 2026
Page 4

Seakeeper's response agrees to provide "documents relating to non-confidential copies of any prior art search results for the Patents-in-Suit."  To the extent this response is limited to "copies of any prior art search results for the Patents-in-Suit," it is far narrower than the scope of discoverable materials requested because it omits, *inter alia*, materials that "refer to" such prior art search results. Seakeeper's response provides no explanation specific to this RFP why the full scope of the requested materials should not be produced.

Further, the meaning of "non-confidential" in Seakeeper's response is not clear. Confidentiality is not a basis to withhold production of responsive, discoverable, non-privileged documents given that the Court has entered a Protective Order, D.I. 151, and the parties had agreed to disclose confidential information pursuant to D. Del. L.R. 26.2. even prior to the Court's entry of the Protective Order. *See* D.I. 131. Therefore, Seakeeper may not withhold responsive, discoverable documents on the basis of confidentiality.

**RFP No. 15** requests materials concerning "grant proposals by any entity or person, grant awards by any entity or person, or solicitations for comment by any entity or person, any of which relate to Flywheel Cooling technology." Seakeeper's response merely states that it "has not submitted any grant proposals nor received any grants." However, this response is far narrower than the scope of discoverable materials requested and omits, *inter alia*, materials concerning grant proposals by others or grant awards to others relating to Flywheel Cooling technology. Seakeeper's response provides no explanation specific to this RFP why the full scope of the requested materials should not be produced.

**RFP Nos. 16 and 17** request, respectively, materials concerning "any actual or proposed license, assignment, settlement agreement, hold harmless agreement, indemnification agreement, grant of rights, or other agreement related to the Patents-in-Suit, Related Patents, or Related Patent Applications" (RFP No. 16) and materials concerning "any intellectual property license relating to marine gyroscopic stabilizers or Flywheel Cooling technology" (RFP No. 17). Seakeeper's responses to both RFPs state only that it "has not licensed or offered to license the Patents-in-Suit." These responses are far narrower than the scope of discoverable materials requested.  Among other things, they omit materials concerning "any actual or proposed . . . assignment, settlement agreement, hold harmless agreement, indemnification agreement, grant of rights, or other agreement" related to the Seakeeper Patent Applications (RFP No. 16) and materials concerning "any intellectual property license relating to marine gyroscopic stabilizers or Flywheel Cooling technology" even if not related specifically to the Patents-in-Suit or Seakeeper (RFP No. 17). Seakeeper's responses provide no explanation specific to these RFPs why the full scope of the requested materials should not be produced.

**RFP No. 20** requests documents "sufficient to disclose the sales, pricing, units sold, net and gross revenues, profits, losses, and royalties (broken out by year and product model) for any products sold or offered for sale by Seakeeper (or by any licensee of the Patents-in-Suit) that Seakeeper alleges embody or practice any claim of the Patents-in-Suit." Seakeeper's response agrees to produce documents "sufficient to show information on sales, pricing, units sold, net and

February 3, 2026
Page 5

gross revenues, profits, losses and royalties (if any) by product by year for the Asserted Patents."[2] It is unclear what Seakeeper is agreeing to produce. Is it agreeing to produce documents sufficient to fully show "sales, pricing, units sold, net and gross revenues, profits, losses and royalties (if any) by product by year"? Or is it only agreeing to produce documents sufficient to show some unspecified "information" about these subjects of discovery? Further, it is not clear whether Seakeeper has agreed to produce responsive information for all products that it contends embody or practice any claim of the Patents-in-Suit. Please clarify.

**RFP Nos. 21, 22, and 23** request materials concerning, respectively, "(a) any infringement of any of the Patents-in-Suit Suit or Related Patents by any person and/or (b) any consideration or decision by Seakeeper whether to sue or pursue other steps to enforce the Patents-in-Suit or Related Patents against such person for any reason(s)" (RFP No. 21); "any Communication or notice by or for Seakeeper to any person alleging infringement of any of the Patents-in-Suit or Related Patents, threatening any enforcement of any of the Patents-in-Suit or Related Patents, or otherwise relating to alleged or possible infringement of any of the Patents-in-Suit or Related Patents" (RFP No. 22); and "any steps or actions taken by Seakeeper to enforce the Patents-in-Suit or Related Patents, including actual or threatened litigation in the United States, actual or threatened litigation in any foreign country, or any arbitration or mediation proceeding" (RFP No. 23). Seakeeper's responses to these RFPs agree to produce only "documents alleging infringement of the Patents-in-Suit." These responses are far narrower than the scope of discoverable materials requested. Among other things, they omit any materials that stop short of alleging infringement of any Patent-in-Suit but that nevertheless relate to Seakeeper's actual or contemplated enforcement of the Patents-in-Suit and other Seakeeper Patent Applications. Seakeeper's responses provide no explanation specific to these RFPs why the full scope of the requested materials should not be produced.

**RFP No. 24** requests materials "referring or relating to Seakeeper's knowledge of the Accused Product, including any Documents and things disclosing or relating to (a) how and when Seakeeper learned about such product and (b) how and when Seakeeper learned that such product allegedly infringed or practiced any of the claims of the Patents-in-Suit." Seakeeper's response agrees to produce only "documents relating to the operation of the Accused Products." This response is far narrower than the scope of discoverable materials requested. Among other things, it omits documents concerning "how and when Seakeeper learned about" the Accused Product and "how and when Seakeeper learned that such product allegedly infringed or practiced any of the claims of the Patents-in-Suit." Seakeeper's response provides no explanation specific to this RFP why the full scope of the requested materials should not be produced.

**RFP No. 26** requests materials "sufficient to disclose the organizational structure of Seakeeper with respect to the development, invention, prosecution, engineering, safety, production, marketing, advertising, litigation, licensing, sales, and regulation (including interactions with regulatory entities) of marine stabilization products by Seakeeper, including employee or contractor or consultant names, titles, departments, positions, or relationships with Seakeeper in Seakeeper's organizational structure." Seakeeper's response agrees to produce only documents sufficient to show "the organization of Seakeeper's management team relating to the

---

[2] The term "Asserted Patents," which appears in several of Seakeeper's responses to Dometic's RFPs, is not defined by Seakeeper. We assume it has the same meaning as the term "Patents-in-Suit" (as defined in Dometic's RFPs), but please let us know if you intended it to have another meaning.

February 3, 2026
Page 6

Patents-in-Suit." This response is far narrower than the scope of discoverable materials requested and omits, *inter alia*, documents sufficient to disclose Seakeeper's organizational structure beyond its management team or any further personnel details. Seakeeper's response provides no explanation specific to this RFP why the full scope of the requested materials should not be produced.

**RFP No. 27** requests materials "referring to Dometic and related to marine gyroscopic stabilizers or Flywheel Cooling technology." Seakeeper's response agrees to produce only "documents relating to the sales, marketing and/or operation of the Accused Products." This response is far narrower than the scope of discoverable materials requested because it omits, *inter alia*, documents that refer to Dometic but that do not specifically relate to "the sales, marketing, and/or operation of" the Accused Product and that instead relate more generally to marine gyroscopic stabilizers and/or Flywheel Cooling technology. Seakeeper's response provides no explanation specific to this RFP why the full scope of the requested materials should not be produced.

**RFP No. 29** requests materials concerning "statements by the inventors of the Patents-in-Suit regarding the Patents-in-Suit, Related Patents, or Related Patent Applications." Seakeeper's response agrees to produce only "documents relating to published articles from the inventors relating to the technologies in the Asserted Patents." This response is far narrower than the scope of discoverable materials requested and omits, *inter alia*, materials concerning statements by the inventors other than published articles or their statements regarding other Seakeeper Patent Applications. Seakeeper's response provides no explanation specific to this RFP why the full scope of the requested materials should not be produced.

**RFP Nos. 30 and 39** request, respectively, materials "constituting or relating to any comparison of the Accused Product, or of any other device, process, method, use, manufacture, or system, to any claim, description, or invention in the Patents-in-Suit" (RFP No. 30) and materials "relating to any evaluations of third-party products that compete with Seakeeper's products in the Product Market" (RFP No. 39). Seakeeper's responses to these RFPs agree to produce only documents "reflecting a comparison of the Accused Product to any claimed invention recited in the Patents-in-Suit" (RFP No. 30) and documents "sufficient to show Seakeeper's comparisons of Dometic's gyroscopic stabilizer products to Seakeeper products embodying an invention claimed in the Patents-in-Suit" (RFP No. 39). These responses are far narrower than the scope of discoverable materials requested. Among other things, they omit all of the following: materials that do not themselves "reflect" or "show" comparisons of the Accused Product to the claimed inventions but that discuss or otherwise relate to such comparisons (RFP No. 30); materials that reflect or otherwise relate to comparisons of other products to the claimed inventions (RFP No. 30); and materials that more broadly concern evaluations of competing third-party products, including those that do not involve any analysis of possible patent infringement (RFP No. 39). Seakeeper's responses provide no explanation specific to these RFPs why the full scope of the requested materials should not be produced.

**RFP Nos. 37, 40, and 41** request, respectively, documents "relating to or describing the Product Market, including its suppliers, original equipment manufacturers, purchasers, and purchasing cooperatives, including Independent Boat Builders, Inc." (RFP No. 37); documents "relating to any research or analysis of the Product Market" (RFP No. 40); and documents "relating

February 3, 2026
Page 7

to Seakeeper's Dometic's, or any third party's market share (past, current, or projected) in the Product Market" (RFP No. 41). Seakeeper's responses to all three RFPs agree to produce only "representative documents sufficient to show the gyroscopic stabilizer market, Seakeeper's share of the gyroscopic stabilizer market and/or any projections or forecasts of Seakeeper's future share of the gyroscopic stabilizer market for the Asserted Patents."  These responses are far narrower than the scope of discoverable materials requested.  Among other things, they omit any documents concerning the Product Market other than those deemed by Seakeeper to be sufficiently "representative" of the Product Market or of Seakeeper's past, current, or projected share of the Product Market.  The omitted documents thus include, but are not limited to, documents that fully describe the relevant players in the Product Market (RFP No. 37); documents that relate to "research or analysis" of the Product Market (RFP No. 40); and documents that relate to third parties' shares of the Product Market (RFP No. 41).  Seakeeper's responses provide no explanation specific to these RFPs why the full scope of the requested materials should not be produced.

**RFP No. 43** requests materials "relating to any marketing efforts or initiatives by Seakeeper to sell or promote marine gyroscopic stabilizers, including marketing plans, materials, advertisements, presentations, promotions, or press releases." Seakeeper's response agrees to produce only "representative marketing materials for products embodying an invention claimed in the Patents-in-Suit." This response is far narrower than the scope of discoverable materials requested.  While we do not expect Seakeeper to produce every piece of marketing material concerning its marine gyroscopic stabilizers, documents that discuss or explain Seakeeper's overall marketing strategy are clearly relevant and otherwise discoverable.  Seakeeper's response provides no explanation specific to this RFP why these requested materials should not be produced.

**RFP No. 44** requests materials "relating to any formal or informal valuations of Seakeeper and/or technology disclosed in the Patents-in-Suit, Related Patents, or Related Patent Applications." Seakeeper's response agrees to produce "documents relating to formal offers for the company or formal valuations of the Asserted Patents." This response is far narrower than the scope of discoverable materials requested.  Among other things, it omits documents relating to formal or informal valuations of Seakeeper other than any valuations that would be reflected in "formal offers for the company," as well as documents relating to any "informal" valuations of the technology disclosed in the Patents-in-Suit and other Seakeeper Patent Applications. Seakeeper's response provides no explanation specific to this RFP why the full scope of the requested materials should not be produced.

\*\*\*

Please confirm that Seakeeper will cure the deficiencies identified in this letter by promptly amending its responses to Dometic's First Set of RFPs and agreeing to produce the requested documents.  Alternatively, to the extent you do not intend to produce the requested documents, please provide your availability to meet and confer.

We look forward to your response.

February 3, 2026
Page 8

Sincerely.

Oleg Khariton

CC:     All counsel of record