# EXHIBIT E



Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357 USA

T: +1.312.474.6300
marshallip.com

Raymond R. Ricordati
+1.312.474.6617
rricordati@marshallip.com

March 19, 2026

**VIA EMAIL:** oleg.khariton@dinsmore.com

Oleg Khariton
DINSMORE & SHOHL LLP
255 East Fifth Street
Suite 1900
Cincinnati, OH  45202

> Re:   *Seakeeper Inc. v. Dometic Corporation,*
>        *Case No. 1:25-cv-00484-RGA (D.Del.) – Ongoing Discovery Deficiencies*

Dear Oleg,

This responds to your letter regarding Seakeeper's deficient responses to Dometic's First Set of Requests for Production ("RFPs"). Dometic has served 48 RFPs, each containing multiple subparts. This correspondence has raised challenges with respect to virtually every one of those requests, necessitating a painstaking review of the requests in view of Dometic's unclear and ambiguous complaints.

As an initial matter, your letter states numerous times that "Seakeeper's responses provide no explanation specific to these RFPs [as to] why the full scope of the requested materials should not be produced," which is incorrect. Seakeeper's general and specific objections state in detail why the full scope of Dometic's requests are overbroad, unduly burdensome, and not proportional to the needs of the case. Furthermore, your letter provides no explanation of why categories of documents you believe have been improperly excluded from Seakeeper's agreed scope of production are relevant to any claim or defense in this case. Nevertheless, Seakeeper remains willing work with Dometic to better understand Dometic's position and asks that future correspondence include more detail regarding Dometic's concerns so that the parties may resolve issues in an efficient manner.

## I.      Seakeeper's Agreement to Produce Only "Non-Cumulative" and/or "Representative" Documents

In instances where Seakeeper has agreed to produce "non-cumulative" and/or "representative" documents, the scope of information requested does not require a voluminous

March 19, 2026
Page 2

production. Seakeeper's responses are proper because producing "all" documents as Dometic has requested is not proportional or reasonable in view of the needs of this case. For example, RFP Nos. 7, 8, 9, 13, 14, 34, 37, 40, 41, 42, 43, as written, could be interpreted as calling for every document Seakeeper generates as a company. I also note that Dometic has included similar boundaries on the scope of documents it has agreed to produce. *See, e.g.,* Dometic's responses to RFP Nos. 5, 16, 17, and 31. Please clarify which specific categories of documents Dometic believes require the production of documents merely cumulative of representative documents and provide your reasoning therefor.

## II.    RFP No. 2[1]

Seakeeper's agreement to produce public file histories of the Seakeeper Patent Applications covers responsive information for both RFP Nos. 1 and 2. RFP No. 2 specifically requests "any search reports or written opinions on the application's claims prepared or issued by any patent office." Any such reports or opinions issued by any patent office within the possession, custody, or control of Seakeeper are those included in the public file histories of the applications. It is unclear what other documents Dometic intends to capture by this request. Please clarify what documents Dometic believes to be missing from the scope of documents Seakeeper has already agreed to produce.

## III.    RFP No. 4

In an effort to reach compromise, Seakeeper agrees to produce public records from IPR2017-01996 and IPR2017-01931.

## IV.    RFP Nos. 5 and 6

Seakeeper's responses to RFP Nos. 5 and 6 are reasonable and proportional to the needs of the case.

With respect to RFP No. 5, Dometic requested documents "sufficient to show" past or present ownership interests. The recorded assignments of the Patents-in-Suit are sufficient to show past and present ownership interests. Your letter is the first instance where Dometic seems to be requesting "unrecorded" ownership interests. It is unclear what documents or things would be sufficient to show "unrecorded" ownership interests. Please provide clarification on the types of documents Dometic is seeking with this new request and how this information is relevant to any claim or defense in this case. Further, Seakeeper appropriately narrowed its response to RFP No. 5 to the Patents-in-Suit. Please explain why Seakeeper's agreed scope of production limited to the Patents-in-Suit is insufficient in view of the needs of this case.

With respect to RFP No. 6, Seakeeper's agreed scope of production is responsive and proportional. Your letter is the first instance that you have asked for documents "other than" the copies of recorded assignments of the Patents-in-Suit. It is unclear what non-privileged and non-

---

[1] Dometic notes in a footnote that Seakeeper narrows its agreed scope of production to "Seakeeper Patent Applications" in response to some RFPs and narrows in other responses to the Patents-in-Suit. Dometic does not cite any specific RFP, nor does it explain why Seakeeper's agreed scope of production is improper. As stated above, Seakeeper's agreed scope of production is reasonable and proportional to the needs of the case.

March 19, 2026
Page 3

cumulative documents would be responsive to this request. Please clarify what types of documents Dometic is seeking and how they are relevant to any claim or defense in this case.

## V.    RFP Nos. 7, 9, and 13

Seakeeper's responses to RFP Nos. 7, 9, and 13 are reasonable and proportional to the needs of the case. Taken at face value, these requests ostensibly seek every document generated by Seakeeper with respect to its gyrostabilizer business. It is unclear from your letter what additional documents you believe are relevant and proportional to the needs of the case. Please provide clarification on what relevant and proportional documents Dometic believes would fall under "research, design, and development" but would not be captured by "conception and reduction to practice." Your conclusory demand for documents "other than" or "unrelated to" those Seakeeper has agreed to produce does not provide meaningful insight into what Dometic believes to be missing and does not allow the parties to meaningfully discuss the issues. Please clarify what documents Dometic believes to be missing from Seakeeper's agreed scope of production with more particularity than documents "other than" those Seakeeper has agreed to produce.

## VI.    RFP Nos. 8 and 14

Seakeeper's responses to RFP Nos. 8 and 14 are reasonable and proportional to the needs of the case. Your complaint with respect to Seakeeper's response to RFP No. 8 is unclear. Please explain how the "first demonstration" differs from the "first public use" of the subject matter disclosed in the Patents-in-Suit, and the relevance, if different.

Seakeeper's response to RFP No. 14 is proportional to the needs of this case. Dometic's overbroad definition of "Flywheel Cooling," which like RFP Nos. 7, 9 and 13, ostensibly seeks all documents Seakeeper generates with respect to its gyrostabilizer business. Seakeeper's agreement to produce documents establishing the first press release, public use, and/or sale of a product embodying an invention recited in the Patents-in-Suit properly limits the scope of RFP No. 14. Further, documents responsive to this request may be captured within Seakeeper's agreed scope of production in response to other requests such as RFP Nos. 24, 29, 32, 33, 34, and 37. Additionally, in response to Dometic's Interrogatory No. 1, Seakeeper stated that the inventions claimed in the Patents-in-Suit were conceived prior to January 12, 2006 and reduced to practice no later than January 12, 2006. Further, Seakeeper stated that "on November 1, 2007, Seakeeper began offering its revolutionary gyro stabilizer for sale." Please clarify how Dometic believes the discovery Seakeeper has agreed to provide is insufficient, and explain the relevance of the additional discovery you seek.

## VII.    RFP No. 34

The scope of RFP No. 34 is duplicative of RFP Nos. 16-18 and 40. As stated in response to those RFPs, Seakeeper has not licensed or offered to license the Patents-in-Suit. Seakeeper has agreed to produce representative marketing materials for products embodying an invention claimed in the Patents-in-Suit. Despite the duplicative nature of RFP No. 34, Seakeeper additionally has agreed to produce documents relating to the first public disclosure of a product

March 19, 2026
Page 4

embodying inventions claimed in the Patents-in-Suit. Please clarify how Seakeeper's agreed scope of production falls short of producing the requested document categories.

## VIII.   RFP Nos. 10 and 11

Seakeeper's general and specific objections with respect to RFP Nos. 10 and 11 are appropriate as Dometic's request for "All documents and things that constitute or refer to Prior Art" and its definitions of "Prior Art" and "Flywheel Cooling" are overbroad, unduly burdensome, and not proportional to the needs of the case.

Your letter states for the first time that RFP No. 11 requests "<u>other</u> relevant publications regardless of whether Seakeeper considers them 'Prior Art.'" Please clarify what specific categories of additional documents Dometic seeks beyond the Prior Art Seakeeper has agreed to produce, and explain their relevance.

## IX.   RFP No. 12

Seakeeper's general and specific objections with respect to RFP No. 12 are appropriate as Dometic's request for "All non-privileged Documents and things that constitute or refer to" results from any Prior Art search and its definition of "Prior Art" are overbroad, unduly burdensome, and not proportional to the needs of the case. To the extent Seakeeper withholds any documents responsive to this request on the basis of confidentiality, it will inform Dometic.

## X.   RFP No. 15

Seakeeper's general and specific objections with respect to RFP No. 15 are appropriate. Dometic's definition of "Flywheel Cooling" is overly broad, unduly burdensome, and not proportional to the needs of the case. Despite this, Seakeeper stated in its response to RFP 15 that it has not submitted any grant proposals nor received any grants. Further, Dometic's request for grant proposals by others or grant awards to others would not be within the possession, custody, or control of Seakeeper.

## XI.   RFP Nos. 16 and 17

With respect to RFP No. 16's request for assignment information, Seakeeper's response to RFP Nos. 5 and 6 is sufficient to address the duplicative scope of RFP No. 16.

With respect to RFP No. 17, Seakeeper stands on its general and specific objections. As noted previously, Dometic's definition of "Flywheel Cooling" is overly broad, unduly burdensome, and not proportional to the needs of the case. Further, Seakeeper's response stating that it has not licensed or offered to license the Patents-in-Suit is sufficient for the needs of this case.

March 19, 2026
Page 5

## XII.    RFP No. 20[2]

To clarify, Seakeeper intends to produce documents sufficient to show information on sales, pricing, units sold, net and gross revenues, profits, losses and royalties (if any) by product by year for each product practicing one or more claims of the Asserted Patents. Dometic's complaints concerning the scope of production agreed to by Seakeeper are confusing. Please clarify what documents you seek beyond those "sufficient to show" that Seakeeper has agreed to produce, and explain how their relevance outweighs the added burden of their collection.

## XIII.    RFP Nos. 21, 22, and 23

Your letter states that Seakeeper's responses omit any materials that stop short of alleging infringement of the Patents-in-Suit but nevertheless relate to Seakeeper's actual or contemplated enforcement of the Patents-in-Suit and other Seakeeper Patent Applications. As an initial matter, Dometic has not explained why actual or contemplated enforcement of anything outside the Patents-in-Suit is relevant to any claim or defense in this case. Further, Seakeeper has agreed to produce documents alleging infringement of the Patents-in-Suit despite the fact that any documents showing actual enforcement of the Patents-in-Suit such as actual litigation in the United States or foreign country can be easily accessed on public dockets. Finally, the burden of collecting, reviewing, and privilege logging all documents, all things, and all communications related to enforcement of the Patents-in-Suit, and even more so for patents not at issue in this case, outweighs the little, if any, benefit. Please clarify how Dometic believes the discovery Seakeeper has agreed to provide is insufficient, explain the relevance of the additional discovery you seek, and explain how the burden of any additional collection is proportional to the needs of the case.

## XIV.    RFP No. 24

In addition to the "non-privileged, non-cumulative, non-duplicative documents relating to the operation of the Accused Products" Seakeeper has already agreed to produce, Seakeeper will also produce Seakeeper non-privileged, non-cumulative, non-duplicative documents relating to Seakeeper's first knowledge of the Accused Products and/or belief that the Accused Products infringe the Asserted Patents to the extent such documents exist and are located after a reasonable search of documents and communications within Seakeeper's possession, custody, and control.

## XV.    RFP No. 26

Seakeeper's response is reasonable and proportional to the needs of the case. Additionally, Seakeeper has provided responsive information to this request in its Rule 26 Initial Disclosures. Please clarify what further organizational information Dometic seeks beyond the information Seakeeper has agreed to provide.

---

[2] Seakeeper intended "Asserted Patents" to have the same definition as "Patents-in-Suit."

March 19, 2026
Page 6

### XVI.    RFP No. 27

Seakeeper's response properly limits Dometic's overly broad, unduly burdensome, and unproportional request. Additionally, several of Seakeeper's responses agree to produce documents covered by this request due to the duplicative nature of Dometic's RFPs. *See* Responses to RFP Nos. 21, 22, 24, 25, 27, 28, 30, 37, 39, 40, and 41. Please clarify how Dometic believes the discovery Seakeeper has agreed to provide in response to Dometic's duplicative requests is insufficient and explain the relevance of the additional discovery you seek.

### XVII.  RFP No. 29

Seakeeper's agreement to produce documents relating to published articles written by the inventors relating to the technologies in the Asserted Patents properly limits Dometic's overly broad, unduly burdensome, proportional, and duplicative request. Furthermore, Seakeeper's agreed scope of production in response to RFP Nos. 1, 2, 3, 4, 5, 6, 7, 9, and 13 also covers categories related to other Seakeeper Patent Applications and statements other than published articles. Please clarify how Dometic believes the discovery Seakeeper has agreed to provide in response to Dometic's duplicative requests is insufficient and explain the relevance of the additional discovery you seek.

### XVIII. RFP Nos. 30 and 39

Seakeeper's objections are appropriate as RFP Nos. 30 and 39 are overly broad, unduly burdensome, and not proportional to the needs of the case. Furthermore, the parties have not determined nor agreed to the collection, review, and production of email discovery beyond that encompassed by the Delaware Default Standard for Discovery. With respect to third-party product evaluations, these documents also are covered by the agreed scope of production in response to RFP Nos. 21, 22, and 23. Please clarify what categories of documents you believe are missing in view of Seakeeper's responses to Dometic's duplicative requests.

### XIX.    RFP Nos. 37, 40 and 41

Dometic's complaints with respect to RFP Nos. 37, 40, and 41 are all directed towards information about the Product Market. Seakeeper has agreed to provide representative documents sufficient to show the gyroscopic stabilizer market, Seakeeper's share of the gyroscopic stabilizer market and/or any projections or forecasts of Seakeeper's future share of the gyroscopic stabilizer market for the Asserted Patents. Please clarify what documents Dometic alleges are within the possession, custody, and control of Seakeeper that are not encompassed within Seakeeper's agreed scope of production in response to Dometic's duplicative requests.

### XX.     RFP No. 43

As your letter admits, Seakeeper is not expected to produce every piece of marketing material concerning its marine gyroscopic stabilizers. Furthermore, your letter presents a new request for "documents that discuss or explain Seakeeper's overall marketing strategy" which is not what RFP No. 43 requests. Additionally, several of Seakeeper's responses agree to produce documents covered by this request due to the duplicative nature of Dometic's RFPs. *See*

March 19, 2026
Page 7

Responses to RFP Nos. 8, 34, 37, 40, 41, and 42. Despite this, Seakeeper's representative marketing materials should give Dometic insight into Seakeeper's overall marketing strategy.

**XXI.    RFP No. 44**

Seakeeper properly limits the scope of Dometic's overly broad, unduly burdensome, unproportional, and unclear request. It is unclear what would encompass an "informal" valuation. It is further unclear what documents Dometic is requesting when asking for documents "<u>other than</u>" any valuations reflected by formal offers for the company as Seakeeper has agreed to produce formal valuations of the Asserted Patents as well. Please clarify how Dometic believes the discovery Seakeeper has agreed to provide is insufficient and explain the relevance of the additional discovery you seek.

Please provide the clarifications we've requested above at your earliest convenience, and we'd be happy to further consider Dometic's requests.

We look forward to your response.

Sincerely,

Raymond R. Ricordati III

cc:      Counsel of Record