# EXHIBIT F



**DINSMORE & SHOHL LLP**
255 E. Fifth St., Suite 1900
Cincinnati, OH 45202
www.dinsmore.com • Legal Counsel

Oleg Khariton
(513) 977-8246 (direct) · (513) 977-8141 (fax)
oleg.khariton@dinsmore.com

March 24, 2026

**<u>VIA EMAIL</u>**
Raymond R. Ricordati
Marshall, Gerstein & Borun LLP
233 South Wacker Drive, Suite 6300
Chicago, IL 60606
rricordati@marshallip.com

> RE: ***Seakeeper, Inc. v. Dometic Corporation* (D. Del. Case No. 1:25-cv-00242-JCB) – On-Going Deficiencies in Seakeeper's Responses and Objections to Dometic's First Requests for Production of Documents**

Ray:

We write in response to your letter dated March 19, 2026 and in follow-up to our letter of February 3, 2026. Our February 3 letter set forth numerous deficiencies in Seakeeper's responses and objections to Dometic's First Set of Requests for Production of Documents ("RFPs"). Although we followed up with your team multiple times, you failed to respond to our letter for more than six weeks. And, unfortunately, even your March 19 letter fails to meaningfully engage with the issues raised in February 3 letter. Instead, it repeatedly feigns confusion about the scope of Dometic's document requests and needlessly asks us to "clarify" our positions on issues that we already fully explained in our prior letter.

Considering the upcoming deadline for the parties to substantially complete document production—and with Seakeeper having produced no documents to date—we need Seakeeper to promptly address and remedy the deficiencies in its discovery responses. To that end, we have identified several categories of documents that we consider to be priorities in this matter, but that Seakeeper has, to date, refused to produce. As discussed below, each category of documents is clearly relevant to the parties' claims and defenses. Seakeeper must confirm that it will produce these documents by the April 2, 2026 deadline for substantial completion of document production (in addition to other documents which it has already committed to producing in its discovery responses). To be clear, our identification of these categories of documents is without prejudice to the identification of any additional deficiencies in Seakeeper's responses to Dometic's First Set of RFP and/or Seakeeper's document production.

Seakeeper must produce the following categories documents:

- **Non-privileged documents, including non-privileged communications, concerning the preparation, filing, prosecution, reexamination, or reissue of, or any interference**

March 24, 2026
Page 2

**proceeding involving, any of the Seakeeper Patent Applications (RFP Nos. 2, 4).** While Seakeeper has agreed to produce the public file histories of the Seakeeper Patent Applications and public records from IPR2017-01996 and IPR2017-01931, this promise to produce improperly excludes other discoverable documents covered by RFP Nos. 2 and 4. These omitted documents include, but are not limited to, Seakeeper's non-privileged internal and external communications related to the preparation, filing, prosecution, reexamination, or reissue of, or any interference proceeding involving, any of the Seakeeper Patent Applications.

- **Documents, including communications, concerning the conception, research, development, design, and testing of any Flywheel Cooling technology used within Seakeeper's gyrostabilizer products other than the patented technology (RFP Nos. 9, 13).** While Seakeeper has agreed to produce documents related to the conception and reduction of practice of the technology claimed in the Patents-in-Suit, the record confirms that Seakeeper's gyrostabilizer products incorporate additional, non-patented Flywheel Cooling technology. (D.I. 87 at 27-28.) Documents related to the conception, research, development, design, and testing of such technology are relevant at least to Seakeeper's secondary-considerations arguments. (*Id.*)

- **Documents sufficient to show the design and operation of any Seakeeper gyrostabilizer products incorporating the patented technology (RFP No. 9).** These documents are relevant to Seakeeper's secondary-considerations arguments. For example, to the extent that Seakeeper contends that the commercial success of its gyrostabilizer products demonstrates the non-obviousness of the patented technology, Seakeeper must produce documents sufficient to show that these products practice one or more claims of the Patents-in-Suit.

- **Documents, including communications, concerning customer feedback to Seakeeper's gyrostabilizer products (RFP Nos. 9 and 34).** These documents are relevant to Seakeeper's secondary-considerations arguments, including, but not limited to, those based on the alleged invention's commercial success.

- **Documents, including communications, concerning Seakeeper's investigation and analysis of the Accused Product (RFP Nos. 30 and 39).** While Seakeeper has agreed to produce documents "reflecting a comparison of the Accused Products to any claimed invention recited in the Patents-in-Suit" and documents "sufficient to show Seakeeper's comparisons of Dometic's gyroscopic stabilizer products to Seakeeper products embodying an invention claimed in the Patents-in-Suit," it is unclear whether Seakeeper's promise to produce includes other discoverable documents covered by RFP Nos. 30 and 39, including, but not limited to, non-privileged communications that discuss such "comparisons." To give an example, if someone at Seakeeper prepared a memo comparing the Accused Product to the claims of the Patents-in-Suit or to Seakeeper's own gyrostabilizer products, Seakeeper must produce *both* the memo *and* any documents, including e-mail communications, that discuss or otherwise relate to the memo.

March 24, 2026
Page 3

- **Documents, including communications, concerning Seakeeper's first knowledge of the Accused Product and the alleged infringement (RFP No. 24).** While Seakeeper's response to RFP No. 24 agrees to produce "documents relating to the operation of the Accused Products," this response excludes other discoverable documents explicitly sought by this RFP, including, but not limited to, documents concerning "how and when Seakeeper learned about" the Accused Product and "how and when Seakeeper learned that such product allegedly infringed or practiced any of the claims of the Patents-in-Suit."

- **Documents, including communications, concerning Seakeeper's evaluation of other competing gyrostabilizer products besides the Accused Product (RFP No. 39).** While your letter states that these documents "are covered by the agreed scope of production in response to RFP Nos. 21, 22, and 23," the documents that Seakeeper has agreed to produce in response to those requests are limited to "documents alleging infringement of the Patents-in-Suit." This promise to produce improperly excludes other discoverable documents within the scope of RFP No. 39. For example, this request is not limited to documents that evaluate third-party products solely from a *patent-infringement* perspective, but also covers Seakeeper's *commercial* analysis of such third-party products. This information is relevant to a number of issues in this case. For instance, Seakeeper's analysis of the factors that drive market demand for gyrostabilizer products (both its own and those of its competitors) is relevant at least to Seakeeper's damages and secondary-considerations arguments.

- **Documents that constitute or discuss the prior art, including, but not limited to, prior-art publications concerning Flywheel Cooling technology (RFP Nos. 10, 11, 12).** Prior-art publications that discuss Flywheel Cooling technology are relevant to the validity of the Patents-in-Suit, both as potentially invalidating prior art and as evidence bearing on Seakeeper's assertions of long-felt but unsolved need and industry skepticism.

- **Documents sufficient to show past and present ownership of the Seakeeper Patent Applications (RFP No. 5).** While you suggest that our February 3 letter was "the first instance where Dometic seems to [have] request[ed] 'unrecorded' ownership interests" in the Patents-in-Suit, this is false. Among other things, Dometic's RFP No. 5 asked for documents sufficient to show "any past or present ownership interest" in the Patents-in-Suit. This request made no distinction between "recorded" and "unrecorded" ownership interests. It was Seakeeper's response to RFP No. 5 that only agreed to produce "recorded assignments." However, documents reflecting past and present ownership interests in the Patents-in-Suit are relevant whether or not such ownership interests have been recorded with the U.S. Patent and Trademark Office.

- **Documents, including communications, concerning any actual or contemplated changes in the ownership of the Patents-in-Suit (RFP No. 6).** Your letter again suggests that our February 3 letter was "the first instance that [we] ha[d] asked for documents 'other than' the copies of recorded assignments of the Patents-in-Suit." Not so. Among other things, Dometic's RFP No. 6 asked for documents concerning "any contemplated transfer of ownership" in the Patents-in-Suit. This request plainly encompasses documents beyond "copies of recorded assignments of the Patents-in-Suit," including, but not limited to,

March 24, 2026
Page 4

communications concerning any actual or contemplated changes in the ownership of the patents.

- **Documents, including communications, concerning the first offer for sale of any invention claimed in the Patents-in-Suit (RFP No. 8).**  While Seakeeper has agreed to produce documents "establishing the first press release, first public use of and/or first sale of a product embodying an invention recited in the Patents-in-Suit," this promise to produce excludes documents concerning the "first offer for sale," which are expressly requested by RFP No. 8 and clearly relevant to the validity of the Patents-in-Suit.

- **Documents, including communications, concerning any licensing activities related to the Seakeeper Patent Applications, including, but not limited to, any proposed licenses (RFP Nos. 16, 17, 34).**  While your letter asserts that Seakeeper "has not licensed or offered to license the Patents-in-Suit," these requests seek discoverable documents beyond licenses to, or offers to license, the Patents-in-Suit.  For example, they also encompass documents concerning any licenses to, or offers to license, other Seakeeper Patent Applications, which disclose and claim closely related inventions.  Such documents are discoverable and must be produced, to the extent that they exist.

- **Documents, including communications, concerning any licenses (whether to or from Seakeeper or any third party) related to marine gyroscopic stabilizers or Flywheel Cooling technology (RFP No. 17).**  Licenses related to marine gyrostabilizers or Flywheel Cooling technology are relevant at least because they may constitute comparable licenses for purposes of the *Georgia-Pacific* reasonable-royalty analysis.  Therefore, documents concerning such licenses are discoverable and must be produced, to the extent that they exist.

- **Documents, including communications, concerning any settlement agreements related to the Patents-in-Suit (RFP No. 16).**  These documents are relevant even if the underlying settlement agreements did not include licenses to the Patents-in-Suit.  Seakeeper must produce them, to the extent that they exist.

- **Documents sufficient to show the sales, pricing, units sold, net and gross revenues, profits, losses, and royalties (broken out by year and product model) for any Seakeeper products that allegedly employ the patented technology (RFP No. 20).**  Your letter again confusingly states that "Seakeeper intends to produce documents *sufficient to show information on* sales, pricing, units sold, net and gross revenues, profits, losses and royalties (if any) by product by year for each product practicing one or more claims of the Asserted Patents."  (Emphasis added.)  It is unclear whether Seakeeper is agreeing to produce documents sufficient to fully show such "sales, pricing, units sold, net and gross revenues, profits, losses and royalties," or whether it is agreeing to produce documents sufficient to show only some unspecified "information on" these subjects.  We again ask you to clarify.

- **Documents, including communications, concerning Seakeeper's attempts to enforce the Seakeeper Patent Applications (RFP Nos. 21, 22, 23).**  Seakeeper's agreement to

March 24, 2026
Page 5

produce "documents alleging infringement of the Patents-in-Suit" is insufficient. For example, non-privileged documents discussing Seakeeper's decision to enforce the Patents-in-Suit against Dometic are clearly relevant.[1]   Similarly, to the extent that Seakeeper has enforced, attempted to enforce, or considering enforcing the Patents-in-Suit or other Seakeeper Patent Applications against other parties, documents concerning such actual or contemplated enforcement activities (including, but not limited to, any court filings, cease-and-deists letters, and internal and external communications regarding same) are also relevant.   For instance, such documents may reveal statements or positions by Seakeeper regarding the scope of the Patents-in-Suit (or comparable inventions claimed in other Seakeeper Patent Applications) that are at odds with statements or positions taken by Seakeeper in this litigation.   Accordingly, Seakeeper must produce the full scope of non-privileged documents sought by RFP Nos. 21, 22, and 23.

- **Documents, including communications, concerning valuations of Seakeeper or the technology disclosed in the Seakeeper Patent Applications (RFP No. 44).**   While Seakeeper has agreed to produce documents relating to any "formal offers" for the company or "formal valuations" of the Patents-in-Suit, it has refused to produce other discoverable documents encompassed by RFP No. 44.   For example, Seakeeper's promise to produce excludes documents related to any valuations of Seakeeper (formal or informal) other than those reflected in "formal offers" for the company.   However, formal and informal valuations of Seakeeper would be relevant to damages whether embodied in a "formal offer" to buy the company or not, and neither Seakeeper's objections to this RFP nor your letter explains why it would be otherwise.   Furthermore, although your letter now suggests that the term "informal" is unclear in the context of this request, Seakeeper did not object to the request on the basis that any portion of it was vague or ambiguous.   Thus, any such objection has been waived.   Regardless, the scope of RFP No. 44 is clear on its face.   It simply asks for any documents relating to *any* valuation of Seakeeper, whether or not such valuation could be described as "formal" or "informal."   For example, an informal discussion among Seakeeper's executives about the potential value of the company might not qualify as a "formal" valuation, but documents reflecting such discussion would nevertheless be clearly relevant and otherwise discoverable.

  Similarly, Seakeeper's response to RFP No. 44 omits documents concerning any *informal* valuations of the patented technology.   Again, your suggestion that Seakeeper is unable to understand the meaning of the term "informal" in the context of this request rings hollow. Seakeeper must produce the requested documents.

- **Documents, including communications, concerning any analysis of the product market, competitors, and competing products (RFP Nos. 37, 40, and 41).** While Seakeeper has agreed to produce documents sufficient to show its own share and projected future shares of the gyroscopic stabilizer market and its evaluations of the Accused Product, it has refused to produce documents concerning analysis or research of (a) the

---

[1] To the extent that you letter purports to express a concern about the burden of "privilege logging" such documents, we note that the parties have agreed that "privileged communications between counsel of record and their clients and work product documents dating after the filing of the complaint need not be logged." (D.I. 130 at 4.)

March 24, 2026
Page 6

Product Market, (b) Seakeeper's competitors in the Product Market, or (c) products other than the Accused Product that compete with Seakeeper's products in the Product Market. Such documents are relevant at least to damages and must be produced.

- **Documents, including communications, concerning Seakeeper's marketing strategy for its gyrostabilizer products (RFP No. 43).** While Seakeeper has agreed to produce representative marketing materials, it is apparently refusing to produce materials relating to its overall marketing strategy for gyrostabilizer products. Your letter suggests that documents that discuss or explain Seakeeper's marketing strategy are not encompassed by RFP No. 43, but this is incorrect. The requests seeks documents concerning "any marketing efforts or initiatives by Seakeeper to sell or promote marine gyroscopic stabilizers," including, but not limited to, "marketing plans." Therefore, documents that discuss or explain Seakeeper's marketing strategy are within the scope of RFP No. 43 and must be produced.

By the close of business on **March 26, 2026**, please either confirm that Seakeeper will produce the foregoing documents or let us know your availability for a meet-and-confer.

Sincerely,

Oleg Khariton

cc:    All counsel of record